1  DAVID L. NEALE (SBN 141225)
LINDSEY L. SMITH (SBN 265401)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
4  Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dln@lnbyb.com, lls@lnbyb.com
5
6  Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession
7
8                **UNITED STATES BANKRUPTCY COURT**
9                **CENTRAL DISTRICT OF CALIFORNIA**
10                    **NORTHERN DIVISION**
11

| | |
|---|---|
| 12  In re | ) Case No. 9:15-bk-10477-DS |
| 13 | ) |
| | ) Chapter 11 |
| 14  MALIBU ASSOCIATES, LLC, | ) |
| | ) **DEBTOR'S MOTION FOR ENTRY OF** |
| 15              Debtor. | ) **AN INTERIM ORDER:** |
| 16 | ) **(I) AUTHORIZING DEBTOR TO** |
| | ) **OBTAIN POSTPETITION** |
| 17 | ) **FINANCING PURSUANT TO 11** |
| | ) **U.S.C. §§ 105, 361, 364(c), 364(d)(1)** |
| 18 | ) **AND 364(e);** |
| 19 | ) **(II) SCHEDULING A FINAL** |
| | ) **HEARING PURSUANT TO** |
| 20 | ) **BANKRUPTCY RULE AND** |
| | ) **4001(c); AND** |
| 21 | ) **(III) GRANTING RELATED RELIEF** |
| 22 | ) |
| | ) **MEMORANDUM OF POINTS AND** |
| 23 | ) **AUTHORITIES IN SUPPORT** |
| | ) **THEREOF** |
| 24 | ) |
| | ) **[DECLARATION OF THOMAS C. HIX** |
| 25 | ) **FILED CONCURRENTLY** |
| | ) **HEREWITH]** |
| 26 | ) |
| 27 | ) DATE:      To Be Set |
| | ) TIME:      To Be Set |
| 28 | ) PLACE:    To Be Determined |

1

# **TABLE OF CONTENTS**

**Page**

BACKGROUND INFORMATION ………………………………………………    4

REQUEST TO OBTAIN PROPOSED POST PETITION SECURED FINANCING
AND THE SALIENT TERMS THEREOF ……………………………………….    7

MEMORANDUM OF POINTS AND AUTHORITIES …………………………    11

I.    STATEMENT OF FACTS ……………………………………………...    11

    A.    Background …………………………………………………..    11

    B.    The Debtor's Debts …………………………………………...    12

    C.    Events Leading To The Filing Of The Debtor's Chapter 11
        Bankruptcy Case ……………………………………………..    13

    D.    The Need For Post-Petition Financing ……………………….    15

II.    THE DEBTOR SHOULD BE AUTHORIZED TO OBTAIN THE PROPOSED
     POST-PETITION FINANCING ………………………………………..    17

    A.    The Debtor Should Be Authorized To Obtain The Proposed Post-
        Petition Secured Financing From The Lender To Maintain The Debtor's
        Businesses And To Maintain And Preserve The Value Of The Property …    17

        1.    The Debtor Is Unable To Obtain Unsecured Credit Or
           Secured Credit On Better Terms …………………………...    19

        2.    The Terms Of The Proposed DIP Financing From The Lender
           Are Fair, Reasonable and Adequate ………………………..    21

        3.    The Proposed Financing From the Lender Is Necessary And
           Proper ………………………………………………………    21

III.    PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF THE
      MOTION HAVE BEEN SATISFIED ………………………………………..    22

IV.    THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE …………….    25

V.    CONCLUSION ………………………………………………………    26

i

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Ames Department Stores, Inc.*,
115 B.R. 34 (Bankr. S.D.N.Y. 1990) --------------------------------------------------22

*In re Aqua Assoc.*,
123 B.R. 192(Bankr. E.D.Pa. 1991) -----------------------------------------------19

*In re Crouse Group, Inc.*,
71 B.R. 544(Bankr. E.D.Pa. 1987)-------------------------------------------------19

*In re Defender Drug Stores*
126 B.R. 76 (Bankr. D. Ariz. 1991) ----------------------------------------------18

*In re Ellingsen MacLean Oil Co.*
834 F.2d 599 (6th Cir. 1987) (--------------------------------------------------18

*In re Photo Promotion Associates, Inc.*
87 B.R. 835 (Bankr. S.D.N.Y. 1988), *aff'd*, 881 F.2d 6 (2d. Cir. 1989) -------------------------18

*In re Simasko Production Co.*
47 B.R. 444 (D. Colo.1985) ----------------------------------------------------17

*In re Snowshoe Co.*,
789 F.2d 1085 (4th Cir. 1986)---------------------------------------------------19

*In re T.M. Sweeney & Sons LTL Services, Inc.*
131 B.R. 984 (Bankr.N.D.Ill.1991)-----------------------------------------------18

*Richmond Leasing Co. v. Capital Bank N.A.*
762 F.2d 1303 (5th Cir. 1985)---------------------------------------------------22

### STATUTES

11 U.S.C. § 101 -----------------------------------------------------------------11
11 U.S.C. § 105 -------------------------------------------------------------- 1, 2, 8, 24
11 U.S.C. § 105(a) ------------------------------------------------------------- 2, 4
11 U.S.C. § 105(a)364c)(1)-----------------------------------------------------------7
11 U.S.C. § 105(a)364(c)(2)--------------------------------------------------------7, 16
11 U.S.C. § 105(a)364(c)(3)------------------------------------------------------ 7, 16, 18
11 U.S.C. § 105(a)503(b)(1)------------------------------------------------------ 7, 16, 18
11 U.S.C. § 364 ----------------------------------------------------------------- passim
11 U.S.C. § 364(b) ---------------------------------------------------------------19
11 U.S.C. § 364(b)(1)(A) ----------------------------------------------------------19
11 U.S.C. § 364 (c) -------------------------------------------------------------- 15, 17
11 U.S.C. § 364 (c)(1)------------------------------------------------------------16
11 U.S.C. § 364 (c)(3)------------------------------------------------------------15
11 U.S.C. § 364 (e) ---------------------------------------------------------------21
11 U.S.C. § 506(c) ------------------------------------------------------------- 4, 8, 24

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

## RULES

Fed.R.Bkcy.P. 4001 ----------------------------------------------------------------------------- 1, 8, 9
Fed.R.Bkcy.P. 4001 (c) ------------------------------------------------------------------------- 22
Fed.R.Bkcy.P. 4001 (c)(1)(B) ----------------------------------------------------------------- 23
Fed.R.Bkcy.P. 4001(c)(2)----------------------------------------------------------------------- 8
Fed.R.Bkcy.P. 4001-2 --------------------------------------------------------------------------- 23
LBR 2081-1----------------------------------------------------------------------------------------- 2

1    Pursuant to Local Bankruptcy Rule 2081-1, and 11 U.S.C. §§ 105(a) and 364, Malibu

2  Associates, LLC (the "Debtor"), the debtor and debtor in possession in the above-captioned

3  Chapter 11 bankruptcy case, hereby files this motion (the "Motion")[1], for the entry of an interim

4  order ("Interim Order") in substantially the form attached as **Exhibit "A"** to the Declaration of

5  Thomas C. Hix filed concurrently herewith (the "Hix Declaration"), and for the entry of a final

6  order ("Final Order") following a final hearing on the Motion, which provides for, among other

7  things:

8    (1)    authorization for the Debtor to obtain post-petition financing (the "DIP

9  Financing") from Aa87, LLC[2] (the "Lender") on the same terms and conditions as those set forth

10  in that certain pre-petition loan made by the Lender to the Debtor pursuant to that certain

11  *Secured Promissory Note* dated January 1, 2015 (the "Note"), and that certain *Deed of Trust,*

12  *Assignment of Rents, Security Agreement and Fixture Filing* dated January 1, 2015 (the "Deed of

13  Trust" together with the Note, the "Pre-Petition Financing Documents") and subject to the terms

14  and conditions set forth in that certain *Stipulation Authorizing The Debtor To Incur Secured Debt*

15  *Pursuant To 11 U.S.C. § 364(c)(3)* (the "DIP Financing Stipulation") and such other agreements

16  and documents as may be reasonably requested by Lender in order to memorialize and effect the

17  DIP Financing (collectively, the "DIP Financing Documents"). The Deed of Trust and Note are

18  attached as Exhibits "1" and "2," respectively, to DIP Financing Stipulation, which is attached as

19  **Exhibit "B"** to the Hix Declaration;

20    (2)    approval of the terms of the DIP Financing Stipulation, and authorization for the

21  Debtor to execute and enter into the DIP Financing Documents, including authorization for the

22  Debtor to execute and enter into the DIP Financing Stipulation in substantially the form attached

23  as **Exhibit "B"** to the Hix Declaration, and to perform such other and further acts as may be

24  required in connection with the DIP Financing Documents;

25

26  [1] Concurrently herewith, the Debtor has filed an *Ex Parte* Application For Order Shortening
Time On Notice For Hearing On The Motion.

27  [2]  The Lender is owned in part by Mark Kvamme, who is the managing member of MPK
Development, LLC, which owns a 40.411% membership interest in the Debtor and is a co-
28  managing member of the Debtor.

(3)     the granting of a valid, enforceable, non-avoidable and fully perfected lien and security interest pursuant to Section 364(c)(3) of the Bankruptcy Code (collectively, the "DIP Lender Lien") in and on all of Debtor's pre-petition and post-petition real and/or personal property and rights, whether presently existing or hereinafter acquired, including, but not limited to, pre-petition and post-petition cash, cash equivalents, accounts, accounts receivable, contracts, contract rights, patents, trademarks and copyrights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, machinery, equipment, inventory, furniture, fixtures and general intangibles, and all substitutions, replacements, additions and accessions to the personal property, all books and records pertaining to accounts, together with all proceeds, profits and products of the foregoing (collectively, the "Collateral") to the DIP Lender to secure all of the obligations of the Debtor under and with respect to the DIP Financing; provided, however that the DIP Lender Lien shall be junior to any valid, binding, enforceable, unavoidable and perfected pre-petition liens and security interests of U.S. Bank National Association, as successor in interest to Federal Deposit Insurance Corporation, as receiver for California National Bank (the "Bank") or any valid, binding, enforceable, unavoidable and perfected pre-petition purchase money security interests on specific equipment of the Debtor and any binding, enforceable, unavoidable and perfected pre-petition liens held by equipment lessors which existed as of the date of the Debtor's bankruptcy filing (the "Petition Date") and which were senior in priority to the security interests of Lender and provided, however that the DIP Lender Lien shall not, in any event, attach to any claims or causes of action under Chapter 5 of the Bankruptcy Code;

(4)     the granting of an administrative expense claim equivalent in priority to a claim under Section 364(c)(1) of the Bankruptcy Code to all post-petition obligations of the Debtor incurred in connection with the DIP Financing;

(5)     authorization for the Debtor's use of proceeds of the DIP Financing in accordance with the operating budget (the "Budget") attached as Exhibit "3" to the DIP Financing Stipulation (which is attached as **Exhibit "B"** to the Hix Declaration);

(6)     the waiver by the Debtor of any right to surcharge or impose any other charge of any kind or nature which may otherwise be imposed upon the Lender under the Bankruptcy

3

Code §§ 105, 506(c) or any other section of the Bankruptcy Code, in this Chapter 11 case or any subsequent Chapter 7 proceeding;

(7)    the scheduling of a final hearing (the "<u>Final Hearing</u>") to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(8)    the waiver of any applicable stay, including under Rule 6004 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), and provision for immediate effectiveness of the Interim Order.

## **<u>BACKGROUND INFORMATION</u>**

The Debtor's principal asset is the real property located at 901 Encinal Canyon Road, Malibu, California 90265 (the "<u>Property</u>"). The Property, which is commonly known as the Malibu Country Club, is comprised of 648.5 acres and includes an 18-holf golf course, a club house of approximately 10,000 square feet, and a maintenance facility of approximately 4,000 square feet.

The Property was purchased by the Debtor in or around 2006 for the purpose of redeveloping the Property and the golf course and structures thereon. Pursuant to an appraisal obtained by the Debtor in November of 2014, the Property, as-is, has a value of approximately $75,900,000. Since the Debtor's acquisition of the Property, the Debtor has been working on obtaining the requisite final land entitlements for the development of the Property, including obtaining approval from the applicable governmental agencies to develop the Property and ultimately, from the California Coastal Commission (the "<u>Entitlements</u>").

The Debtor is the borrower under that certain *Consolidation Agreement*, which consolidated, amended, and superseded the certain loans made by California National Bank to the Debtor, which were thereafter assigned to U.S. Bank, National Association (the "<u>Bank</u>") into a single loan in the principal amount of $46,771,683.85 (the "<u>Loan</u>"). The Loan was memorialized in, among other documents, three promissory notes, a loan agreement, and a deed of trust which became the first priority lien against the Property and which was recorded against the Property on June 29, 2011 as instrument number 20110881902 (the "<u>Bank Deed of Trust</u>"). In addition, the Loan is secured by all assets of the Debtor pursuant to a UCC Financing Statement recorded with the California Secretary of State on June 27, 2011 and bearing filing

1    number 11-7274935473. Accordingly, the Bank holds first priority lien against Property and a

2    first priority security interest against the Debtor's assets.

3          On January 1, 2015, the Debtor and Lender entered in to the Pre-Petition Financing

4    Documents[3] pursuant to which the Debtor obtained a $3,000,000 line of credit from the Lender

5    for the purpose of, among other things, covering the Debtor's operating costs and allowing the

6    Debtor to maintain the Property while it processed the final Entitlements and attempted to market

7    the Property for sale. Pursuant to the terms of the Pre-Petition Financing Documents, the Deed of

8    Trust is expressly subordinate to the Bank Deed of Trust and prohibits the Lender from

9    foreclosing or taking any action to enforce its rights under the Note or the Deed of Trust unless

10   and until the Bank is paid in full. The Deed of Trust was recorded against the Property on

11   February 6, 2015 as instrument number 20150138777. As of the Petition Date, the Debtor had

12   drawn on $473,000.00 of the line of credit provided by Lender.

13         Pursuant to the *Consolidation Agreement* and Loan, the Debtor was required to meet

14   certain deadlines for obtaining approval of certain Entitlements necessary to redevelop the

15   Property. In order to provide an extension of certain deadlines by which the Debtor was required

16   to obtain certain Entitlements under the *Consolidation Agreement* and Loan, on or about

17   December 15, 2012 and again on January 28, 2014, the Debtor and the Bank entered into

18   amendments to the *Consolidation Agreement* and Loan. Taking into account the aforementioned

19   amendments, the Bank contends that the Loan matured on October 15, 2014 (the "Maturity

20   Date").

21         The Debtor did not pay off the Loan on the Maturity Date. Thereafter, the Bank declared

22   an event of default under the Loan and the Bank Deed of Trust and has asserted that all amounts

23   owed under the Loan are due and payable. On October 28, 2014, the bank recorded a notice of

24   default, which appears as instrument number 20110881902 (the "NOD").

25

26

27   ─────────────────
     [3] Attached as Exhibits "1" and "2" to **Exhibit B** to the Declaration of Thomas C. Hix filed
     concurrently herewith (the "Hix Declaration") are copies of the Pre-Petition Financing
28   Documents.

5

Thereafter, on February 2, 2015, the Bank caused to be recorded a Notice of Trustee's Sale with respect to the Property. The Trustee's sale was continued from time to time after the recording of the Notice of Trustee's sale and most recently was continued to March 13, 2015.

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code the Petition Date.  The Debtor continues to operate its business, manage its financial affairs, and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

Prior to the Petition Date, the Debtor obtained approval of the Entitlements by the Los Angeles Board of Supervisors and other necessary governmental agencies. However, the approval of the Entitlements was delayed due to an appeal ("Appeal") of the earlier approval of the Entitlements in November, 2014 that was filed with the Los Angeles County Board of Supervisors by Unite Here Local 11 (the "Union"), which sought to unionize certain aspects of the final redeveloped project. The Appeal has now been resolved pursuant to that certain *Memorandum of Agreement* dated February 20, 2015 and entered into by and between the Debtor and the Union, pursuant to which the Union agreed to withdraw the Appeal. Even though the Union withdrew the Appeal on February 20, 2015, it took until March 3, 2015 for the Los Angeles County to process the Notice of Final Action of the CDP approval (the "Notice of Final Action") to be forwarded to the California Coastal Commission.  The California Coastal Commission received the Notice of Final Action on March 6, 2015 and the public appeal period will terminate on March 19, 2015 at 5:00 p.m., provided that no appeal is filed prior to the deadline.

During the year or so prior to the Debtor's bankruptcy filing, the Debtor marketed the Property for either a JV partner or for sale. On or about February 24, 2015, the Debtor and The Armada Enterprises, Inc. (the "Buyer") entered into an *Agreement of Purchase and Sale* (the "Purchase Agreement") pursuant to which the Buyer is to purchase the Property from the Debtor. However, as a result of the Bank's refusal to continue to the Trustee's sale of the Property scheduled for March 13, 2015, the Buyer did not make the requisite deposit required under the Purchase Agreement. Notwithstanding the foregoing, the Debtor and the Buyer are continuing to negotiate regarding the sale of the Property to the Buyer.

In order to protect the Debtor's substantial equity in the Property and allow the Debtor time to obtain final approval of all Entitlements (which once obtained, will greatly increase the value of the Property), the Debtor was forced to seek relief by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

Through the Debtor's bankruptcy case, the Debtor intends to complete the Entitlements process and market and sell the Property for the highest possible price. The Debtor believes that the sale of the Property will yield proceeds sufficient to pay the Bank and other creditors in full.

## REQUEST TO OBTAIN PROPOSED POST PETITION SECURED FINANCING AND THE SALIENT TERMS THEREOF

Since the Debtor ceased operations in November, 2014, the Debtor does not generate any cash. Thus, the Debtor requires funding to maintain the Property, continue the process to obtain final Entitlements, and preserve the value of the Property while the Debtor pursues a marketing and sale process which will allow the Debtor to sell the Property for the highest possible price. Fortunately, the Lender has agreed to provide the Debtor with the DIP Financing, pursuant to the terms and conditions set forth in the DIP Financing Documents and DIP Financing Stipulation. Based on the Debtor's Budget, which sets forth the Debtor's projected cash receipts and disbursements for the 13-week period following the Petition Date, the Debtor believes that the proposed DIP Financing will provide the Debtor with sufficient funds to complete the Entitlements and maintain the Property until the sale of the Property is successfully consummated. A true and correct copy of the Budget is attached as Exhibit "3" to the DIP Financing Stipulation (which is attached as **Exhibit "B"** to the Hix Declaration filed concurrently herewith).

The Debtor is unable to obtain sufficient interim and long-term financing from sources other than the Lender on terms and subject to conditions more favorable than under the DIP Financing Documents, and is not able to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. The Debtor is also unable to obtain secured credit allowable under Sections 364c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Financing Documents without granting to the Lender the DIP Lender Lien.

7

1    The Lender has indicated that it is willing to provide the Debtor with the proposed DIP

2 Financing solely on the terms and conditions set forth in the DIP Financing Documents, the DIP

3 Financing Stipulation and the Interim Order.  After considering all of the alternatives, the Debtor

4 has concluded, in an exercise of its sound business judgment, that the DIP Financing to be

5 provided by the Lender, when coupled with the authorization to use the proceeds of the DIP

6 Financing in accordance with Budget and pursuant to the terms of the DIP Financing Stipulation,

7 represents the best financing presently available to the Debtor.

8    Accordingly, the Debtor represents that (i) the terms and conditions of the DIP Financing

9 are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent

10 with its fiduciary duty and are supported by reasonably equivalent value and fair consideration,

11 (ii) the DIP Financing has been negotiated in good faith between the Debtor and the Lender, and

12 (iii) any DIP Financing advances made to the Debtor by the Lender will be made in "good faith"

13 within the meaning of section 364(e) of the Bankruptcy Code. The Debtor is requesting entry of

14 the Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and the Local Bankruptcy Rules.

15 Absent granting the relief sought by this Motion, the Debtor's estate will be harmed.  Approval

16 of the DIP Financing and authorization of the use of the proceeds therefrom in accordance with

17 the Interim Order, the DIP Financing Documents and the DIP Financing Stipulation are,

18 therefore, in the best interests of the Debtor's estate.

19    In addition to the DIP Lender Lien discussed above, the DIP Financing Documents and

20 DIP Financing Stipulation provide for, among others, the following protections for the Lender:

21    1.    <u>Deadline for Any Committee to Challenge The Lender's Claims and Liens</u>.  Any

22 committee appointed in the Debtor's cases shall have until the later of (i) thirty (30) days after

23 the Petition Date, or (ii) thirty (30) days after the date of formation of any such committee to

24 review and challenge the liens and security interests of the Lender.

25    2.    <u>Waiver of Surcharge Rights</u>.  The DIP Financing Stipulation provides that the

26 Lender shall not be subject to surcharge or any other charge of any kind or nature which may

27 otherwise be imposed upon it under Bankruptcy Code §§ 105, 506(c) or any other sections of the

28 Bankruptcy Code, in the Debtor's Chapter 11 case or any subsequent Chapter 7 proceeding.

The Debtor's ability to maintain business operations post-petition is essential to maintaining and preserving the value of the Property. However, since the Debtor does not currently generate any cash, the Debtor does not have sufficient available sources of working capital and financing to maintain the Property without the proposed DIP Financing and authorized use of the proceeds received therefrom. In the absence of the DIP Financing and the authority to use the proceeds therefrom, the Debtor's estate would suffer immediate harm, including, without limitation, a substantial decline in the value of the Property. Based on the foregoing, it is critical and in the best interests of the Debtor's estate for the Debtor to be authorized to obtain the proposed DIP Financing and to use the proceeds received therefrom in accordance with the terms and conditions set forth in the Interim Order, the DIP Financing Documents and the DIP Financing Stipulation.

Pursuant to Bankruptcy Rule 4001, while the Court cannot conduct a final hearing on the Motion earlier than 14 days after service of this Motion, the Court may conduct a preliminary hearing before such 14-day period expires to enable the Debtor to obtain post-petition financing as is necessary to avoid immediate harm to the Debtor's estate pending a final hearing. For the reasons noted above, to avoid immediate harm to the Debtor's Property and its bankruptcy estate, the Debtor must be able to obtain the DIP Financing and use the proceeds received therefrom to pay the expenses set forth in the Budget pending a final hearing and order.

The relief sought in this Motion is based upon the Motion, the annexed Memorandum of Points and Authorities, the Hix Declaration filed currently herewith, the statements, arguments and representations of counsel to be made at the hearing(s) on the Motion, and any other evidence properly presented to the Court at or prior to the hearing(s) on the Motion. In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor has served a copy of this Motion and all supportive papers (including the Debtor's *Ex Parte* Application For Order Shortening Time On Notice Of Hearing On The Motion) upon the Office of the United States Trustee, all secured creditors and their counsel (if known), the 20 largest unsecured creditors of the Debtor and parties requesting special notice via overnight mail.

1    **WHEREFORE**, the Debtor respectfully requests that this Court: (1) grant the relief

2   requested in the Motion on an interim basis; (2) enter the proposed form of the Interim Order

3   attached as **<u>Exhibit "A"</u>** to the Hix Declaration filed concurrently herewith; (3) schedule a Final

4   Hearing on the Motion to consider entry of a Final Order granting the relief requested in the

5   Motion on a final basis; and (4) grant such further relief as the Court deems just and proper.

6   Dated: March 19, 2015                MALIBU ASSOCIATES, LLC

7

8                                            By:_____*/s/ Lindsey L. Smith*_____
                                                DAVID L. NEALE
9                                               LINDSEY L. SMITH
                                                LEVENE, NEALE, BENDER, YOO
10                                                  & BRILL L.L.P.
                                                Proposed Attorneys for Debtor and
11                                              Debtor in Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### <u>STATEMENT OF FACTS</u>

**A.    Background.**

1.    Malibu Associates, LLC, a California limited liability company (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case (the "<u>Chapter 11 Case</u>"), filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") on March 10, 2015 (the "<u>Petition Date</u>").  The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor's principal asset is the real property located at 901 Encinal Canyon Road, Malibu, California 90265 (the "<u>Property</u>"). The Property, which is commonly known as the Malibu Country Club, is comprised of 648.5 acres and includes an 18-holf golf course, a club house of approximately 10,000 square feet, and a maintenance facility of approximately 4,000 square feet.

3.    The Debtor also holds a 100% interest in Malibu Golf Club, LLC, which is the entity that operated the golf course and club located on the Property prior to cessation of the operations of the golf course and club in November of 2014.

4.    The Property was purchased by the Debtor in or around 2006 for the purpose of redeveloping the Property and the golf course and structures thereon. Pursuant to an appraisal obtained by the Debtor in November of 2014, the Property, as-is, has a value of approximately $75,900,000.

5.    Since the Debtor's acquisition of the Property, the Debtor has been working on obtaining the requisite final land entitlements for the development of the Property, including obtaining approval from the applicable governmental agencies to develop the Property and ultimately, from the California Coastal Commission (the "<u>Entitlements</u>").

///

///

**B.     The Debtor's Debts.**

6.     In order to fund the Debtor's purchase and redevelopment of the Property, on March 28, 2006 and April 4, 2006, Malibu obtained loans from California National Bank ("Cal National") in the original principal amounts of $28,500,000 and $11,500,000, respectively (the "Cal National Loans").   The Cal National Loans were secured by deeds of trust (the "Cal National Deeds of Trust") recorded against the Property on March 28, 2006 and June 15, 2006, and which are recorded as instrument numbers 2006-0716907 and 06-1844353. Additionally, the Cal National Loans were secured by all assets of the Debtor pursuant to a UCC Financing Statement recorded with the California Secretary of State on April 4, 2006 and bearing filing number 06-7065064751.

7.     In 2009, the Debtor defaulted on the Cal National Loans and thereafter, on August 11, 2009, Cal National recorded notices of default on August 11, 2009 as instrument numbers 20091226839 and 20091226840.

8.     On or about October 30, 2009, Cal National was placed in receivership by the Federal Deposit Insurance Corporation (the "FDIC") and the FDIC on that same day assigned substantially all of the assets of Cal National to U.S. Bank, National Association (the "Bank"), including all of Cal National's rights, duties, claims and obligations with respect to the Cal National Loans including, without limitation, Cal National's rights under the Cal National Deeds of Trust.

9.     Subsequently, on November 3, 2009, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code thereby commencing bankruptcy case number 1:09-bk-24625-MT (the "First Bankruptcy Case"). During the First Bankruptcy Case, with the approval of the Bankruptcy Court, the Debtor and the Bank entered into a *Consolidation Agreement*, which consolidated, amended, and superseded the Cal National Loans into a single loan in the principal amount of $46,771,683.85 (the "Loan"). The Loan was memorialized in, among other documents, three promissory notes, a loan agreement, and a deed of trust which became the first priority lien against the Property and which was recorded against the Property on June 29, 2011 as instrument number 20110881902 (the "Bank Deed of Trust"). In addition, the Loan is secured

1   by all assets of the Debtor pursuant to a UCC Financing Statement recorded with the California

2   Secretary of State on June 27, 2011 and bearing filing number 11-7274935473.

3           10.     On January 1, 2015, the Debtor and Aa87, LLC (the "Lender") entered in to that

4   certain *Secured Promissory Note* dated January 1, 2015 (the "Note"), and that certain *Deed of*

5   *Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated January 1, 2015 (the

6   "Deed of Trust" together with the Note, the "Pre-Petition Financing Documents")[4] pursuant to

7   which the Debtor obtained a $3,000,000 line of credit from the Lender for the purpose of, among

8   other things, covering the Debtor's operating costs and allowing the Debtor to maintain the

9   Property while it attempted to market the Property for sale. Pursuant to the terms of the Pre-

10  Petition Financing Documents, the Deed of Trust is expressly subordinate to the Bank Deed of

11  Trust and prohibits the Lender from foreclosing or taking any action to enforce its rights under

12  the Note or the Deed of Trust unless and until the Bank is paid in full. The Deed of Trust was

13  recorded against the Property on February 6, 2015 as instrument number 20150138777. As of the

14  Petition Date, the Debtor had drawn on $473,000.00 of the line of credit provided by the Lender.

15          11.     In addition to the foregoing secured debt, which is in the total approximate amount

16  of $47,244,683.85, the Debtor has approximately $125,000.00 of pre-petition, general unsecured

17  debt. In total, the Debtor estimates that it has a total of approximately $47,369,683.85 of pre-

18  petition debt.

19  **C.      Events Leading To The Filing Of The Debtor's Chapter 11 Bankruptcy Case.**

20          12.     Pursuant to the *Consolidation Agreement* and Loan, the Debtor was required to

21  meet certain deadlines for obtaining approval of certain Entitlements necessary to redevelop the

22  Property.[5]

23

24

_____

25  [4] Attached as Exhibits "1" and "2" to **Exhibit B** to the Declaration of Thomas C. Hix filed
    concurrently herewith (the "Hix Declaration") are copies of the Pre-Petition Financing

26  Documents.

    [5] The Bank unreasonably delayed completing the documentation with respect to the

27  Consolidation Agreement thereby rendering it virtually impossible for the Debtor to comply
    with the applicable deadlines.  The Debtor reserves all of its rights and claims against the Bank

28  based upon the Bank's conduct prior to the Petition Date.

13.      In order to provide an extension of certain deadlines by which the Debtor was required to obtain certain Entitlements under the *Consolidation Agreement* and Loan, on or about December 15, 2012 and again on January 28, 2014, the Debtor and the Bank entered into amendments to the *Consolidation Agreement* and Loan. Taking into account the aforementioned amendments, the Bank contends that the Loan matured on October 15, 2014 (the "Maturity Date").

14.      The Debtor did not pay off the Loan on the Maturity Date. Thereafter, the Bank declared an event of default under the Loan and the Bank Deed of Trust and has asserted that all amounts owed under the Loan are due and payable. On October 28, 2014, the bank recorded a notice of default, which appears as instrument number 20110881902 (the "NOD").

15.      Thereafter, on February 2, 2015, the Bank caused to be recorded a Notice of Trustee's Sale with respect to the Property.  The Trustee's sale was continued from time to time after the recording of the Notice of Trustee's sale and most recently was continued to March 13, 2015.

16.      Prior to the Petition Date, the Debtor obtained approval of the Entitlements by the Los Angeles Board of Supervisors and other necessary governmental agencies. However, the approval of the Entitlements was delayed due to an appeal ("Appeal") of the earlier approval of the Entitlements in November, 2014 that was filed with the Los Angeles County Board of Supervisors by Unite Here Local 11 (the "Union"), which sought to unionize certain aspects of the final redeveloped project. The Appeal has now been resolved pursuant to that certain *Memorandum of Agreement* dated February 20, 2015 and entered into by and between the Debtor and the Union, pursuant to which the Union agreed to withdraw the Appeal. Even though the Union withdrew the Appeal on February 20, 2015, it took until March 3, 2015 for the Los Angeles County to process the Notice of Final Action of the CDP approval (the "Notice of Final Action") to be forwarded to the California Coastal Commission.  The California Coastal Commission received the Notice of Final Action on March 6, 2015 and the public appeal period will terminate on March 19, 2015 at 5:00 p.m., provided that no appeal is filed prior to the deadline.

14

17.    During the year or so prior to the Debtor's bankruptcy filing, the Debtor marketed the Property for either a JV partner or for sale. On or about February 24, 2015, the Debtor and The Armada Enterprises, Inc. (the "Buyer") entered into an *Agreement of Purchase and Sale* (the "Purchase Agreement") pursuant to which the Buyer is to purchase the Property from the Debtor. However, as a result of the Bank's refusal to continue to the Trustee's sale of the Property scheduled for March 13, 2015, the Buyer did not make the requisite deposit required under the Purchase Agreement. Notwithstanding the foregoing, the Debtor and the Buyer are continuing to negotiate regarding the sale of the Property to the Buyer.

18.    In order to protect the Debtor's substantial equity in the Property and allow the Debtor time to obtain final approval of all Entitlements (which once obtained, will greatly increase the value of the Property), the Debtor was forced to seek relief by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

19.    Through the Debtor's bankruptcy case, the Debtor intends to complete the Entitlements process and market and sell the Property for the highest possible price. The Debtor believes that the sale of the Property will yield proceeds sufficient to pay the Bank and other creditors in full.

**D.    The Need For Post-Petition Financing.**

20.    Since the Debtor ceased operations in November 3rd, 2014, the Debtor does not generate any cash. Thus, the Debtor requires funding to maintain the Property and preserve the value of the Property while the Debtor pursues a marketing and sale process which will allow the Debtor to sell the Property for the highest possible price.

21.    Fortunately, the Lender has agreed to provide the Debtor with secured post-petition financing ( "DIP Financing"), on the same terms and conditions as those set forth in that certain pre-petition loan made by the Lender to the Debtor pursuant to the Pre-Petition Financing Documents and subject to the terms and conditions set forth in that certain *Stipulation Authorizing The Debtor To Incur Secured Debt Pursuant To 11 U.S.C. § 364 (c)(3)* (the "DIP Financing Stipulation") and such other agreements and documents as may be reasonably requested by Lender in order to memorialize and effect the DIP Financing (collectively, the "DIP Financing

Documents"). The Note and the Deed of Trust, which compromise the Pre-Petition Financing Documents are attached as Exhibit "1" and "2" to the DIP Financing Stipulation, which is attached as **Exhibit "B"** to the Declaration of Thomas C. Hix filed concurrently herewith (the "Hix Declaration").

22.    Based on the Debtor's Budget, which sets forth the Debtor's projected cash receipts and disbursements for the 13-week period following the Petition Date, the Debtor believes that the proposed DIP Financing will provide the Debtor with sufficient funds to complete the Entitlements and maintain the Property until the sale of the Property is successfully consummated.  A true and correct copy of the Budget is attached as Exhibit "3" to the DIP Financing Stipulation (which is attached as **Exhibit "B"** to the Hix Declaration filed concurrently herewith).

23.    The Debtor is unable to obtain sufficient interim and long-term financing from sources other than the Lender on terms and subject to conditions more favorable than under the DIP Financing Documents, and is not able to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code.  The Debtor is also unable to obtain secured credit allowable under Sections 364 (c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Financing Documents without granting to the Lender a valid, enforceable, non-avoidable and fully perfected lien and security interest pursuant to Section 364(c)(3) of the Bankruptcy Code (collectively, the "DIP Lender Lien") in and on all of Debtor's pre-petition and post-petition real and/or personal property and rights, whether presently existing or hereinafter acquired, including, but not limited to, pre-petition and post-petition cash, cash equivalents, accounts, accounts receivable, contracts, contract rights, patents, trademarks and copyrights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, machinery, equipment, inventory, furniture, fixtures and general intangibles, and all substitutions, replacements, additions and accessions to the personal property, all books and records pertaining to accounts, together with all proceeds, profits and products of the foregoing (collectively, the "Collateral") to secure all of the obligations of the Debtor under and with respect to the DIP Financing as provided in the DIP Financing Documents, the DIP Financing Stipulation,

and the proposed interim order ("Interim Order") in substantially the form attached as **Exhibit "A"** to the Hix Declaration.

24.    As set forth in the DIP Financing Documents,  the DIP Lender Lien shall be junior to any valid, binding, enforceable, unavoidable and perfected pre-petition liens and security interests of the Bank or any valid, binding, enforceable, unavoidable and perfected pre-petition purchase money security interests on specific equipment of the Debtor and any binding, enforceable, unavoidable and perfected pre-petition liens held by equipment lessors which existed as of the Petition Date and which were senior in priority to the security interests of Lender and the DIP Lender Lien shall not, in any event, attach to any claims or causes of action under Chapter 5 of the Bankruptcy Code.

25.    The Lender has indicated that it is willing to provide the Debtor with the proposed DIP Financing solely on the terms and conditions set forth in the DIP Financing Documents, the DIP Financing Stipulation and the Interim Order.  After considering all of the alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing to be provided by the Lender, when coupled with the authorization to use the proceeds of the DIP Financing in accordance with Budget and pursuant to the terms of the DIP Financing Stipulation, represents the best financing presently available to the Debtor.

**II.**

**THE DEBTOR SHOULD BE AUTHORIZED TO OBTAIN THE PROPOSED**

**POST-PETITION FINANCING**

**A.    The Debtor Should Be Authorized To Obtain The Proposed Post-Petition Secured Financing From The Lender To Maintain The Debtor's Businesses And To Maintain And Preserve The Value Of The Property.**

Pursuant to Bankruptcy Code § 364 (c), a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interest of the estate.  *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 448-9 (D. Colo.1985) (authorizing interim financing agreement where Debtors' best business judgment indicated financing was necessary and reasonable for benefit of estate); *In re*

1   *Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) ("<u>Ames</u>") (with respect to post-

2   petition credit, courts "permit debtors-in-possession to exercise their basic business judgment

3   consistent with their fiduciary duties").  Section 364(c) provides, in pertinent part, that:

4           (c)   If the trustee [or debtor in possession] is unable to obtain
        unsecured credit allowable-under section 503(b)(1) of this title as
5       an administrative expense, the court, after notice and a hearing,
        may authorize the obtaining of credit or the incurring of debt –
6           (1)   with priority over any and all administrative expenses
        of the kind specified in section 503(b) or 507(b) of this title:
7           (2)   secured by a lien on property of the estate that is not
        otherwise subject to a lien; or
8           (3)   secured by a junior lien on property of the estate that is
        subject to a lien.

10  11 U.S.C. § 364 (c).

12          Section 364 of the Bankruptcy Code is structured with an escalating series of

13  inducements which a debtor in possession may offer to attract credit during the post-petition

14  period.  *In re Photo Promotion Associates, Inc.*, 87 B.R. 835, 839 (Bankr. S.D.N.Y. 1988), *aff'd*,

15  881 F.2d 6 (2d. Cir. 1989).  Where a trustee or debtor in possession cannot otherwise obtain

16  unsecured post-petition credit, such credit may be obtained under certain carefully proscribed

17  conditions.   *In re T.M. Sweeney & Sons LTL Services, Inc.*, 131 B.R. 984, 989

18  (Bankr.N.D.Ill.1991).  For example, if creditors are unwilling to extend unsecured credit to a

19  debtor in possession, further inducements are offered, with court approval after notice and a

20  hearing, including, without limitation, liens junior to existing liens on encumbered property in

21  accordance with 11 U.S.C. § 364(c)(3).  *In re Photo Promotion Associates, Inc.*, 87 B.R. at 839.

22          Section 364 (c) of the Bankruptcy Code also enumerates certain incentives that a court

23  may grant to post-petition lenders.   However, the list set forth in Section 364(c) is not

24  exhaustive.  Courts have frequently authorized the use of inducements not specified in the

25  statute.  *See, e.g., In re Ellingsen MacLean Oil Co.*, 834 F.2d 599 (6th Cir. 1987) (affirming

26  financing order which prohibited any challenges to the validity of already existing liens); *In re*

27  *Defender Drug Stores*, 126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to post-

28  petition lender), *aff'd* 145 B.R. 312, 316 (Bankr. 9th Cir. 1992) ("[b]ankruptcy courts . . . have

1    regularly authorized postpetition financial arrangements containing lender incentives beyond the

2    explicit priorities and liens specified in section 364").

3        Subject to the approval of the Court, the Debtor has agreed to grant to the Lender the DIP

4    Lender Lien, which lien will be junior to any valid, binding, enforceable, unavoidable and

5    perfected pre-petition liens and security interests of the Bank or any valid, binding, enforceable,

6    unavoidable and perfected pre-petition purchase money security interests on specific equipment

7    of the Debtor and any binding, enforceable, unavoidable and perfected pre-petition liens held by

8    equipment lessors which existed as of the Petition Date and which were senior in priority to the

9    security interests of Lender. The Debtor believes that the granting of the DIP Lender Lien is

10    warranted, appropriate and necessary given the circumstances of this case where the Lender has

11    agreed to provide the Debtor with critically necessary emergency financing, without which value

12    of the Property would suffer harm.

13        Two factors courts consider in determining whether to authorize post-petition financing

14    which contemplates the granting of a security interest in favor of the lender are (1) whether the

15    debtor is unable to obtain unsecured credit per 11 U.S.C. § 364 (b), *i.e.*, by allowing a lender

16    only an administrative claim per 11 U.S.C. § 364(b)(1)(A); and (2) whether the terms of the

17    transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and

18    the proposed lender. *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D.Pa. 1987); *see also*

19    *In re Aqua Assoc.*, 123 B.R. 192, 195 (Bankr. E.D.Pa. 1991).

20        The Debtor submits that these standards have been satisfied in this case.

21        **1.**      ***The Debtor Is Unable To Obtain Unsecured Credit Or Secured Credit On Better***

22        ***Terms.***

23        In satisfying the standards of Section 364, a debtor need not seek credit from every

24    available source, but should make a reasonable effort to seek other sources of credit available

25    under § 364(a) and (b). *See, e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986)

26    (trustee had demonstrated by good faith effort that credit was not available without senior lien by

27    unsuccessfully contacting other financial institutions in immediate geographic area; "the statute

28    imposes no duty to seek credit from every possible lender before concluding that such credit is

1    unavailable"); *Ames, supra*, 115 B.R. at 40 (finding that debtors demonstrated the unavailability

2    of unsecured financing where debtors approached four lending institutions).

3            To date, the only current financing commitment that has been provided to the Debtor is

4    the one offered by the Lender.[6] As discussed above, prior to the Petition Date, pursuant to the

5    Pre-Petition Financing Documents, the Debtor obtained financing from the Lender of up to

6    $3,000,000 and as of the Petition Date, the Lender had only advanced a total of $473,000.00. In

7    addition, prior to the Petition Date, the Debtor diligently solicited offers for the purchase of the

8    Property and entered into the Purchase Agreement for the sale of the Property to the Buyer;

9    however, the Debtor was unable to consummate the sale of the Property prior to the scheduled

10   Trustee's sale of the Property.

11           Given the amount of the Debtor's secured debt and anticipated Trustee's sale of the

12   Property, it was not realistic for any lender to be willing to provide the Debtor with unsecured

13   financing or even secured financing on a junior lien basis. Fortunately, the Lender has offered to

14   provide the Debtor with post-petition financing but solely on the same terms as the Pre-Petition

15   Financing Documents and subject to the terms of the DIP Financing Stipulation and on a junior

16   priority secured basis. The Lender (who is owned in part by the an individual that is the

17   managing member of a co-managing member of the Debtor) has presumably agreed to provide

18   financing to the Debtor, when no other lender has expressed a willingness to do so on equal or

19   better terms, in the hopes of maximizing the value of the Debtor's Property so that the Debtor

20   may be able to successfully sell the Property for the highest and best price. The Debtor has little

21   doubt that any lender who would be willing to provide the Debtor with the necessary post-

22   petition financing would require that its financing be secured by a senior lien against the

23   Debtor's assets and upon terms that would very likely be less favorable than those offered by the

24   Lender. The terms and conditions set forth in this Motion have been negotiated in good faith by

25   the parties.

26

27

---

28   [6] *See* the Hix Declaration at paragraph 30.

1   After considering all of its alternatives, the Debtor has concluded, in the exercise of its

2   sound business judgment, that the DIP Financing to be provided by the Lender represents the

3   best financing presently available to the Debtor.

4   **2.** ***The Terms Of The Proposed DIP Financing From The Lender Are Fair,***

5   ***Reasonable and Adequate.***

6   The Debtor submits that terms of the proposed DIP Financing from the Lender are fair,

7   reasonable and adequate. As noted above, the terms and conditions set forth in the DIP Financing

8   Documents and this Motion were negotiated in good faith by the parties.  The Lender is well

9   aware of the fact that the Debtor would have very little chance of being able to continue to

10  maintain the Property if not for the DIP Financing offered by the Lender.  The Lender has agreed

11  to provide the DIP Financing to the Debtor in an effort to assist the Debtor in preserving and

12  maximizing the value of Property and to facilitate the successful sale of the Property. The

13  amount of financing being offered to the Debtor is for an amount of up to $3,000,000 (not taking

14  into account the already advanced $473,000) and is certainly not insignificant.   The Debtor

15  submits that the benefits afforded to the Debtor by the DIP Financing justify the protections

16  being afforded to the Lender under the terms set forth in the DIP Financing Documents and this

17  Motion.  The DIP Financing offers the Debtor its best and, likely, only opportunity to preserve

18  and maximize the value of the Property which will, in turn, provide the Debtor with a real

19  opportunity to sell the Property, for the benefit of all creditors and parties in interest.

20  Based on the foregoing, the Debtor represents that (i) the terms and conditions of the DIP

21  Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment

22  consistent with its fiduciary duty and are supported by reasonably equivalent value and fair

23  consideration, (ii) the DIP Financing has been negotiated in good faith between the Debtor and

24  the Lender, and (iii) any DIP Financing advances made to the Debtor by the Lender will be made

25  in "good faith" within the meaning of section 364 (e) of the Bankruptcy Code.

26  **3.**    ***The Proposed Financing From the Lender Is Necessary And Proper.***

27  While in determining whether to approve such a transaction, a Court is authorized to act

28  in its informed discretion, *In re Ames Department Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y.

1   1990), the Court should give broad deference to the business decision of a Chapter 11 debtor,

2   particularly with respect to a debtor's business judgment regarding the need for and proposed use

3   of funds.  *Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).  As

4   the Court noted in *In re Ames Dept. Stores Inc., supra*, "the court's discretion under section 364

5   is to be utilized on the grounds that permit the reasonable business judgment [of the Debtor] to

6   be exercised . . ."  *In re Ames Department Stores, Inc.*, 115 B.R. at 40.

7           There is little dispute that, without the proposed DIP Financing, the Debtor will be unable

8   to maintain the Property and the value of the Property will immediately and substantially

9   decrease.  There can also be no question that such a result would cause the Debtor, its estate and

10  its creditors immediate harm.  In contrast, the DIP Financing affords the Debtor the ability to

11  continue to maintain the Property and provides the Debtor with the time necessary to pursue a

12  marketing and sale process that will maximize the value of the Property. The Debtor has

13  therefore concluded that obtaining the DIP Financing from the Lender is critically important for

14  maximizing the recovery for creditors, and is therefore in the best interests of the Debtor's estate.

15                                             **III.**

16                  **PROCEDURAL REQUIREMENTS REGARDING APPROVAL OF**

17                        **THE MOTION HAVE BEEN SATISFIED**

18          Rules 4001 (c) and (d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy

19  Rules") set forth procedural requirements for obtaining post-petition credit and the Debtor

20  submits that it has complied with these procedural requirements.  First, the Motion must contain

21  a copy of the proposed form of order granting the Motion, which has been done by attaching the

22  Interim Order as **Exhibit "A"** to the Hix Declaration concurrently filed herewith.  Second, the

23  Motion provides a concise statement of the relief requested, which was done above.  Third, the

24  Motion is required to be served any committee appointed or the twenty largest unsecured

25  creditors if there is no committee and on such other parties as the Court directs.  Here, the Debtor

26  has served the Motion and all supportive papers upon the Office of the United States Trustee, all

27  secured creditors and their counsel (if known), the twenty largest unsecured creditors of the

28  Debtor (as no committee yet exists), and all parties who have requested special notice via

overnight mail. Accordingly, the Motion complies with the procedural requirements of Bankruptcy Rules 4001 (c) and (d).

In addition, in accordance with Bankruptcy Rule 4001 (c)(1)(B) and Local Bankruptcy Rule 4001-2, the Debtor submits that this Motion, pursuant to which the Debtor seeks authority to obtain the DIP Financing (in accordance with the terms of the DIP Financing Documents), seeks approval of the following provisions:

| **Provision** | **Applicability** |
|---|---|
| A grant of priority or a lien on property of the estates under § 364 (c) or (d) | Applies.  The Motion seeks authority to grant a junior lien on property of the estate under § 364 (c)(3) |
| The providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estates to secure the claim, or the use of property of the estates or credit obtained under § 364 to make cash payments on account of the claim | Does not apply. |
| A determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the cases, or of any lien securing the claim. | Applies.  The Motion seeks entry of an order stipulating (by the Debtor) that the pre-petition lien and security interest of the Lender are valid, properly perfected, junior in priority as to the Property to which they attach, and not subject to avoidance under Chapter 5 of the Bankruptcy Code; provided, however, that the Debtor's acknowledgment of the validity, perfection and priority of Lender's claims and liens shall not be binding upon any official committee of unsecured creditors in the Bankruptcy Case until the later of (i) thirty (30) days after the Petition Date, or (ii) thirty (30) days after the date of formation of any such committee. |
| A waiver or modification of Code provisions or applicable rules relating to the automatic stay | Does not apply. |
| A waiver or modification of any entity's authority or right to file a plan, seek an | Does not apply. |

| **Provision** | **Applicability** |
|---|---|
| extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request to obtain authority to obtain credit under § 364 | |
| The establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order | Does not apply. |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | Applies.  The Motion seeks the entry of an order, pursuant to which the DIP Lender Lien granted under the Interim Order, DIP Financing Stipulation, and DIP Financing Documents shall be deemed valid, perfected, enforceable, non-avoidable and effective, without any further action by the Debtor or the Lender and without the necessity of execution by the Debtor or the filing or recordation of any financing statements, security agreements, mortgages, liens or other documents or the taking of any other actions. |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estates or the trustee, including any modification of the statute of limitations or other deadline to commence an action | Applies.  The Motion seeks entry of an order stipulating (by the Debtor) that the pre-petition lien and security interest of the Lender are valid, properly perfected, junior in priority as to the Property to which they attach, and not subject to avoidance under Chapter 5 of the Bankruptcy Code; provided, however, that the Debtor's acknowledgment of the validity, perfection and priority of Lender's claims and liens shall not be binding upon any official committee of unsecured creditors in the Bankruptcy Case until the later of (i) thirty (30) days after the Petition Date, or (ii) thirty (30) days after the date of formation of any such committee. |
| The indemnification of any entity | Does not apply. |
| A release, waiver, or limitation of any right under § 506(c) | Applies.  Pursuant to the Motion, the Debtor seeks entry of an order which provides that the Lender shall not be |

| Provision | Applicability |
|---|---|
|  | subject to surcharge or any other charge of any kind or nature which may otherwise be imposed upon it under Bankruptcy Code §§ 105, 506(c) or any other sections of the Bankruptcy Code, in the Debtor's Chapter 11 case or any subsequent Chapter 7 proceeding. |
| The granting of a lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a). | Does not apply. |
| Provision that grants cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (*i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law) | Does not apply. |
| Provision that deems prepetition secured debt to be postpetition debt or that uses postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b) | Does not apply. |
| Provision that provides disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the Debtor with respect to a professional fee carve out | Does not apply. |
| Provision that primes any secured lien | Does not apply. |

## IV.

## THE WAIVER OF ANY APPLICABLE STAY IS APPROPRIATE

For the reasons noted in the Motion, the Debtor will suffer immediate harm if the Debtor is not able to pay the expenses set forth in the Budget, pending a final hearing on the Motion. The Debtor requires the terms of the Interim Order to become immediately effective to ensure

1   that the Debtor will be able to obtain the proposed DIP Financing from the Lender and use the

2   proceeds received therefrom to pay such critical expenses.  Based on the foregoing, the Debtor

3   requests that any applicable stay, including the stay provided under Bankruptcy Rule 6004, be

4   waived to allow the Interim Order to become immediately effective.

5                                              **V.**

6                                        **<u>CONCLUSION</u>**

7            Based upon all of the foregoing, the Debtor respectfully requests that this Court:

8            (1)     grant the relief requested in the Motion on an interim basis;

9            (2)     enter the proposed form of the Interim Order attached as **<u>Exhibit "A"</u>** to the Hix

10  Declaration filed concurrently herewith;

11           (3)     schedule a Final Hearing on the Motion to consider entry of a Final Order

12  granting the relief requested in the Motion on a final basis; and

13           (4)     grant such further relief as the Court deems just and proper.

14  Dated:  March 19, 2015                        MALIBU ASSOCIATES, LLC

15

16                                      By:___*/s/ Lindsey L. Smith*_____
                                            DAVID L. NEALE
17                                          LINDSEY L. SMITH
                                            LEVENE, NEALE, BENDER, YOO
18                                              & BRILL L.L.P.
                                            Proposed Attorneys for Debtor and
19                                          Debtor in Possession

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing documents described as DEBTOR'S MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 364(c), 364(d)(1) AND 364(e); (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE AND 4001(c); AND (III) GRANTING RELATED RELIEF THEREO; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 19, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

David L. Neale on behalf of Debtor Malibu Associates, LLC, a California limited liability company
dln@lnbrb.com

Lindsey L Smith on behalf of Debtor Malibu Associates, LLC, a California limited liability company
lls@lnbyb.com, lls@ecf.inforuptcy.com

Lindsey L Smith on behalf of Interested Party Courtesy NEF
lls@lnbyb.com, lls@ecf.inforuptcy.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

Joshua D Wayser on behalf of Creditor U.S. Bank National Association, as successor-in-interest to the Federal Deposit Insurance Corporation
joshua.wayser@kattenlaw.com,
jessica.mickelsen@kattenlaw.com;kim.johnson@kattenlaw.com,ecf.lax.docket@kattenlaw.com,adelle.shafer@kattenlaw.com

**2.  SERVED BY UNITED STATES MAIL**:
On March 19, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

N/A

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 19, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

| Chambers Copy via Overnight Delivery | Via Overnight Delivery |
|---|---|
| Hon. Deborah J. Saltzman | Counsel for the United States Trustee |
| United States Bankruptcy Court | Brian D. Fittipaldi, Esq. |
| Central District of California | 128 East Carrillo Street |
| 1415 State Street, Courtroom 202 | Santa Barbara, CA 93101 |
| Santa Barbara, CA 93101-2511 | |

☒  Service information continued on attached page re service **Via Overnight Delivery**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 19, 2015 | John Berwick | /s/ John Berwick |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-9
Case 9:15-bk-10477-DS
Central District Of California
Santa Barbara
Thu Mar 19 10:38:55 PDT 2015

Malibu Associates LLC, a California Limited
2400 Wyandotte St Ste B-102
Mountain View, CA 94043-2373

Northern Division
1415 State Street,
Santa Barbara, CA 93101-2511

Aa87, LLC
Attn: Managers
300 West Spring Street, Suite 1901
Columbus, OH 43215-7662

Abundant Life Christian Fellowship
2581 Leghorn Street
Mountain View, CA 94043-1613

Ballard Rosenberg Golper
& Savitt LLP
500 North Brand Blvd., 20th Floor
Glendale, CA 91203-3304

Blakeley & Blakeley LLP
2 Park Plaza
Suite 400
Irvine, CA 92614-8514

Bob Burke & Company
1100 S. Flower Street
Suite 3300
Los Angeles, CA 90015-2289

David L. Neale
Levene, Neale, Bender, Yoo & Brill LLP
10250 Constellation Blvd., Ste. 1700
Los Angeles, CA 90067-6253

EPD Consultants
20722 Main Street
Carson, CA 90745-1117

Employment Development Department
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Evicom Corporation
4165 E. Thousand Oaks Blvd.
Suite 290
Thousand Oaks, CA 91362-3815

FISREF Investment Support Services
FBO David B. Agus, MD
8631 West Third St., Suite 215E
Los Angeles, CA 90048-5943

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Glass Ratner
3424 Peachtree Road NE
Suite 2150
Atlanta, GA 30326-2869

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Joshua D. Wayser & Lorie Lazarus
Katten Muchin Rosenman LLP
2029 Century Park  East, Suite 2600
Los Angeles, CA 90067-3012

Los Angeles County Board of
Supervisors by UNITE HERE Local 11
464 S. Lucas Ave., Suite 201
Los Angeles, CA 90017-2074

Los Angeles County Treasurer and
Tax Collector
P.O. Box 54110
Los Angeles, CA 90054-0110

MPK Development LLC
Attn: Mark D. Kvamme
205 Spokane Ave.
Whitefish, MT 59937-2651

Malibu Associates LLC
901 Encinal Road
Malibu, CA  90265

Mark A. Massara, Attorney at Law
1642 Great Highway
San Francisco, CA 94122-2806

Mark D. Kvamme
205 Spokane Ave.
Whitefish, MT 59937-2651

Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017-3560

PMC Project Management
12976 Camino Del Canto
Del Mar, CA 92014-3757

Pacific Capital Holdings, Inc.
Attn: Alexis Klein
2295 Francisco Street, #2
San Francisco, CA 94123-1977

Pacific Capital Investments, LP
Attn: Alexis Klein
2295 Francisco Street, #2
San Francisco, CA 94123-1977

RCE Consultants, Inc.
23332 Mill Creek
Suite 205
Laguna Hills, CA 92653-7929

RSF, Jr., LLC
c/o Matrix Advisors, LLC
780 Third Ave., 28th Fl.
New York, NY 10017-2024

Richard S. Fuld, Jr.
c/o Matrix Advisors, LLC
780 Third Avenue, 28th Floor
New York, NY 10017-2024

(p)CALIFORNIA STATE BOARD OF EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

TGW Investment Partners, LLC
Attn: Thomas C. Hix
2400 Wyandotte Street, Suite B-102
Mountain View, CA 94043-2373

The Leone-Perkins Trust Udt 8/26/99
c/o Sequpia Capital 3000 Sand Hill
Road Bldg 4, Ste. 180
Menlo Park, CA 94025-7113

The Thomas C. Hix Company No 3 Inc.
Attn: Thomas C. Hix
2400 Wyandotte Street, Suite B-102
Mountain View, CA 94043-2373

Third Millennium Trust
c/o Sequoia Capital, 3000 Sand Hill
Road Bldg 4, Suite 180
Menlo Park, CA 94025-7113

Thomas C. Hix
2400 Wyandotte Street
Ste. B-101
Mountain View, CA 94043-2373

U.S. Bank, National Association
Attn: Real Estate Group
1515 Westcliff Drive, 2nd Floor
Newport Beach, CA 92660-5520

United States Trustee (ND)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

David L. Neale
Levene Neale Bender Rankin & Brill LLP
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067-6253

Lindsey L Smith
Levene, Neale, Bender, Rankin & Bri
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067-6253

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)U.S. Bank National Association, as success

(d)MPK Development, LLC
Attn: Mark D. Kvamme
205 Spokane Ave.
Whitefish, MT 59937-2651

(d)Malibu Associates, LLC
901 Encinal Road
Malibu, CA 90265

(d)The Thomas C. Hix Company No. 3 Inc
Attn: Thomas C. Hix
2400 Wyandotte Street, Suite B-102
Mountain View, CA 94043-2373

End of Label Matrix
Mailable recipients    39
Bypassed recipients     5
Total                  44