DAVID L. NEALE (SBN 141225)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dln@lnbyb.com, lls@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>MALIBU ASSOCIATES, LLC,<br><br>    Debtor. | Case No. 9:15-bk-10477-DS<br><br>Chapter 11<br><br>**DECLARATION OF THOMAS C. HIX IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN INTERIM ORDER:**<br>**(I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 364(c), 364(d)(1) AND 364(e);**<br>**(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE AND 4001(c); AND**<br>**(III) GRANTING RELATED RELIEF**<br><br>DATE:  To Be Set<br>TIME:  To Be Set<br>PLACE: To Be Determined |

1

## DECLARATION OF THOMAS C. HIX

I, Thomas C. Hix, hereby declare as follows:

1.      I am over 18 years of age.  I am the President of the co-managing member of Malibu Associates, LLC, a California limited liability company, debtor and debtor in possession herein (the "Debtor").  Accordingly, I am familiar with the business operations and financial books and records of the Debtor. I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I have access to the Debtor's books and records. I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my knowledge of the Debtor's books and records.

3.      I submit this declaration in support of the *"Debtor's Motion For Entry Of An Interim Order: (I) Authorizing Debtor To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), 364(d)(1) And 364(e); (II) Scheduling A Final Hearing Pursuant to Bankruptcy Rule 4001(c); And (III) Granting Related Relief"*  (the "Motion"). Pursuant to the Motion, the Debtor is seeking entry of the interim order (the "Interim Order") in the form attached hereto as **Exhibit "A."**

4.      The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on March 10, 2015 (the "Petition Date").  The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.      The Debtor's principal asset is the real property located at 901 Encinal Canyon Road, Malibu, California 90265 (the "Property"). The Property, which is commonly known as the Malibu Country Club, is comprised of 648.5 acres and includes an 18-holf golf course, a club

house of approximately 10,000 square feet, and a maintenance facility of approximately 4,000 square feet.

6.      The Debtor also holds a 100% interest in Malibu Golf Club, LLC, which is the entity that operated the golf course and club located on the Property prior to cessation of the operations of the golf course and club in November of 2014.

7.      The Property was purchased by the Debtor in or around 2006 for the purpose of redeveloping the Property and the golf course and structures thereon. Pursuant to an appraisal obtained by the Debtor in November of 2014, the Property, as-is, has a value of approximately $75,900,000.

8.      Since the Debtor's acquisition of the Property, the Debtor has been working on obtaining the requisite final land entitlements for the development of the Property, including obtaining approval from the applicable governmental agencies to develop the Property and ultimately, from the California Coastal Commission (the "Entitlements").

9.      In order to fund the Debtor's purchase and redevelopment of the Property, on March 28, 2006 and April 4, 2006, Malibu obtained loans from California National Bank ("Cal National") in the original principal amounts of $28,500,000 and $11,500,000, respectively (the "Cal National Loans"). The Cal National Loans were secured by deeds of trust (the "Cal National Deeds of Trust"), which I understand were recorded against the Property on March 28, 2006 and June 15, 2006, and which I understand are recorded as instrument numbers 2006-0716907 and 06-1844353. Additionally, the Cal National Loans were secured by all assets of the Debtor pursuant to a UCC Financing Statement, which I understand was recorded with the California Secretary of State on April 4, 2006 and bears filing number 06-7065064751.

10.      In 2009, the Debtor defaulted on the Cal National Loans and I understand that thereafter, on August 11, 2009, Cal National recorded notices of default on August 11, 2009 as instrument numbers 20091226839 and 20091226840.

11.      On or about October 30, 2009, Cal National was placed in receivership by the Federal Deposit Insurance Corporation (the "FDIC") and the FDIC on that same day assigned substantially all of the assets of Cal National to U.S. Bank, National Association (the "Bank"),

including all of Cal National's rights, duties, claims and obligations with respect to the Cal National Loans including, without limitation, Cal National's rights under the Cal National Deeds of Trust.

12. Subsequently, on November 3, 2009, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code thereby commencing bankruptcy case number 1:09-bk-24625-MT (the "First Bankruptcy Case"). During the First Bankruptcy Case, with the approval of the Bankruptcy Court, the Debtor and the Bank entered into a *Consolidation Agreement*, which consolidated, amended, and superseded the Cal National Loans into a single loan in the principal amount of $46,771,683.85 (the "Loan"). The Loan was memorialized in, among other documents, three promissory notes, a loan agreement, and a deed of trust which became the first priority lien against the Property and which I understand was recorded against the Property on June 29, 2011 as instrument number 20110881902 (the "Bank Deed of Trust"). In addition, the Loan is secured by all assets of the Debtor pursuant to a UCC Financing Statement, which I understand was recorded with the California Secretary of State on June 27, 2011 and bears filing number 11-7274935473.

13. On January 1, 2015, the Debtor and Aa87, LLC (the "Lender") entered in to that certain *Secured Promissory Note* dated January 1, 2015 (the "Note"), and that certain *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated January 1, 2015 (the "Deed of Trust" together with the Note, the "Pre-Petition Financing Documents") pursuant to which the Debtor obtained a $3,000,000 line of credit from the Lender for the purpose of, among other things, covering the Debtor's operating costs and allowing the Debtor to maintain the Property while it attempted to market the Property for sale. Pursuant to the terms of the Pre-Petition Financing Documents, the Deed of Trust is expressly subordinate to the Bank Deed of Trust and prohibits the Lender from foreclosing or taking any action to enforce its rights under the Note or the Deed of Trust unless and until the Bank is paid in full. I understand that the Deed of Trust was recorded against the Property on February 6, 2015 as instrument number 20150138777. As of the Petition Date, the Debtor had drawn on $473,000.00 of the line of credit provided by the Lender.

14. In addition to the foregoing secured debt, which is in the total approximate amount of $47,244,683.85, the Debtor has approximately $125,000.00 of pre-petition, general unsecured debt. In total, I estimate that the Debtor has a total of approximately $47,369,683.85 of pre-petition debt.

15. Pursuant to the *Consolidation Agreement* and Loan, the Debtor was required to meet certain deadlines for obtaining approval of certain Entitlements necessary to redevelop the Property.

16. In order to provide an extension of certain deadlines by which the Debtor was required to obtain certain Entitlements under the *Consolidation Agreement* and Loan, on or about December 15, 2012 and again on January 28, 2014, the Debtor and the Bank entered into amendments to the *Consolidation Agreement* and Loan. Taking into account the aforementioned amendments, the Bank contends that the Loan matured on October 15, 2014 (the "Maturity Date").

17. The Debtor did not pay off the Loan on the Maturity Date. Thereafter, the Bank declared an event of default under the Loan and the Bank Deed of Trust and has asserted that all amounts owed under the Loan are due and payable. On October 28, 2014, the bank recorded a notice of default, which I understand appears as instrument number 20110881902 (the "NOD").

18. Thereafter, on February 2, 2015, the Bank caused to be recorded a Notice of Trustee's Sale with respect to the Property. The Trustee's sale was continued from time to time after the recording of the Notice of Trustee's sale and most recently was continued to March 13, 2015.

19. Prior to the Petition Date, the Debtor obtained approval of the Entitlements by the Los Angeles Board of Supervisors and other necessary governmental agencies. However, the approval of the Entitlements was delayed due to an appeal ("Appeal") of the earlier approval of the Entitlements in November, 2014 that was filed with the Los Angeles County Board of Supervisors by Unite Here Local 11 (the "Union"), which sought to unionize certain aspects of the final redeveloped project. The Appeal has now been resolved pursuant to that certain *Memorandum of Agreement* dated February 20, 2015 and entered into by and between the Debtor

and the Union, pursuant to which the Union agreed to withdraw the Appeal. Even though the Union withdrew the Appeal on February 20, 2015, it took until March 3, 2015 for the Los Angeles County to process the Notice of Final Action of the CDP approval (the "Notice of Final Action") to be forwarded to the California Coastal Commission. The California Coastal Commission received the Notice of Final Action on March 6, 2015 and the public appeal period will terminate on March 19, 2015 at 5:00 p.m., provided that no appeal is filed prior to the deadline.

20. During the year or so prior to the Debtor's bankruptcy filing, the Debtor marketed the Property for either a JV partner or for sale. On or about February 24, 2015, the Debtor and The Armada Enterprises, Inc. (the "Buyer") entered into an *Agreement of Purchase and Sale* (the "Purchase Agreement") pursuant to which the Buyer is to purchase the Property from the Debtor. However, as a result of the Bank's refusal to continue to the Trustee's sale of the Property scheduled for March 13, 2015, the Buyer did not make the requisite deposit required under the Purchase Agreement. Notwithstanding the foregoing, the Debtor and the Buyer are continuing to negotiate regarding the sale of the Property to the Buyer.

21. In order to protect the Debtor's substantial equity in the Property and allow the Debtor time to obtain final approval of all Entitlements (which once obtained, will greatly increase the value of the Property), the Debtor was forced to seek relief by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

22. Through the Debtor's bankruptcy case, the Debtor intends to complete the Entitlements process and market and sell the Property for the highest possible price. I believe that the sale of the Property will yield proceeds sufficient to pay the Bank and other creditors in full.

23. Since the Debtor ceased operations in November 3rd, 2014, the Debtor does not generate any cash. Thus, the Debtor requires funding to maintain the Property and preserve the value of the Property while the Debtor pursues a marketing and sale process which will allow the Debtor to sell the Property for the highest possible price.

24.     Fortunately, the Lender has agreed to provide the Debtor with secured post-petition financing ( "DIP Financing"), on the same terms and conditions as those set forth in that certain pre-petition loan made by the Lender to the Debtor pursuant to the Pre-Petition Financing Documents and subject to the terms and conditions set forth in that certain *Stipulation Authorizing The Debtor To Incur Secured Debt Pursuant To 11 U.S.C. § 364(c)(3)* (the "DIP Financing Stipulation") and such other agreements and documents as may be reasonably requested by Lender in order to memorialize and effect the DIP Financing (collectively, the "DIP Financing Documents"). True and correct copies of the Note and the Deed of Trust, which compromise the Pre-Petition Financing Documents are attached as Exhibit "1" and "2" to the DIP Financing Stipulation, a true and correct copy of which is attached hereto as **Exhibit "B".**

25.     Based on the Debtor's Budget, which sets forth the Debtor's projected cash receipts and disbursements for the 13-week period following the Petition Date, I believe that the proposed DIP Financing will provide the Debtor with sufficient funds to complete the Entitlements and maintain the Property until the sale of the Property is successfully consummated.  A true and correct copy of the Budget is attached as Exhibit "3" to the DIP Financing Stipulation, which as stated above is attached hereto as **Exhibit "B"**.

26.     I submit that the Debtor is unable to obtain sufficient interim and long-term financing from sources other than the Lender on terms and subject to conditions more favorable than under the DIP Financing Documents, and is not able to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code.  I further submit that the Debtor is also unable to obtain secured credit allowable under Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Financing Documents without granting to the Lender a valid, enforceable, non-avoidable and fully perfected lien and security interest pursuant to Section 364(c)(3) of the Bankruptcy Code (collectively, the "DIP Lender Lien") in and on all of Debtor's pre-petition and post-petition real and/or personal property and rights, whether presently existing or hereinafter acquired, including, but not limited to, pre-petition and post-petition cash, cash equivalents, accounts, accounts receivable, contracts, contract rights, patents, trademarks and copyrights, chattel paper, documents, instruments,

reserves, reserve accounts, rebates, machinery, equipment, inventory, furniture, fixtures and general intangibles, and all substitutions, replacements, additions and accessions to the personal property, all books and records pertaining to accounts, together with all proceeds, profits and products of the foregoing (collectively, the "Collateral") to secure all of the obligations of the Debtor under and with respect to the DIP Financing as provided in the DIP Financing Documents, the DIP Financing Stipulation, and Interim Order.

27.     I believe that the granting of the DIP Lender Lien is warranted, appropriate and necessary given the circumstances of this case where the Lender has agreed to provide the Debtor with critically necessary emergency financing, without which the value of the Property would suffer harm.

28.     As set forth in the DIP Financing Documents,  the DIP Lender Lien shall be junior to any valid, binding, enforceable, unavoidable and perfected pre-petition liens and security interests of the Bank or any valid, binding, enforceable, unavoidable and perfected pre-petition purchase money security interests on specific equipment of the Debtor and any binding, enforceable, unavoidable and perfected pre-petition liens held by equipment lessors which existed as of the Petition Date and which were senior in priority to the security interests of Lender and the DIP Lender Lien shall not, in any event, attach to any claims or causes of action under Chapter 5 of the Bankruptcy Code

29.     The Lender has indicated that it is willing to provide the Debtor with the proposed DIP Financing solely on the terms and conditions set forth in the DIP Financing Documents, the DIP Financing Stipulation and the Interim Order.  After considering all of the alternatives, I have concluded, in an exercise of my sound business judgment, that the DIP Financing to be provided by the Lender, when coupled with the authorization to use the proceeds of the DIP Financing in accordance with Budget and pursuant to the terms of the DIP Financing Stipulation, represents the best financing presently available to the Debtor.

30.     To date, the only current financing commitment that has been provided to the Debtor is the one offered by the Lender. As discussed above, the Lender has offered to provide the Debtor with post-petition financing but solely on the same terms as the Pre-Petition

Financing Documents and subject to the terms of the DIP Financing Stipulation and on a junior priority secured basis.

31.    I have little doubt that any lender who would be willing to provide the Debtor with the necessary post-petition financing would require that its financing be secured by a senior lien against the Debtor's assets and upon terms that would very likely be less favorable than those offered by the Lender.

32.    I understand that the Lender is well aware of the fact that the Debtor would have very little chance of being able to continue to maintain the Property if not for the DIP Financing offered by the Lender. I believe that the Lender has agreed to provide the DIP Financing to the Debtor in an effort to assist the Debtor in preserving and maximizing the value of Property and to facilitate the successful sale of the Property. The amount of financing being offered to the Debtor is for an amount of up to $3,000,000 (not taking into account the already advanced $473,000) and is certainly not insignificant. I submit that the benefits afforded to the Debtor by the DIP Financing justify the protections being afforded to the Lender under the terms set forth in the DIP Financing Documents and the Motion.

33.    I believe that the DIP Financing offers the Debtor its best and, likely, only opportunity to preserve and maximize the value of the Property which will, in turn, provide the Debtor with a real opportunity to sell the Property, for the benefit of all creditors and parties in interest.

34.    Based on the foregoing, I represent that (i) the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Financing has been negotiated in good faith between the Debtor and the Lender, and (iii) any DIP Financing advances made to the Debtor by the Lender will be made in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

35.    I believe that without the proposed DIP Financing, the Debtor will be unable to maintain the Property and the value of the Property will immediately and substantially decrease. There can also be no question that such a result would cause the Debtor, its estate and its

1  creditors immediate harm. In contrast, I submit that the DIP Financing affords the Debtor the

2  ability to continue to maintain the Property and provides the Debtor with the time necessary to

3  pursue a marketing and sale process that will maximize the value of the Property. I have

4  therefore concluded that obtaining the DIP Financing from the Lender is critically important for

5  maximizing the recovery for creditors, and is therefore in the best interests of the Debtor's estate.

6      I declare under penalty of perjury under the laws of the United States of America that the

7  foregoing is true and correct.

8      Executed this 17 day of March, 2015, at Mountain View, California.

9

10

11     THOMAS C. HIX

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

# [INTERIM ORDER]

DAVID L. NEALE (SBN 141225)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dln@lnbyb.com, lls@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re<br><br>MALIBU ASSOCIATES, LLC,<br><br>          Debtor. | Case No. 9:15-bk-10477-DS<br><br>Chapter 11<br><br>**INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 364(c), 364(d)(1) AND 364(e); (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE AND 4001(c); AND (III) GRANTING RELATED RELIEF**<br><br>DATE:    To Be Set<br>TIME:    To Be Set<br>PLACE:   To Be Determined |

Upon the motion of Malibu Associates, LLC, the debtor and debtor in possession in the above-captioned Chapter 11 bankruptcy case (the "Debtor"), filed on March 19, 2015 (the "Motion"), for entry of an interim order (this "Interim Order") and a final order (a "Final Order"), under sections 105, 361, 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rules 2081-1 and 4001-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), seeking, among other things:

(1)     authorization for the Debtor to obtain post-petition financing (the "DIP Financing") from Aa87, LLC (the "Lender") on the same terms and conditions as those set forth in that certain pre-petition loan made by the Lender to the Debtor pursuant to that certain *Secured Promissory Note* dated January 1, 2015 (the "Note"), and that certain *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated January 1, 2015 (the "Deed of Trust" together with the Note, the "Pre-Petition Financing Documents") and subject to the terms and conditions set forth in that certain *Stipulation Authorizing The Debtor To Incur Secured Debt Pursuant To 11 U.S.C. § 364(c)(3)* (the "DIP Financing Stipulation") and such other agreements and documents as may be reasonably requested by Lender in order to memorialize and effect the DIP Financing (collectively, the "DIP Financing Documents"). The Deed of Trust and Note are attached as Exhibits "1" and "2," respectively, to DIP Financing Stipulation, which is attached as **Exhibit "B"** to the Declaration of Thomas C. Hix filed in support of the Motion (the "Hix Declaration");

(2)     approval of the terms of the DIP Financing Stipulation, and authorization for the Debtor to execute and enter into the DIP Financing Documents, including authorization for the Debtor to execute and enter into the DIP Financing Stipulation in substantially the form attached as **Exhibit "B"** to the Hix Declaration, and to perform such other and further acts as may be required in connection with the DIP Financing Documents;

(3)     the granting of a valid, enforceable, non-avoidable and fully perfected lien and security interest pursuant to Section 364(c)(3) of the Bankruptcy Code (collectively, the "DIP

Lender Lien") in and on all of Debtor's pre-petition and post-petition real and/or personal property and rights, whether presently existing or hereinafter acquired, including, but not limited to, pre-petition and post-petition cash, cash equivalents, accounts, accounts receivable, contracts, contract rights, patents, trademarks and copyrights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, machinery, equipment, inventory, furniture, fixtures and general intangibles, and all substitutions, replacements, additions and accessions to the personal property, all books and records pertaining to accounts, together with all proceeds, profits and products of the foregoing (collectively, the "Collateral") to the DIP Lender to secure all of the obligations of the Debtor under and with respect to the DIP Financing; provided, however that the DIP Lender Lien shall be junior to any valid, binding, enforceable, unavoidable and perfected pre-petition liens and security interests of U.S. Bank National Association, as successor in interest to Federal Deposit Insurance Corporation, as receiver for California National Bank (the "Bank") or any valid, binding, enforceable, unavoidable and perfected pre-petition purchase money security interests on specific equipment of the Debtor and any binding, enforceable, unavoidable and perfected pre-petition liens held by equipment lessors which existed as of the date of the Debtor's bankruptcy filing (the "Petition Date") and which were senior in priority to the security interests of Lender and provided, however that the DIP Lender Lien shall not, in any event, attach to any claims or causes of action under Chapter 5 of the Bankruptcy Code;

(4)     the granting of an administrative expense claim equivalent in priority to a claim under Section 364(c)(1) of the Bankruptcy Code to all post-petition obligations of the Debtor incurred in connection with the DIP Financing;

(5)     authorization for the Debtor's use of proceeds of the DIP Financing in accordance with the operating budget (the "Budget") attached as Exhibit "3" to the DIP Financing Stipulation (which is attached as **Exhibit "B"** to the Hix Declaration);

(6)     the waiver by the Debtor of any right to surcharge or impose any other charge of any kind or nature which may otherwise be imposed upon the Lender under the Bankruptcy Code §§ 105, 506(c) or any other section of the Bankruptcy Code, in this  Chapter 11 case or any subsequent Chapter 7 proceeding;

(7)     the scheduling of a final hearing (the "Final Hearing") to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(8)     the waiver of any applicable stay, including under Rule 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and provision for immediate effectiveness of the Interim Order; and

upon due and sufficient notice of the Motion and the interim hearing on the Motion (the "Interim Hearing") having been provided by the Debtor; and after considering all of the pleadings filed with this Court in connection with the Motion; and upon the record made by the Debtor at the Interim Hearing; and the Court having found and determined that the relief sought in the Motion on an interim basis is in the best interest of the Debtor, its estate, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     **Petition Date.** On March 10, 2015 (the Petition Date), the Debtor filed its voluntary petition with this Court commencing its Chapter 11 case. The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.     **Jurisdiction; Venue.** This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought herein are Section 105, 361, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(c) and 9013 and Local Rules 2081-1 and 4001-2. Venue of this Chapter 11 case and the Motion in this district if proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     **Notice.** The Interim Hearing is held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rules 2081-1 and 4001-2. Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtor, whether by facsimile, electronic mail, overnight courier or hand delivery, on March 20, 2015, to certain parties interest, including: (a) the

Office of the United States Trustee for the Central District of California, Northern Division, (b) the 20 largest non-insider unsecured creditors of the Debtor, and (c) the Lender and the Bank, (collectively, the "Noticed Parties"). Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001 (c) and (d) and the Local Rules.

D. **Budget for Use of DIP Financing**. Attached hereto as **Exhibit "1"** is the Budget, which sets forth the Debtor's projected cash receipts and cash disbursements (by line item) on a weekly basis for the thirteen (13) week period beginning on the Petition Date through and including June 7, 2015. The Budget is an integral part of this Interim Order and has been relied upon by the Lender in consenting to this Interim Order, to provide the DIP Financing and to permit the use of the proceeds from the DIP Financing. The Debtor shall be permitted to deviate from the Budget, without the need for any further Court order, in accordance with the terms and conditions and subject to the limitations set forth in the DIP Financing Stipulation and the DIP Financing Documents.

E. **Immediate Need for Funding**. The Debtor's ability to maintain business operations post-petition is essential to maintaining and preserving the value of its real property located at 901 Encinal Canyon Road, Malibu, California 90265 (the "Property"). However, since the Debtor does not currently generate any cash, the Debtor does not have sufficient available sources of working capital and financing to maintain the Property without the DIP Financing and authorized use of the proceeds received therefrom. In the absence of the DIP Financing and the authority to use the proceeds therefrom, the Debtor's estate would suffer immediate harm, including, without limitation, a substantial decline in the value of the Property. Based on the foregoing, it is critical and in the best interests of the Debtor's estate for the Debtor to be authorized to obtain the proposed DIP Financing and to use the proceeds received therefrom in accordance with the terms and conditions set forth in this Interim Order, the DIP Financing Documents and the DIP Financing Stipulation.

F. **No Credit on More Favorable Terms**. The Debtor is unable to obtain sufficient interim and long-term financing from sources other than the Lender on terms and subject to

conditions more favorable than under the DIP Financing Documents, and is not able to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. The Debtor is also unable to obtain secured credit allowable under Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Financing Documents without granting to the Lender the DIP Lender Lien.

G. **Reasonable; Good Faith**. The Lender has indicated that it is willing to provide the Debtor with the proposed DIP Financing solely on the terms and conditions set forth in the DIP Financing Documents, the DIP Financing Stipulation and this Interim Order. After considering all of the alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing to be provided by the Lender, when coupled with the authorization to use the proceeds of the DIP Financing in accordance with Budget and pursuant to the terms of the DIP Financing Stipulation, represents the best financing presently available to the Debtor. Accordingly, the Debtor represents that (i) the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Financing has been negotiated in good faith between the Debtor and the Lender, and (iii) any DIP Financing advances made to the Debtor by the Lender will be made in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief sought by this Interim Order, the Debtor's estate will be harmed. Approval of the DIP Financing and authorization of the use of the proceeds therefrom in accordance with this Interim Order, the DIP Financing Documents and the DIP Financing Stipulation are, therefore, in the best interests of the Debtor's estate.

H. **Consent by the Lender**. Subject to and conditioned upon the entry of this Interim Order, the Lender has consented to (i) the financing arrangements contemplated by this Interim Order and the DIP Financing Documents, and (ii) the Debtor's proposed use of proceeds received from the DIP Financing, on the terms and conditions set forth in the DIP Financing Stipulation, in

this Interim Order and in the DIP Financing Documents, and such consent is binding on the Lender.

I.     **Good Cause Shown; Best Interests**.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  Absent entry of this Interim Order, the Debtor's business, assets and estate will be immediately harmed. Good cause has been shown and entry of this Interim Order is in the best interest of the Debtor's estates and creditors as its implementation will, among other things, enhance the Debtor's prospects for the successful sale of the Property pursuant to any subsequent orders of this Court.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

A.     **Approval of Interim Order.**   The Motion is approved on the terms and conditions set forth in this Interim Order. This Interim Order shall become effective immediately upon its entry**.**

B.     **Approval of DIP Financing Documents; Authority Thereunder.**  The Debtor is expressly authorized and empowered to execute and deliver, and on such execution and delivery, directed to perform all of their obligations under the DIP Financing Documents and such additional documents, instruments and agreements as may be required or requested by the Lender pursuant to the DIP Financing Documents to implement the terms or effectuate the purposes of this Interim Order. The Debtor is authorized to comply with and perform all of the terms and conditions contained therein, and directed to repay amounts borrowed, together with interest, fees and premiums (as applicable) thereon and any other outstanding obligations to the Lender in accordance with and subject to the terms and conditions set forth in the DIP Financing Documents and this Interim Order.  In the event of any inconsistency between the DIP Financing Documents and this Interim Order, this Interim Order shall control.

C.     **Authorization to Use DIP Financing.** Upon executing the DIP Financing Stipulation and the DIP Financing Documents, the Debtor is immediately authorized to obtain the DIP Financing.  The Debtor is authorized to use the proceeds of the DIP Financing in the

operation of the Debtor's business, _provided_ that any proposed use of the proceeds of the DIP Financing is consistent with the terms of the DIP Financing Documents, the DIP Financing Stipulation, the Budget and this Interim Order. Authorization to use the proceeds of the DIP Financing will terminate upon the maturity dates set forth in the DIP Financing Documents unless terminated earlier pursuant to the terms of the DIP Financing Documents or this Interim Order.

      **D.**    **Validity of DIP Financing Documents.** Upon execution and delivery of the DIP Financing Documents, the DIP Financing Documents shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Financing Documents and the terms of this Interim Order for all purposes during this Chapter 11 Case, in any subsequently converted Chapter 11 Case of the Debtor under Chapter 7 of the Bankruptcy Code or after dismissal of this Chapter 11 Case. Any DIP Financing provided to the Debtor under the DIP Financing Documents until the Final Hearing shall be used by the Debtor only as permitted under the DIP Financing Documents, the DIP Financing Stipulation and this Interim Order, and in accordance with the Budget.

      **E.**    **DIP Lender Lien.** To secure all obligations of the Debtor under and with respect to the DIP Financing, the Lender is hereby granted a (effective upon the date of this Interim Order, without the necessity of the execution by Debtor or the filing or recordation of mortgages, security agreements, mortgages, financing statements, or any other instruments or otherwise), valid, enforceable, non-avoidable and fully perfected lien in and on the Collateral; _provided_, _however_ that the DIP Lender Lien shall be junior to any valid, binding, enforceable, unavoidable and perfected pre-petition liens and security interests of the Bank or any valid, binding, enforceable, unavoidable and perfected pre-petition purchase money security interests on specific equipment of the Debtor and any binding, enforceable, unavoidable and perfected pre-petition liens held by equipment lessors which existed as of the Petition Date and which were senior in priority to the security interests of Lender and _provided_, _however_ that the DIP Lender Lien shall not, in any event, attach to any claims or causes of action under Chapter 5 of the Bankruptcy Code. All obligations of the Debtor to the Bank incurred in connection with the DIP

Financing shall constitute administrative expenses equivalent in priority to a claim under Section 364(c)(1) of the Bankruptcy Code.

**F.** **Stipulation By Debtor Regarding Validity Of The Lender's Claim And Lien; Investigation Rights Of Any Committee Appointed In Debtor's Case.** The Debtor acknowledges and stipulates that the pre-petition lien and security interest of the Lender are valid, properly perfected, junior in priority as to the Property, subject to the lien and security interest of the Bank, and are not subject to avoidance under Chapter 5 of the Bankruptcy Code. However, the Debtor's acknowledgment of the validity, perfection and priority of the Lender's lien and security interest shall not be binding upon an official committee of unsecured creditors appointed in the Chapter 11 Case ("Committee"), which Committee (if any) shall have until the later of (i) thirty (30) days after the Petition Date, or (ii) thirty (30) days after the date of the formation of any Committee in the Chapter 11 Case (the "Objection Period") to challenge the validity, perfection and/or priority of the Lender's liens and security interest; provided, however, that no such challenge shall impair the validity, perfection or priority of the DIP Lender Lien as set forth in the DIP Financing Stipulation, this Interim Order, and (solely with respect to the DIP Lender Lien) the DIP Financing Documents. After the expiration of the Objection Period, if no written challenge has been made to the validity, perfection and/or priority of the Lender's lien and security interest, then the pre-petition lien and security interest the Lender shall be deemed to be valid, properly perfected, junior in priority as to the Property, subject to the lien and security interest of the Bank, and not subject to avoidance under Chapter 5 of the Bankruptcy Code. Notwithstanding anything to the contrary herein and in the DIP Financing Stipulation, the Lender reserves all of its rights to contest on any grounds any challenge

**G.** **Further Assurances.** The Debtor shall execute and deliver to the Lender all such agreements, financing statements, instruments and other documents as the Lender may reasonably request to evidence, confirm, validate or evidence the perfection of the DIP Lender Lien or the lien to secure the obligations of the Debtor under the DIP Financing Documents which are being granted pursuant hereto. Further, the Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without

limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements).

**H.     506(c) Waiver**.   Subject to and effective upon entry of the Final Order, the Lender shall not be subject to any surcharge or other charge of any kind or nature which may otherwise be imposed upon it under Bankruptcy Code §§ 105, 506(c) or any other section of the Bankruptcy Code, in the Debtor's Chapter 11 Case or any subsequent Chapter 7 proceeding.

**I.     Automatic Effectiveness of Lien.**   The DIP Lender Lien granted by Debtor to the Lender pursuant to the DIP Financing Documents, DIP Financing Stipulation, and this Interim Order are hereby deemed effective, valid and perfected as of the Petition Date, without the necessity of the filing by any person of any deeds of trust, mortgages, UCC financing statements, notices of liens and security interests, documents or other instruments otherwise required to be filed under applicable non-bankruptcy law for the perfection of security interests or mortgages, with such validity and perfection being binding upon any subsequently appointed trustee, either in a Chapter 11 case or a case under any other Chapter of the Code, and on any and all other creditors of the Debtor who have or may hereafter extend credit to the Debtor, or file a claim of any nature whatsoever, in this or any superseding bankruptcy case of the Debtor, provided, however, that in the event Lender does make such filings or recordations, the Debtor shall execute all documents reasonably required by Lender to do so.

**J.     Binding Effect**.   The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtor, any Committee appointed in this Chapter 11 Case, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estates of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor). To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate of Debtor, whether in this Chapter 11 Case or in the event of the conversion of this Chapter 11 Case to a liquidation under chapter 7 of the Bankruptcy Code.   Such binding effect is an integral part of this Interim Order.

**K.** **Survival.** All obligations, covenants, agreements, representations, warranties, waivers and indemnities made by the Debtor in any of the DIP Financing Documents, the Interim Order and/or the Final Order shall survive the execution and delivery of the DIP Financing Documents, and any termination of the DIP Financing Documents and/or DIP Financing Stipulation until all obligations under the DIP Financing Documents and DIP Financing Stipulation are fully performed and indefeasibly paid in full in cash. Further, unless otherwise agreed to by the Debtor and the Lender, all of the rights, remedies, benefits and protections provided to the Lender and the Debtor under the DIP Financing Stipulation shall survive the Termination Date (as defined in the DIP Financing Stipulation).

**L.** **Restriction on Use of Proceeds of DIP Financing.** Debtor shall not be permitted to use the proceeds of the DIP Financing for any purpose other than as permitted under the DIP Financing Documents, the DIP Financing Stipulation, and in accordance with the Budget, except with the express prior written consent of the Lender or an order from the Bankruptcy Court.

**M.** **Jurisdiction**. This Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Financing Stipulation or the DIP Financing Documents.

**N.** **Authorized Signatories**. The signature of any designated member or the Debtor's attorneys appearing on any one or more of the DIP Financing Documents shall be sufficient to bind the Debtor. No board of directors or other approval shall be necessary.

**O.** **Order Effective**. This Interim Order shall be effective as of the date of entry of this Interim Order.

**P.** **Controlling Effect of Interim Order**. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, any prepetition agreement or any DIP Financing Documents, the provisions of this Interim Order shall control.

**Q.** **Final Hearing**. A final hearing on the Motion shall be heard before this Court on _____, 2015 at __:__ _.m. at the United States Bankruptcy Court, 1415 State Street, Courtroom "202", Santa Barbara, California. Any objection to the final approval of the Motion

shall be filed with the Court and served upon proposed counsel for the Debtor by

_____, 2015. Any reply to any objection to the final approval of the Motion shall

be filed with the Court and served upon objecting parties, by _____, 2015.

###

# EXHIBIT "B"

## [DIP FINANCING STIPULATION]

DAVID L. NEALE (SBN 141225)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dln@lnbyb.com, lls@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

NORTHERN DIVISION

| | |
|---|---|
| In re | Case No. 9:15-bk-10477-DS |
| | Chapter 11 |
| MALIBU ASSOCIATES, LLC, | **STIPULATION AUTHORIZING THE DEBTOR TO INCUR SECURED DEBT PURSUANT TO 11 U.S.C. § 364(c)(3)** |
| Debtor and Debtor in Possession. | DATE: To Be Set <br> TIME: To Be Set <br> PLACE: To Be Determined |

Malibu Associates, LLC (the "Debtor"), Chapter 11 debtor and debtor in possession herein, on the one hand, and Aa87, LLC ("Lender"), on the other hand, by and through their respective counsel, hereby enter into this stipulation (the "Stipulation") and stipulate and agree with respect to the following facts:

1.      On March 10, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

2.      No trustee or examiner has been appointed, and the Debtor continues to manage

1

its financial affairs as "debtor in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtor's principal asset is comprised of a parcel of approximately 648.5 acres of real property commonly known as the Malibu Country Club (the "<u>Property</u>"). Located at the Property is an 18-hole golf course, a club house of approximately 10,000 square feet, and a maintenance facility of approximately 4,000 square feet. The Debtor has ceased golf operations at the Property. Notwithstanding the cessation of its operations, the Debtor continues to incur expenses relating to maintaining the Property and tending to its upkeep.

4. Prior to the Petition Date, the Debtor obtained financing from Lender of up to $3,000,000. The pre-petition loan to the Debtor was made pursuant to that certain Secured Promissory Note dated January 1, 2015 (the "<u>Note</u>"), and that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated January 1, 2015 (the "<u>Deed of Trust</u>"). True and correct copies of the Note and the Deed of Trust are attached hereto as Exhibits "1" and "2," respectively, and are referred to herein collectively as the "<u>Pre-Petition Financing Documents</u>." Prior to the Petition Date, the Lender had advanced a total of $473,000 pursuant to the terms of the Pre-Petition Financing Documents.

5. By virtue of the Pre-Petition Loan Documents referenced above, Lender asserts a junior lien on the Property, subordinate to the pre-existing lien of U.S. Bank National Association, as successor in interest to Federal Deposit Insurance Corporation, as receiver for California National Bank (the "<u>Bank</u>"). The Bank contends that its senior secured claim is in excess of $46,000,000.

6. Because the Debtor has no ongoing business operations at this time, the Debtor has no source of funds to provide for the maintenance and upkeep of the Property.

7. Notwithstanding the filing of the Chapter 11 Case, Lender has agreed to provide post-petition financing to the Debtor on the same terms and conditions as those set forth in the Pre-Petition Financing Documents. Lender's agreement to provide such post-petition financing to the Debtor is subject to the entry of one or more orders approving such financing and:

a. granting Lender a post-petition lien on the Property to secure all post-petition advances by Lender; _provided_, _however_, that the post-petition liens granted to Lender shall not, in any event, attach to any claims or causes of action under Chapter 5 of the Bankruptcy Code; and

b. finding and determining that, as to the Debtor, the pre-petition lien and security interest of Lender (A) is valid, properly perfected, and junior in priority as to the Property, subject to the lien and security interest of the Bank and (B) are not subject to avoidance under Chapter 5 of the Code; _provided_, _however_, that any official committee of unsecured creditors appointed in the Bankruptcy Case shall have until the later of (i) thirty (30) days after the Petition Date, or (ii) thirty (30) days after the date of the formation of any such committee to review and challenge the liens and security interests of Lender.

8. The financing to be provided by Lender after the Petition Date pursuant to Pre-Petition Financing Documents is sometimes referred to herein as the "DIP Financing."

9. The terms of the DIP Financing are equivalent or superior to any other financing option available to the Debtor under the circumstances of this case, and are the product of good faith arms' length negotiation among the parties. Each of the covenants and conditions in favor of Lender represents the bargained-for consideration for the DIP Financing, in the absence of which Lender would not enter into the DIP Financing.

10. The DIP Financing is necessary on an interim basis in order to avoid harm to the estate. The Debtor does not have sufficient available sources of working capital to maintain the Property in the ordinary course without the financing described herein and in the accompanying Motion, all of which is conditioned upon the relief granted herein. The relief herein granted is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, the estate, and creditors by permitting the Debtor to continue in business and preserve the value of the Property.

WHEREFORE, the parties hereto STIPULATE and AGREE, as follows:

A.     The Debtor is hereby authorized to borrow additional funds pursuant to the terms of the Pre-Petition Financing Documents beginning on the Petition Date and ending on the earlier of December 31, 2015 or the Termination Date (as defined below).  The Debtor shall use the proceeds of the DIP Financing to pay the amounts and for the expenses and disbursements set forth in the respective month's budget, and such funds shall not be used for any other purpose or in any other amount.  The Budget for the period beginning on the Petition Date through and including the week of June 1, 2015 is attached as Exhibit "3" hereto.  The Debtors shall not incur expenses nor use proceeds from the DIP Financing in an amount that exceeds by more than fifteen percent (15%) the total expenses provided in the respective week of the Budget without first obtaining Lender's written consent.

B.     The Debtors are authorized to use the proceeds received from the DIP Financing in accordance with this Stipulation until the earlier of the following (the "Termination Date"): (i) five (5) calendar days after notice by Lender to Debtor of any "Termination Event" as described below, unless within such five day period Debtor has cured such Termination Event or unless waived by Lender in writing, (ii) the date of the dismissal of the Chapter 11 Cases or the conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, (iii) the date of  appointment of a trustee in the Chapter 11 Cases, and (iv) the date upon which a closing with respect to the sale of the Property occurs.  Each of the following events constitute a "Termination Event":  (i) any material failure of Debtor to comply with the terms of the Pre-Petition Financing Documents; (ii) the failure by Debtor to pay when due operating expenses incurred after the Petition Date; (iii) the failure by Debtor to maintain property, casualty and liability insurance as required in the Pre-petition Financing Documents; (iv) the occurrence of the effective date or consummation date of a plan of reorganization for Debtor; (v) the entry by this Court or any other court of an order reversing, staying, or vacating any order approving this Stipulation or amending, supplementing, or otherwise modifying in any material manner the protections granted to Lender in the Court orders approving this Stipulation; or (vi) the entry by this Court of an order granting relief from the automatic stay imposed by Section 362 of the

Bankruptcy Code to any entity other than Lender that permits such entity to exercise foreclosure or disposition rights with respect to the Collateral (as defined below).  Upon the Termination Date, Lender shall cease any further advances of DIP Financing.

C.     The Debtor is authorized to enter into, and Lender is authorized to provide to the Debtor, on an interim basis, the DIP Financing.

D.     In consideration for the DIP Financing, the Debtor shall comply with and do all things required of the Debtor per the terms of the DIP Financing as provided herein, including but not limited to the terms of the Pre-Petition Financing Documents.

E.     The Debtor may enter into such agreements and other documents as may be reasonably requested by Lender in order to memorialize and effect the DIP Financing (collectively, the "DIP Financing Documents"), provided, however, that (i) such DIP Financing Documents shall not be inconsistent with the terms of this Stipulation; and (ii) such DIP Financing Documents, or the form of the same, shall be filed with the Court and made available to any party requesting copies thereof no later than five (5) days prior to the final hearing with respect to the approval of this Stipulation.

F.     The Debtor stipulates that the prepetition lien and security interest of Lender are valid, properly perfected, junior in priority as to the Property to which they attach, and not subject to avoidance under Chapter 5 of the Code; provided, however, that the Debtor's acknowledgement of the validity, perfection and priority of Lender's claims and liens shall not be binding upon any official committee of unsecured creditors appointed in the Bankruptcy Case until the later of (i) thirty (30) days after the Petition Date, or (ii) thirty (30) days after the date of the formation of any such committee.

G.     In order to secure all of the obligations of Debtors to Lender under the DIP Financing Documents (collectively, the "Obligations"), Lender shall be and hereby is granted valid, enforceable, non-avoidable and fully perfected lien and security interest pursuant to Section 364(c)(3) of the Bankruptcy Code (collectively, the "DIP Lender Lien") in and on all of Debtor's pre-petition and post-petition real and/or personal property and rights, whether

5

presently existing or hereinafter acquired, including, but not limited to, pre-petition and post-petition cash, cash equivalents, accounts, accounts receivable, contracts, contract rights, patents, trademarks and copyrights, chattel paper, documents, instruments, reserves, reserve accounts, rebates, machinery, equipment, inventory, furniture, fixtures and general intangibles, and all substitutions, replacements, additions and accessions to the personal property, all books and records pertaining to accounts, together with all proceeds, profits and products of the foregoing (collectively, the "Collateral"); provided, however that the DIP Lender Liens shall be junior to any valid, binding, enforceable, unavoidable and perfected pre-petition liens and security interests of the Bank or any valid, binding, enforceable, unavoidable and perfected pre-petition purchase money security interests on specific equipment of the Debtor and any binding, enforceable, unavoidable and perfected pre-petition liens held by equipment lessors which existed as of the Petition Date and which were senior in priority to the security interests of Lender.

H.     All obligations of Debtor to Lender incurred in connection with the DIP Financing shall constitute administrative expenses equivalent in priority to a claim under section 364(c)(1) of the Bankruptcy Code.

I.     The grant of the DIP Lender Liens pursuant to this Stipulation shall be without prejudice to the right of Lender to claim that such liens and security interests are, or may become, inadequate.

J.     Lender shall not be subject to any charge of any kind or nature which may otherwise be imposed upon it under Bankruptcy Code §§ 105, 506(c) or any other sections of the Bankruptcy Code in this Chapter 11 proceeding or any subsequent Chapter 7 proceeding.

K.     All of the liens, security interests and priorities provided for in this Stipulation and the DIP Financing Documents are valid, binding, enforceable, and of a junior priority as to all of the Debtor's assets (except as may be expressly provided in this Stipulation), and the security interests provided for herein and therein have been duly granted, properly attached and duly perfected, without the need of any additional actions being taken by or on behalf of Lender,

including, but not limited to, the filing or recording of Uniform Commercial Code financing statements; provided, however, that in the event Lender does make such filings or recordations, the Debtor shall execute all documents reasonably required by Lender to do so.

L.     For the avoidance of doubt, that nothing contained in this Stipulation shall be construed as, or be deemed, a waiver, modification, or other limitation of any of Lender's rights against third parties, including without limitation Lender's rights to proceed against account debtors under Section 9-607 of the Uniform Commercial Code or other applicable non-bankruptcy law, all of such rights being fully reserved to Lender.

Dated: March 17, 2015

MALIBU ASSOCIATES, LLC

By: _____
DAVID L. NEALE
LEVENE, NEALE, BENDER, YOO &
BRILL L.L.P.
Proposed Attorneys for Debtor and
Debtor in Possession

Dated: March 17, 2015

Aa87, LLC

By: _____
ALLAN HERZLICH
HERZLICH & BLUM, LLP
Attorneys for Aa87, LLC

## EXHIBIT "1"

## [NOTE]



## SECURED PROMISSORY NOTE

$3,000,000                                                              January 1, 2015

FOR VALUE RECEIVED, Malibu Associates, LLC, a California limited liability company ("**Borrower**"), hereby promises to pay to the order of Aa87, LLC, an Ohio limited liability company (together with any and all of its universal successors, participants and assigns and/or any other holder of this Note, collectively "**Lender**"), without offset of any kind or nature, in immediately available funds in lawful money of the United States of America, at such place as the holder of this Secured Promissory Note (this "**Note**") may from time to time designate in writing, all amounts advanced under this Note up to the maximum amount set forth above, together with interest on the unpaid principal balance of this Note from day to day outstanding, all as hereinafter provided. The indebtedness evidenced by this Note may be disbursed by Lender in the form of advances made from time to time by the Lender to the Borrower. This Note evidences the Borrower's obligation to repay those advances. The aggregate principal amount of debt evidenced by this Note is the amount reflected from time to time in the records of the Lender.

1.      **Payment and Maturity**.

        (a)      _Payments_.  Until such time as all amounts due hereunder are paid in full to Lender, accrued and unpaid interest shall accrue at the rate per annum equal to the Applicable Interest Rate (as defined below). All payments under this Note shall be due and payable on the Maturity Date (as defined below).

        (b)      _Maturity Date_.  As used herein, the term "**Maturity Date**" shall mean the earlier to occur of the following: (i) the date thirty (30) days from the date that the aggregate loans from U.S. Bank National Association (successor-in-interest to California National Bank and "**Senior Lender**") for which there is a principal amount outstanding of approximately $48,000,000 together with default interest, Trustee's and attorney's fees and other costs and expenses as provided under Senior Lender's loan documents is repaid in full, which loans are evidenced by multiple promissory notes and secured by, among other things, a Consolidated Deed of Trust by Borrower, as trustor, to Stewart Title of California, Inc., as trustee, for the benefit of U.S. Bank, as beneficiary, recorded on June 29, 2011 as Document No. 881902 in the Official Records of Los Angeles County, California (the "**Senior Deed of Trust**"), which Senior Deed of Trust encumbers the Property (as defined below), (ii) the date of any sale of the Property (as defined below) or any refinancing of any debt encumbering the Property either of which results in the full payment of the Senior Lender's loans, and (iii) January 1, 2017.

        On the Maturity Date, the entire outstanding principal balance of this Note, together with all accrued and unpaid interest thereon, and all other amounts payable hereunder and/or under the other Loan Documents, shall be due and payable in full.

2.      **Security; Insurance**.

        (a)      The security for this Note includes, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("**Deed of Trust**") of even date herewith encumbering that certain real property ("**Property**") more particularly described on _Exhibit A_ attached to the Deed of Trust. The Deed of Trust is subordinate to the Senior Deed of Trust and all obligations owed by Borrower to Senior Lender. This Note and the Deed of Trust, together with all other documents now or hereafter securing, guaranteeing or executed

1

Lender including, but not limited to, legal fees and related expneses and such other obligations as may be set forth under the Loan Documents, in such manner and order as Lender may elect in its sole and absolute discretion, any instructions from Borrower or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as defined below), (b) waive, impair or extinguish any right or remedy available to Lender hereunder or under the other Loan Documents, or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect. Whenever any payment under this Note or any other Loan Document falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

7.   **Events of Default**.

The occurrence of any one or more of the following shall constitute an "**Event of Default**" under this Note and the other Loan Documents:

(a)   Borrower fails to pay when due and payable any amounts payable by Borrower to Lender under the terms of this Note.

(b)   Any covenant, agreement or condition in this Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period, including, but not limited to, Borrower's breach of its obligation to provide, maintain and deliver to Lender, at Borrower's cost, the Insurance Policies, or any of them.

(c)   A Default or Event of Default (as therein respectively defined) occurs under any of the Loan Documents other than this Note, including the Deed of Trust.

(d)   Borrower files a bankruptcy petition, a bankruptcy petition is filed against the Borrower, or the Borrower makes a general assignment for the benefit of creditors.

(e)   A receiver or similar official is appointed for any portion of the Borrower's business, or the business is terminated, or the Borrower is liquidated or dissolved.

(f)   Any judgments or arbitration awards are entered against the Borrower, or the Borrower enters into any settlement agreements with respect to any litigation or arbitration, in an aggregate amount of Twenty-Five Thousand Dolalrs ($25,000) or more in excess of any insurance coverage.

8.   **Remedies**.

Upon the occurrence of an Event of Default, Lender may at any time thereafter, and subject to the rights of Senior Lender, exercise any one or more of the following rights, powers and remedies:

(a)   Lender may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

in connection with the loan evidenced by this Note (the "**Loan**"), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a "**Loan Document**" and collectively as the "**Loan Documents**".

(b)    As a condition to Lender's willingness to fund any request for an advance under the Loan, Borrower, at Borrower's cost, shall provide, maintain and deliver to Lender at Lender's request:  (i) an "All Risk" policy of casualty insurance for the Property, (ii) a policy of liability insurance, and (iii) such other insurance as required by Lender as determined by Lender in the exercise of its commercially reasonable judgment (collectively, the "**Insurance Policies**"). The Insurance Policies shall be in such amounts, with such carriers, afford such coverage and contain such other terms and conditions as determined by Lender in the exercise of its commercially reasonable judgment; provided that all such Insurance Policies shall contain a standard mortgagee clause naming Lender as mortgagee with loss proceeds payable to Lender subordinate to the rights of Senior Lender.

3.    **Applicable Interest Rate.**

(a)    Applicable Interest Rate.  This Note shall bear interest at a fixed rate per annum equal to seventeen percent (17.0%) (the "**Applicable Interest Rate**") from the date hereof through the Maturity Date.  Interest shall be compounded on a monthly basis and accrue based on the actual number of days elapsed and a 360 day year based on the Applicable Interest Rate. In computing the number of days during which interest accrues, the day on which funds are initially advanced shall be included regardless of the time of day such advance is made, and the day on which funds are repaid shall be included unless repayment is credited prior to close of business.

(b)    Default Interest Rate.  If any amount payable by Borrower under any Loan Document is not paid when due (excluding payment grace periods), such amount shall thereafter bear interest at the Default Interest Rate (as defined below), to the fullest extent permitted by applicable law.  Accrued and unpaid interest on past due amounts (including interest on past due interest) shall be due and payable on demand, at a per annum rate equal to the Applicable Interest Rate plus five percent (5%) (the "**Default Interest Rate**").

4.    **Prepayment.**

This Note (or portion thereof) may be prepaid in whole or in part at any time without payment of premium or penalty.

5.    **Late Charges.**

If Borrower shall upon maturity fail to make any payment under the terms of this Note as provided in Section 1 above within ten (10) days after the date such payment is due, Borrower shall pay to Lender on demand a late charge equal to five percent (5%) of the amount of such payment.  Such ten (10) day period shall not be construed as in any way extending the due date of any payment.  The late charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment.  This charge shall be in addition to, and not in lieu of, any other amount that Lender may be entitled to receive or action that Lender may be authorized to take as a result of such late payment.

6.    **Certain Provisions Regarding Payments.**

All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to

BN 17003068\6

(b)     Lender may set off the amount due against any and all accounts, credits, money, securities or other property now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

(c)     Lender may exercise any of its other rights, powers and remedies under the Loan Documents, at law or in equity.

9.     **Remedies Cumulative**.

All of the rights and remedies of Lender under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

10.     **Costs and Expenses of Enforcement**.

Borrower agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to collect this Note or to enforce any of Lender's rights and remedies under the Loan Documents, including court costs and reasonable attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with bankruptcy, insolvency or appeal. Any amount payable by Borrower under this Section 10 which is not paid within ten (10) days of Lender's demand shall thereafter bear interest at the Default Interest Rate until paid in full.

11.     **Service of Process**.

Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to Borrower. Borrower irrevocably agrees that such service shall be deemed to be service of process upon Borrower in any such suit, action, or proceeding. Nothing in this Note shall affect the right of Lender to serve process in any manner otherwise permitted by law and nothing in this Note will limit the right of Lender otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions, subject to any provision or agreement for arbitration or dispute resolution set forth in any Loan Document.

12.     **Heirs, Successors and Assigns**

The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties. he foregoing sentence shall not be construed to permit Borrower to assign its interest in the Note or other Loan Documents. In no event is Borrower's interest in this Note or the other Loan Documents assignable or assumable without the prior written consent of Lender. Provided however, Lender, without Borrower's consent, may assign its interest in the Note and Loan Documents at any time.

13.     **General Provisions**.

Time is of the essence with respect to Borrower's obligations under this Note. This Note shall be interpreted, construed and enforced according to the substantive laws of the State of Ohio. Borrower hereby (a) waives demand, presentment for payment, notice of dishonor and of

4

nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agrees to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agrees that Lender shall not be required first to institute suit or exhaust its remedies hereon against Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consents to any extensions or postponements of time of payment of this Note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submits (and waive all rights to object) to non-exclusive personal jurisdiction of any state or federal court sitting in the state and county in which payment of this Note is to be made for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waives the benefit of all homestead and similar exemptions as to this Note; (g) agrees that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Lender to secure this Note is invalid or unperfected; and (h) hereby subordinates to the Loan and the Loan Documents any and all rights against Borrower and any security for the payment of this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment of this Note is to be made. The term "Business Day" shall mean a day on which Lender is open for the conduct of substantially all of its banking business at the office in the city in which this Note is payable (excluding Saturdays and Sundays). The words "include" and "including" shall be interpreted as if followed by the words "without limitation."

14.  **Notices**.

All notices, demands, requests, exercises, and other communications under this Agreement shall be in writing and (a) sent by United States Certified Mail, return receipt requested, in which case notice shall be deemed delivered three (3) business days after deposit, postage prepaid in the United States Mail, or (b) sent by a nationally recognized overnight courier, in which case notice shall be deemed delivered one (1) business day after deposit with that courier, or (c) sent by telecopy or similar means if a copy of the notice is also sent by United States Certified Mail, in which case notice shall be deemed delivered on transmittal by telecopier or other similar means, provided that a transmission report is generated by reflecting the accurate transmission of the notices, and sent, to the addresses for the Lender and Borrower set forth as follows:

Lender:

Aa87, LLC
300 West Spring Street, Suite 1901
Columbus, Ohio 43215
Attention: Managers

Borrower:

5

Malibu Associates, LLC
2400 Wyandotte Street, Suite B-102
Mountain View, CA 94043-2373
Attention: Manager

15. **No Usury**.

(a)     It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Lender's exercise of the option to accelerate the Maturity Date, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan.

16.     **Recourse Liability**.

Borrower's liability under this Note and the other Loan Documents shall be with full recourse and shall not be limited to the Loan or otherwise.

17.     **Acceleration by Reason of Transfer**.

The Deed of Trust contains the following limitation on the right of Borrower to transfer the "Property " (as defined therein):

"(b)     Trustor agrees that Trustor shall not make any Accelerating Transfer, unless the transfer is preceded by Beneficiary's express written consent to the particular transaction and transferee. Beneficiary may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Beneficiary in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Beneficiary and Trustee may invoke any rights and remedies provided by Paragraph 6.3 of this Deed of Trust."

"Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Trustor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Trustor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than ten percent (10%) of the voting power. If Trustor is a partnership, "Accelerating Transfer" also means withdrawal

6

or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than ten percent (10%) of the partnership interests.  If Trustor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than ten percent (10%) of the voting power or in the aggregate more than fifty percent of the ownership of the economic interest in the Trustor."

18.    **Submission to Jurisdiction; Waiver of Jury Trial**.

(a)    **EACH OF BORROWER AND LENDER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (1) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF CALIFORNIA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, (2) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT EXCLUSIVELY IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE CITY AND COUNTY OF LOS ANGELES, CALIFORNIA, (3) SUBMITS TO THE JURISDICTION OF SUCH COURTS AND, (4) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT NEITHER BORROWER NOR LENDER WILL BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM.  EACH OF BORROWER AND LENDER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO BORROWER OR LENDER AS THE CASE MAY BE AT THE ADDRESS FOR NOTICES DESCRIBED IN THIS NOTE, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).**

(b)    **EACH OF BORROWER AND LENDER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FOREGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THIS NOTE OR ANY CONDUCT, ACT OR OMISSION OF LENDER OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARMS-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.**

**THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

[SIGNATURE ON FOLLOWING PAGE]

BN 1700306806

Borrower has duly executed this Note as of the date first above-written.

**BORROWER**:

MALIBU ASSOCIATES, LLC
a California limited liability company

By its Executive Committee, serving as its
Managing Member

      By: The Thomas C. Hix Company No. 3,
          Inc., a California corporation, Executive
          Committee Member

      By: _____
          Thomas C. Hix, President


      By: MPK Development, LLC, a California
          limited liability company, Executive
          Committee Member

      By: _____
          Mark D. Kvamme, Managing Member

Borrower has duly executed this Note as of the date first above-written.

**BORROWER:**

MALIBU ASSOCIATES, LLC
a California limited liability company

By its Executive Committee, serving as its
Managing Member

      By: The Thomas C. Hix Company No. 3,
          Inc., a California corporation, Executive
          Committee Member

    By: _____
       Thomas C. Hix, President


      By: MPK Development, LLC, a California
          limited liability company, Executive
          Committee Member

    By: _____
       Mark D. Kvamme, Managing Member

# EXHIBIT "2"

# [DEED OF TRUST]

PLEASE COMPLETE THIS INFORMATION.

RECORDING REQUESTED BY:
Aa87, LLC

AND WHEN RECORDED MAIL TO:
Aa87, LLC
300 West Spring Street, Suite 1901
Columbus, Ohio 43215
Attention Managers



THIS SPACE FOR RECORDER'S USE ONLY

DEED OF TRUST, ASSIGMENT OF RENTS,
SECURITY AGREEMENT AND FIXTURE
FILING
(Please fill in document title(s) on this line)

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

American LegalNet, Inc.
www.USCourtForms.com

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Aa87, LLC
300 West Spring Street, Suite 1901
Columbus, Ohio 43215
Attention: Managers

_____

Space above this line for Recorder's Use

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust is made as of January 1, 2015, by Malibu Associates, LLC, a California limited liability company, as trustor ("Trustor"), to Stewart Title of California, Inc., as trustee ("Trustee"), for the benefit of Aa87, LLC, an Ohio limited liability company, as beneficiary ("Beneficiary").

1.  GRANT IN TRUST.

      1.1    The Property.  For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Trustor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Trustee, in trust for the benefit of Beneficiary, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "Property"):

           (a)    The real property located in the County of Los Angeles, State of California, as described in Exhibit A hereto (the "Land");

           (b)    All buildings, structures, improvements, fixtures and appurtenances now or hereafter placed on the Land, and all apparatus and equipment now or hereafter attached in any manner to the Land or any building on the Land, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the "Improvements");

           (c)    All easements and rights of way appurtenant to the Land; all crops growing or to be grown on the Land (including all such crops following severance from the Land); all standing timber upon the Land (including all such timber following severance from the Land); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and shares of stock pertaining to such water or water rights, ownership of which affect the Land; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Land;

           (d)    All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Land or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

           (e)    All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Land, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire,

hazard or casualty insurance policies, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or the other property described above or any part of them; and

(f) All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2 <u>Fixture Filing</u>. This Deed of Trust constitutes a financing statement filed as a fixture filing under Section 9502(c) of the California Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Land or any building located thereon.

## 2. THE SECURED OBLIGATIONS.

2.1 <u>Purpose of Securing</u>. Trustor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligations (the "Secured Obligations") in any order of priority that Beneficiary may choose:

(a) Payment of all obligations of Malibu Associates, LLC, a California limited liability company ("Obligor") to Beneficiary arising under the following instrument(s) or agreement(s) (collectively, the "Debt Instrument"):

(i) A promissory note dated as of even date herewith, payable by Obligor as maker in the stated principal amount of Three Million and NO/100 Dollars ($3,000,000) to the order of Beneficiary.

This Deed of Trust also secures payment of all obligations of Obligor under the Debt Instrument which arise after the Debt Instrument is extended, renewed, modified or amended pursuant to any written agreement between Obligor and Beneficiary, and all obligations of Obligor under any successor agreement or instrument which restates and supersedes the Debt Instrument in its entirety;

(b) Payment and performance of all obligations of Trustor under this Deed of Trust;

2.2 <u>Terms of Secured Obligations</u>. All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Debt Instrument described in Paragraph 2.1(a) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations. These terms include any provisions in the Debt Instrument which permit borrowing, repayment and reborrowing, or which provide that the interest rate on one or more of the Secured Obligations may vary from time to time.

## 3. ASSIGNMENT OF RENTS.

3.1 <u>Assignment</u>. Trustor hereby irrevocably, absolutely, presently and unconditionally assigns to Beneficiary all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Beneficiary the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Trustor as bonus or royalty payments, and any damages or

other compensation payable to Trustor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph. THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.

3.2 Grant of License. Notwithstanding the provisions of Paragraph 3.1, Beneficiary hereby confers upon Trustor a license ("License") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing. If an Event of Default has occurred and is continuing, Beneficiary shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Trustor, and without regard to the adequacy of the security for the Secured Obligations.

4. SECURITY INTEREST IN RELATED PERSONALTY.

4.1 Grant of Security Interest. Trustor grants to Beneficiary a security interest in, and pledges and assigns to Beneficiary, all of Trustor's right, title and interest, whether presently existing or hereafter acquired in and to all of the following property (collectively, the "Personalty"):

(a) All materials, supplies, goods, tools, furniture, fixtures, equipment, and machinery which in all cases is affixed or attached, or to be affixed or attached, in any manner on the Land or the Improvements;

(b) All crops growing or to be grown on the Land (and after severance from the Land); all standing timber upon the Land (and after severance from the Land); all sewer, water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Land) and all evidence of ownership rights pertaining to such water or water rights, ownership of which affect the Land; and all architectural and engineering plans, specifications and drawings which arise from or relate to the Land or the Improvements;

(c) All permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, Improvements, or other Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies relating to the Land and the Improvements, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Land, Improvements, or other Property or any part of them;

(d) All substitutions, replacements, additions, and accessions to any of the above property, and all books, records and files relating to any of the above property, including, without limitation, all general intangibles related to any of the above property and all proceeds of the above property.

5. RIGHTS AND DUTIES OF THE PARTIES.

5.1 Representations and Warranties. Trustor represents and warrants that Trustor lawfully possesses and holds fee simple title to all of the Land and the Improvements, unless Trustor's present interest in the Land and the Improvements is described in Exhibit A as a leasehold interest, in which case Trustor lawfully possesses and holds a leasehold interest in the Land and the Improvements as stated in Exhibit A.

5.2 Taxes, Assessments, Liens and Encumbrances. Trustor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the

value of the Property or any part of it. Trustor shall immediately discharge any lien on the Property which Beneficiary has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Deed of Trust.

5.3　　Damages and Insurance and Condemnation Proceeds.

(a)　　Trustor hereby absolutely and irrevocably assigns to Beneficiary, and authorizes the payor to pay to Beneficiary, the following claims, causes of action, awards, payments and rights to payment (collectively, the "Claims"):

(i)　　all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii)　　all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii)　　all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by Beneficiary; and

(iv)　　all interest which may accrue on any of the foregoing.

(b)　　Trustor shall immediately notify Beneficiary in writing if:

(i)　　any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

(ii)　　any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Beneficiary chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Beneficiary, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Trustor in adjusting any loss covered by insurance.

(c)　　All proceeds of the Claims assigned to Beneficiary under this Paragraph shall be paid to Beneficiary. In each instance, Beneficiary shall apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds, including attorneys' fees. Trustor further authorizes Beneficiary, at Beneficiary's option and in Beneficiary's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Beneficiary may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Trustor. If any proceeds are released to Trustor, neither Beneficiary nor

Trustee shall be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Beneficiary to be used to reimburse Trustor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing. Beneficiary may, at Beneficiary's option, condition disbursement of the proceeds on Beneficiary's approval of such plans and specifications prepared by an architect satisfactory to Beneficiary, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Beneficiary may reasonably require.

5.4     Insurance.  Trustor shall provide and maintain in force at all times all risk property damage insurance (including without limitation windstorm coverage, and hurricane coverage as applicable) on the Property and such other type of insurance on the Property as may be required by Beneficiary in its reasonable judgment.  At Beneficiary's request, Trustor shall provide Beneficiary with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date.  Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Beneficiary, and shall be written only by companies approved by Beneficiary.  In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Beneficiary.

5.5     Maintenance and Preservation of Property.

(a)     Trustor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property.  Trustor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except with Beneficiary's express prior written consent in each instance.

(b)     If all or part of the Property becomes damaged or destroyed, Trustor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Beneficiary agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c)     Trustor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property.  Trustor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Trustor on the Property or any part of it under this Deed of Trust.

(d)     If Trustor's interest in the Property is a leasehold interest, Trustor shall observe and perform all obligations of Trustor under any lease or leases and shall refrain from taking any actions prohibited by any lease or leases.  Trustor shall preserve and protect the leasehold estate and its value.

(e)     If the Property is agricultural, Trustor shall farm the Property in a good and husbandlike manner.  Trustor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees or vines with new ones.  Trustor shall prepare for harvest, harvest, remove and sell any crops growing on the Property.  Trustor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(f)     Trustor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6 <u>Releases, Extensions, Modifications and Additional Security</u>. Without affecting the personal liability of any person, including Trustor (or Obligor, if different from Trustor), for the payment of the Secured Obligations or the lien of this Deed of Trust on the remainder of the Property for the unpaid amount of the Secured Obligations, Beneficiary and Trustee are respectively empowered as follows:

    (a)    Beneficiary may from time to time and without notice:

        (i)    release any person liable for payment of any Secured Obligation;

        (ii)    extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation;

        (iii)    accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security; or

        (iv)    alter, substitute or release any property securing the Secured Obligations.

    (b)    Trustee may perform any of the following acts when requested to do so by Beneficiary in writing:

        (i)    consent to the making of any plat or map of the Property or any part of it;

        (ii)    join in granting any easement or creating any restriction affecting the Property;

        (iii)    join in any subordination or other agreement affecting this Deed of Trust or the lien of it; or

        (iv)    reconvey the Property or any part of it without any warranty.

5.7 <u>Reconveyance</u>. When all of the Secured Obligations have been paid in full and no further commitment to extend credit continues, Trustee shall reconvey the Property, or so much of it as is then held under this Deed of Trust, without warranty to the person or persons legally entitled to it. In the reconveyance, the grantee may be described as "the person or persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness. Neither Beneficiary nor Trustee shall have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.

5.8 <u>Compensation and Reimbursement of Costs and Expenses</u>.

    (a)    Trustor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary and Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement of the Secured Obligations or Trustee's rendering of services in connection with a reconveyance. Trustor shall also pay or reimburse all of Beneficiary's and Trustee's costs and expenses which may be incurred in rendering any such services.

    (b)    Trustor further agrees to pay or reimburse Beneficiary for all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee to protect or preserve the Property or to enforce any terms of this Deed of Trust, including the

exercise of any rights or remedies afforded to Beneficiary or Trustee or both of them under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

(c)     Trustor shall pay all obligations arising under this Paragraph immediately upon demand by Trustee or Beneficiary. Each such obligation shall be added to, and considered to be part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations. If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9     <u>Exculpation and Indemnification</u>.

(a)     Beneficiary shall not be directly or indirectly liable to Trustor or any other person as a consequence of any of the following:

(i)     Beneficiary's exercise of or failure to exercise any rights, remedies or powers granted to it in this Deed of Trust;

(ii)     Beneficiary's failure or refusal to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust;

(iii)     Beneficiary's failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv)     any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v)     any loss sustained by Trustor or any third party resulting from any act or omission of Beneficiary in operating or managing the Property upon exercise of the rights or remedies afforded Beneficiary under Paragraph 6.3, unless the loss is caused by the willful misconduct and bad faith of Beneficiary.

Trustor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon Beneficiary.

(b)     Trustor agrees to indemnify Trustee and Beneficiary against and hold them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which either may suffer or incur in performing any act required or permitted by this Deed of Trust or by law or because of any failure of Trustor to perform any of its obligations. This agreement by Trustor to indemnify Trustee and Beneficiary shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release and/or reconveyance of this Deed of Trust.

5.10     <u>Defense and Notice of Claims and Actions</u>. At Trustor's sole expense, Trustor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Trustor shall give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11    Substitution of Trustee.  From time to time, Beneficiary may substitute a successor to any Trustee named in or acting under this Deed of Trust in any manner now or later to be provided at law, or by a written instrument executed and acknowledged by Beneficiary and recorded in the office of the recorder of the county where the Property is situated.  Any such instrument shall be conclusive proof of the proper substitution of the successor Trustee, who shall automatically upon recordation of the instrument succeed to all estate, title, rights, powers and duties of the predecessor Trustee, without conveyance from it.

5.12    Representation and Warranty Regarding Hazardous Substances.  Before signing this Deed of Trust, Trustor researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Trustor represents and warrants that to the best of its knowledge, no hazardous substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Trustor has disclosed to Beneficiary in writing.  Trustor further represents and warrants that Trustor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances ("Environmental Laws").  Trustor shall promptly, at Trustor's sole cost and expense, take all reasonable actions with respect to any hazardous substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property.  Trustor acknowledges that hazardous substances may permanently and materially impair the value and use of the Property.  "Hazardous substance" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.13    Site Visits, Observation and Testing.   Beneficiary and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Trustor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property.   Trustor shall reimburse Beneficiary on demand for the costs of any such environmental investigation and testing. Beneficiary will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Trustor's use of the Property.  Beneficiary is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Beneficiary will be solely for the purposes of protecting Beneficiary's security and preserving Beneficiary's rights under this Deed of Trust.  No site visit, observation or testing or any report or findings made as a result thereof ("Environmental Report") (i) will result in a waiver of any default of Trustor; (ii) impose any liability on Beneficiary; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness).  In the event Beneficiary has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Trustor or any other party, Trustor authorizes Beneficiary to make such a disclosure.  Beneficiary may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Beneficiary's judgment. Trustor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Trustor by Beneficiary or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Trustor) by Trustor without advice or assistance from Beneficiary.

6.    ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

6.1    Accelerating Transfers

(a)    "Accelerating Transfer" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of

any right to drill for or to extract any water (other than for Trustor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Trustor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than ten percent (10%) of the voting power. If Trustor is a partnership, "Accelerating Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than ten percent (10%) of the partnership interests. If Trustor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than ten percent (10%) of the voting power or in the aggregate more than fifty percent of the ownership of the economic interest in the Trustor.

(b)     Trustor agrees that Trustor shall not make any Accelerating Transfer, unless the transfer is preceded by Beneficiary's express written consent to the particular transaction and transferee. Beneficiary may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Beneficiary in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Beneficiary and Trustee may invoke any rights and remedies provided by Paragraph 6.3 of this Deed of Trust.

6.2     Events of Default. The occurrence of any one or more of the following events, at the option of Beneficiary, shall constitute an event of default ("Event of Default") under this Deed of Trust:

(a)     Obligor fails to make any payment, when due, under the Debt Instrument (after giving effect to any applicable grace period), or any other default occurs under and as defined in the Debt Instrument or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

(b)     Trustor fails to make any payment or perform any obligation which arises under this Deed of Trust;

(c)     Trustor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(d)     Any representation or warranty made in connection with this Deed of Trust or the Secured Obligations proves to have been false or misleading in any material respect when made; or

(e)     Any default occurs under any other deed of trust on all or any part of the Property, or under any obligation secured by such deed of trust, whether such deed of trust is prior to or subordinate to this Deed of Trust.

6.3     Remedies. At any time after the occurrence of an Event of Default, Beneficiary and Trustee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law. All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

(a)     Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

(b)     Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

(c)     Beneficiary, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Trustor sue for or otherwise collect any and all Rents, including those that

are past due, and may also do any and all other things in connection with those actions that Beneficiary may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust. Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property. Trustor hereby irrevocably constitutes and appoints Beneficiary as its attorney-in-fact to perform such acts and execute such documents as Beneficiary in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Trustor's name on any instruments. Trustor agrees to deliver to Beneficiary all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Beneficiary in order to enable Beneficiary to exercise its rights under this Paragraph.

(d)    Either Beneficiary or Trustee may cure any breach or default of Trustor, and if it chooses to do so in connection with any such cure, Beneficiary or Trustee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Beneficiary or Trustee under, this Deed of Trust; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Beneficiary's or Trustee's sole judgment is or may be senior in priority to this Deed of Trust, such judgment of Beneficiary or Trustee to be conclusive as among the parties to this Deed of Trust; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Deed of Trust; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Beneficiary or Trustee. Beneficiary and Trustee may take any of the actions permitted hereunder either with or without giving notice to any person.

(e)    Beneficiary may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Deed of Trust.

(f)    Beneficiary may cause the Property which consists solely of real property to be sold by Trustee as permitted by applicable law. Before any such trustee's sale, Beneficiary or Trustee shall give such notice of default and election to sell as may then be required by law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee shall sell the Property, either as a whole or in separate parcels, and in such order as Trustee may determine, at a public auction to be held at the time and place specified in the notice of sale. Neither Trustee nor Beneficiary shall have any obligation to make demand on Trustor before any trustee's sale. From time to time in accordance with then applicable law, Trustee may, and in any event at Beneficiary's request shall, postpone any trustee's sale by public announcement at the time and place noticed for that sale. At any trustee's sale, Trustee shall sell to the highest bidder at public auction for cash in lawful money of the United States. Any person, including Trustor, Trustee or Beneficiary, may purchase at the trustee's sale. Trustee shall execute and deliver to the purchaser(s) a deed or deeds conveying the property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed of any matters or facts, including any facts bearing upon the regularity or validity of any trustee's sale, shall be conclusive proof of their truthfulness. Any such deed shall be conclusive against all persons as to the facts recited in it.

(g)    Beneficiary may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods

then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Trustee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties. Alternatively, Beneficiary may choose to dispose of some or all of the Property, in any combination consisting of both personal property and real property, in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Trustor agrees that such a sale of personal property together with real property constitutes a commercially reasonable sale of the personal property.

6.4    Application of Sale Proceeds and Rents.

(a)    Beneficiary and Trustee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b)    Beneficiary shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Beneficiary may receive or collect under Paragraph 6.3, in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Trustee, Beneficiary or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Beneficiary shall have no liability for any funds which it does not actually receive.

7.    MISCELLANEOUS PROVISIONS

7.1    No Waiver or Cure.

(a)    Each waiver by Beneficiary or Trustee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Beneficiary or Trustee to take action on account of any default of Trustor. Consent by Beneficiary or Trustee to any act or omission by Trustor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Beneficiary's or Trustee's consent to be obtained in any future or other instance.

(b)    If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Deed of Trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Deed of Trust; or prejudice Beneficiary, Trustee or any receiver in the exercise of any right or remedy afforded any of them under this Deed of Trust; or be construed as an affirmation by Beneficiary of any tenancy, lease or option, or a subordination of the lien of this Deed of Trust:

(i)    Beneficiary, its agent or a receiver takes possession of all or any part of the Property;

(ii)    Beneficiary collects and applies Rents, either with or without taking possession of all or any part of the Property;

(iii)     Beneficiary receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Beneficiary under this Deed of Trust;

(iv)     Beneficiary makes a site visit, observes the Property and/or conducts tests thereon;

(v)     Beneficiary receives any sums under this Deed of Trust or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

(vi)     Beneficiary, Trustee or any receiver performs any act which it is empowered or authorized to perform under this Deed of Trust or invokes any right or remedy provided under this Deed of Trust.

7.2     <u>Powers of Beneficiary and Trustee</u>.

(a)     Trustee shall have no obligation to perform any act which it is empowered to perform under this Deed of Trust unless it is requested to do so in writing and is reasonably indemnified against loss, cost, liability and expense.

(b)     Beneficiary may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Deed of Trust.

(c)     From time to time, Beneficiary or Trustee may apply to any court of competent jurisdiction for aid and direction in executing the trust and enforcing the rights and remedies created under this Deed of Trust. Beneficiary or Trustee may from time to time obtain orders or decrees directing, confirming or approving acts in executing this trust and enforcing these rights and remedies.

7.3     [Reserved].

7.4     <u>Merger</u>. No merger shall occur as a result of Beneficiary's acquiring any other estate in or any other lien on the Property unless Beneficiary consents to a merger in writing.

7.5     [Reserved].

7.6     <u>Applicable Law</u>. This Deed of Trust shall be governed by, and construed in accordance with, the laws of the State of Ohio, without regard to principles of conflicts of law. Notwithstanding the foregoing, the creation, perfection and enforcement of the lien granted by this Deed of Trust shall be governed by the laws of the State of California.

7.7     <u>Successors in Interest</u>. The terms, covenants and conditions of this Deed of Trust shall be binding upon and inure to the benefit of the heirs, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

7.8     <u>Submission to Jurisdiction: Waiver Jury Trial</u>. This Deed of Trust is governed by Section 18 of the Debt Instrument.

7.9     <u>Interpretation</u>. Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender  The captions of the sections of this Deed of Trust are for convenience only and do not define or

California Deed of Trust
BN 12641404v2

limit any terms or provisions. The word "include(s)" means "include(s), without limitation." and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Deed of Trust. The Exhibits to this Deed of Trust are hereby incorporated in this Deed of Trust.

7.10    [Reserved].

7.11    Waiver of Marshaling. Trustor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Deed of Trust, including any rights provided by California Civil Code Sections 2899 and 3433, as such Sections may be amended from time to time. Each successor and assign of Trustor, including any holder of a lien subordinate to this Deed of Trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.12    Severability. If any provision of this Deed of Trust should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Deed of Trust except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare all Secured Obligations immediately due and payable.

7.13    Notices. Trustor hereby requests that a copy of notice of default and notice of sale be mailed to it at the address set forth below. That address is also the mailing address of Trustor as debtor under the Uniform Commercial Code. Beneficiary's address given below is the address for Beneficiary as secured party under the Uniform Commercial Code.

Addresses for Notices to Trustor:          Malibu Associates, LLC
                                           2400 Wyandotte Street, Suite B-102
                                           Mountain View, CA 94043-2373


Address for Notices to Beneficiary:        Aa87, LLC
                                           300 West Spring Street, Suite 1901
                                           Columbus, Ohio 43215
                                           Attention: Managers

7.14    Subordinate Deed of Trust. This Deed of Trust is subordinate in all respects to the rights of the Beneficiary under that certain Consolidated Deed of Trust by Trustor, as trustor, to Stewart Title of California, Inc., as trustee, for the benefit of U.S. Bank, as beneficiary, recorded on June 29, 2011 as Document No. 881902 in the Official Records of Los Angeles County, California (the "Senior Deed of Trust"). Beneficiary acknowledges and agrees that, except as otherwise consented to by the holder(s) of the Senior Deed of Trust, Beneficiary shall not commence any foreclosure proceedings with respect to this Deed of Trust so long as the Senior Deed of Trust continues to lawfully encumber the Property.

California Deed of Trust
BN 17641404v2

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

TRUSTOR:

MALIBU ASSOCIATES, LLC, a California
limited liability company

By its Executive Committee, serving as its
Managing Member

By: The Thomas C. Hix Company No. 3,
Inc., a California corporation, Executive
Committee Member

By: _____

Thomas C. Hix, President

By: MPK Development, LLC, a California
limited liability company, Executive
Committee Member

By: _____

Mark D. Kvamme, Managing Member

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

TRUSTOR:

MALIBU ASSOCIATES, LLC, a California
limited liability company

By its Executive Committee, serving as its
Managing Member

By: The Thomas C. Hix Company No. 3,
Inc., a California corporation, Executive
Committee Member

By: _____
Thomas C. Hix, President


By: MPK Development, LLC, a California
limited liability company, Executive
Committee Member

By: _____
Mark D. Kvamme, Managing Member

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                     )
                                        ) SS.
COUNTY OF _SANTA CLARA_                  )

On _Feb. 2, 2015_, before me, _MAULIK ANIL PANDIT, NOTARY PUBL_
          Date                        Name And Title Of Officer (e.g. "Jane Doe, Notary Public")

personally appeared _Thomas C. Hee_,
                                  Name of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
        Signature  (Seal)

MAULIK ANIL PANDIT
COMM. #2089752
NOTARY PUBLIC · CALIFORNIA
SANTA CLARA COUNTY
My Comm. Exp. Dec. 10, 2018

**ACKNOWLEDGMENT**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ~~CALIFORNIA~~ Ohio )
) SS.
COUNTY OF Franklin )

On February 3, 2015, before me, Sarah Good, Notary Public
Date                 Name And Title Of Officer (e.g. "Jane Doe, Notary Public")

personally appeared Mark D. Kvamme
Name of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature (Seal)

SARAH GOOD
Notary Public, State of Ohio
My Commission Expires 12.10.18

California Deed of Trust

BN 17641404v2

**ACKNOWLEDGMENT**

STATE OF OHIO )
                        ) SS.
COUNTY OF Franklin_____ )

On February _3_ ,2015 before me, __Sarah Good, Notary Public__
           Date                              Name And Title Of Officer (e.g. "Jane Doe, Notary Public")

a Notary Public for the State of Ohio, personally appeared __Mark D. Kvamme__,
                                                                   Name of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity(ies) as his own free act.

IN TESTIMONY WHEREOF, I have herunto subscribed my name and affixed my seal this day.

WITNESS my hand and official seal.

_____
     Signature  (Seal)

SARAH GOOD
Notary Public, State of Ohio
My Commission Expires 12.10.18

<u>EXHIBIT A</u>

<u>LEGAL DESCRIPTION</u>

**The land referred to herein is situated in the State of California, County of Los Angeles, Unincorporated Area, and described as follows:**

PARCEL 1: (APN: 2058-015-003)

THAT PORTION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING SOUTHERLY AND EASTERLY OF THE CENTER LINE OF DECKER ROAD, AS DESCRIBED IN THE DEED RECORDED IN BOOK 2544 PAGE 277, OFFICIAL RECORDS OF SAID LOS ANGELES COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH IS THE MOST SOUTHEASTERLY CORNER OF THE LANDS CONVEYED TO MABLE STRASZACKER, A MARRIED WOMAN, TO RALPH M. SWITZKY, A SINGLE MAN, BY DEED RECORDED IN BOOK 15134 PAGE 285, OFFICIAL RECORDS OF LOS ANGELES COUNTY; THENCE EASTERLY ALONG THE SOUTHERLY LINE OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, 200 FEET TO A POINT; THENCE NORTHERLY ALONG A LINE PARALLEL TO THE EASTERLY LINE OF SAID NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, S.B.B.& M., TO A POINT IN THE CENTER LINE OF DECKER ROAD, (AS DESCRIBED IN THE DEED RECORDED IN BOOK 2544 PAGE 277, OFFICIAL RECORDS OF LOS ANGELES COUNTY); THENCE WESTERLY ALONG THE CENTER LINE OF DECKER ROAD TO THE MOST NORTHEASTERLY CORNER OF SAID LANDS DESCRIBED IN SAID DEED RECORDED IN BOOK 15134 PAGE 285 OF SAID OFFICIAL RECORDS; THENCE SOUTHERLY ALONG THE EASTERLY LINE OF THE PROPERTIES CONVEYED BY SAID DEED, RECORDED IN BOOK 15134 PAGE 285, OFFICIAL RECORDS OF LOS ANGELES COUNTY, TO THE POINT OF BEGINNING.

PARCEL 2: (APN: 2058-015-044)

THAT PORTION OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING SOUTHERLY AND EASTERLY OF THE CENTER LINE OF DECKER COUNTY ROAD, AS DESCRIBED IN DEED RECORDED IN BOOK 2544 PAGE 277, OFFICIAL RECORDS OF SAID COUNTY.

EXCEPT THEREFROM A PORTION SECTION 3, TOWNSHIP 1 SOUTH RANGE 19 WEST IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, COMMENCING AT THE SOUTH ONE QUARTER (1/4) SECTION CORNER OF SAID SECTION 3, THENCE ALONG THE SOUTH LINE OF SAID SECTION 3, SOUTH 89° 25' 34" EAST 207.80 FEET

TO A POINT HEREINAFTER REFERRED TO AS POINT A; THENCE NORTH 27° 39' 39" EAST 302.67 FEET, MORE OR LESS, TO THE NORTH RIGHT OF WAY LINE OF MULHOLLAND HIGHWAY, 100.00 FEET WIDE, AS SHOWN ON COUNTY SURVEYORS MAP CS 8824 SHEET 9, AND THE POINT OF BEGINNING; THENCE,

1. NORTH 27° 39' 39" EAST 93.01 FEET, MORE OR LESS, TO A POINT THAT BEARS NORTH 27° 39' 39" EAST 395.68 FEET FROM BEFORE MENTIONED POINT A; THENCE

2. NORTH 22° 28' 25" WEST 187.64 FEET; THENCE,

3. NORTH 87° 48' 05" WEST 135.60 FEET MORE OR LESS TO THE EASTERLY RIGHT OF WAY LINE OF WESTLAKE BOULEVARD, FORMERLY DECKER ROAD, 40.00 FEET WIDE A SHOWN ON COUNTY SURVEYORS MAP CS 8093; THENCE, ALONG SAID RIGHT OF WAY THE FOLLOWING THREE COURSES,

4. SOUTH 01° 53' 38" WEST 111.14 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE TO THE WEST, HAVING A RADIUS OF 220.00 FEET; THENCE SOUTHERLY AND SOUTHWESTERLY ALONG SAID CURVE

5. 123.94 FEET THROUGH A CENTRAL ANGLE OF 32° 16' 40"; THENCE

6. SOUTH 34° 10' 18" WEST 2.05 FEET, MORE OR LESS, TO SAID NORTH RIGHT OF WAY MULHOLLAND HIGHWAY, BEING A POINT OF CUSP ON A CURVE CONCAVE SOUTH HAVING A RADIUS OF 350.00 FEET, A RADIAL LINE BEARS NORTH 8° 36' 53" WEST, THENCE, EASTERLY AND SOUTHEASTERLY ALONG SAID NORTH RIGHT OF WAY

7. 212.43 FEET THROUGH A CENTRAL ANGLE OF 34° 46' 28" TO THE POINT OF BEGINNING.

PARCEL 3: (PORTION OF APN: 2058-015-037)

THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THE EASTERLY 998.71 FEET (MEASURED ALONG THE SOUTHERLY LINE) OF SAID LAND.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING NORTHERLY OF THE SOUTHERLY LINE OF THE 100 FOOT STRIP OF LAND, DESCRIBED IN DEED TO THE COUNTY OF LOS ANGELES, (FOR PUBLIC ROAD AND HIGHWAY PURPOSES), RECORDED IN BOOK 11862 PAGE 146, OFFICIAL RECORDS.

PARCEL 4: (PORTION OF APN: 2058-015-037)

THE WESTERLY 333.15 FEET OF THE EASTERLY 998.71 FEET (MEASURED ALONG THE SOUTHERLY LINE) OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF LYING SOUTHERLY OF A STRIP OF LAND 100.00 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT THE WESTERLY TERMINUS OF THAT CERTAIN COURSE HAVING A BEARING AND LENGTH OF NORTH 84° 27' 05" EAST 561.42 FEET IN THE CENTER LINE OF MULHOLLAND HIGHWAY, AS DESCRIBED IN DEED RECORDED IN BOOK 10710 PAGE 291, OFFICIAL RECORDS, OF THE COUNTY OF LOS ANGELES, THENCE SOUTH 84° 27' 05" WEST 244.12 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE NORTH, AND HAVING A RADIUS OF 2000 FEET; THENCE WESTERLY ALONG SAID CURVE, 642.52 FEET; THENCE NORTH 77° 08' 30" WEST 185.62 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE SOUTH AND HAVING A RADIUS OF 900 FEET; THENCE WESTERLY ALONG SAID LAST MENTIONED CURVE, 921.53 FEET; THENCE SOUTH 44° 11' 30" WEST 101.76 FEET.

ALL CURVES ARE TANGENT TO THE STRAIGHT LINES WHICH THEY JOIN, TO BE KNOWN AS MULHOLLAND HIGHWAY, REFERENCE IS MADE TO COUNTY SURVEYOR'S MAP NO. 8824, ON FILE IN THE OFFICE OF THE SURVEYOR OF THE COUNTY OF LOS ANGELES.

PARCEL 5: (PORTION OF APN: 2058-015-037)

THE EASTERLY 332.64 FEET (MEASURED ALONG THE SOUTHERLY LINE) OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING SOUTHERLY OF A STRIP OF LAND 100.00 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT THE WESTERLY TERMINUS OF THAT CERTAIN COURSE HAVING A BEARING AND LENGTH OF NORTH 84° 27' 05" EAST 561.42 FEET IN THE CENTER LINE OF MULHOLLAND HIGHWAY, AS DESCRIBED IN DEED RECORDED IN BOOK 1071 PAGE 291, OFFICIAL RECORDS OF THE COUNTY OF LOS ANGELES; THENCE SOUTH 84° 27' 05" WEST 244.12 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE NORTH, AND HAVING A RADIUS OF 2000 FEET;

THENCE WESTERLY ALONG SAID CURVE, 642.52 FEET; THENCE NORTH 77° 08' 30" WEST 185.62 FEET TO THE BEGINNING OF A CURVE CONCAVE TO THE SOUTH AND HAVING A RADIUS OF 900 FEET; THENCE WESTERLY ALONG SAID LAST MENTIONED CURVE, 921.53 FEET; THENCE SOUTH 44° 11' 30" WEST 101.76 FEET.

ALL CURVES ARE TANGENT TO THE STRAIGHT LINES WHICH THEY JOIN TO BE KNOWN AS MULHOLLAND HIGHWAY. REFERENCE IS MADE TO COUNTY

SURVEYOR'S MAP NO. 8824, ON FILE IN THE OFFICE OF THE SURVEYOR OF THE COUNTY OF LOS ANGELES.

PARCEL 6: (PORTION OF APN: 2058-015-037)

THAT PORTION OF THE WESTERLY 332.92 FEET OF THE EASTERLY 665.56 FEET (MEASURED ALONG THE SOUTHERLY LINE) OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING SOUTHERLY OF THE SOUTHERLY LINE OF MULHOLLAND HIGHWAY, 100.00 FEET WIDE, AS DESCRIBED IN THE DEED TO THE COUNTY OF LOS ANGELES, RECORDED OCTOBER 25, 1932 IN BOOK 11862 PAGE 146, OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 7: (APN: 2058-015-013)

THAT PORTION OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 3, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING SOUTHERLY AND EASTERLY OF THE CENTER LINE OF DECKER COUNTY ROAD, AS DESCRIBED IN DEED RECORDED IN BOOK 2544 PAGE 277, OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 8A: (APN: 4471-001-028 AND 029)

THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THAT PORTION OF SAID LAND IN THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER DESCRIBED IN THE DEED TO BOYD A. DAVIS, RECORDED DECEMBER 29, 1961 IN BOOK D-1463 PAGE 954, OFFICIAL RECORDS, AS INSTRUMENT NO. 1741, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 8B: (APN: 4471-001-005)

THE NORTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF.

PARCEL 9: (APN: 4471-001-019)

THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN BASE AND

MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING SOUTHERLY OF A STRAIGHT LINE EXTENDING NORTHWESTERLY FROM THE SOUTHEASTERLY CORNER OF THE SOUTH HALF OF SAID NORTHEAST QUARTER OF SAID SECTION 10, TO THE NORTHWESTERLY CORNER OF SAID SOUTH HALF OF THE NORTHEAST QUARTER OF SAID SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, S. B. B.& M. IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.

PARCEL 10A: (APN: 4471-001-0032)

THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING SOUTHERLY OF A STRAIGHT LINE EXTENDING NORTHWESTERLY FROM THE SOUTHEASTERLY CORNER OF THE SOUTH HALF OF SAID NORTHEAST QUARTER OF SAID SECTION 10, TO THE NORTHWESTERLY CORNER OF SAID SOUTH HALF OF THE NORTHEAST QUARTER OF SAID SECTION 10.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING EASTERLY OF A LINE THAT IS PARALLEL WITH THE EASTERLY LINE OF SAID SECTION, AND WHICH PASSES THROUGH A POINT IN THE NORTHERLY LINE OF SAID NORTHEAST QUARTER (DISTANT WESTERLY THEREON) 500.00 FEET FROM SAID EASTERLY LINE.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LAND, INCLUDED WITHIN THE FOLLOWING DESCRIBED LINES:

BEGINNING AT THE INTERSECTION OF THE WESTERLY LINE OF THE EASTERLY 500.00 FEET, MEASURED ALONG THE NORTHERLY LINE OF THE NORTHEAST QUARTER OF SECTION 10, WITH A STRAIGHT LINE EXTENDING NORTHWESTERLY FROM THE SOUTHEASTERLY CORNER OF THE NORTHEAST QUARTER OF SECTION 10, TO THE NORTHWESTERLY CORNER OF THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 10; THENCE NORTHWESTERLY ALONG SAID STRAIGHT LINE TO ITS INTERSECTION WITH THE WESTERLY LINE OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10; THENCE NORTHERLY ALONG SAID WESTERLY LINE TO A POINT DISTANT SOUTHERLY THEREON 50.00 FEET FROM THE NORTHWESTERLY CORNER OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER; THENCE SOUTHEASTERLY IN A DIRECT LINE TO A POINT IN SAID WESTERLY LINE OF THE EASTERLY 500.00 FEET OF SAID NORTHEAST QUARTER OF SECTION 10 DISTANT SOUTHERLY THEREON 300.00 FEET FROM ITS INTERSECTION WITH THE NORTHERLY LINE OF SAID SOUTHEAST

QUARTER OF THE NORTHEAST QUARTER; THENCE SOUTHERLY ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

PARCEL 10B: (APN 4471-001-033)

THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF. EXCEPT THEREFROM THE EASTERLY 500.00 FEET, MEASURED ALONG THE NORTHERLY LINE OF SAID NORTHEAST QUARTER.

PARCEL 11A: (APN: 4471-001-036)

THE EASTERLY 500.00 FEET, MEASURED ALONG THE NORTHERLY LINE OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LAND INCLUDED WITHIN THE FOLLOWING DESCRIBED LINES:

BEGINNING AT A POINT IN THE EASTERLY LINE OF THE NORTHEAST ONE-QUARTER OF SAID SECTION 10, SAID POINT BEING SOUTH 01° 31' 53" WEST 314.12 FEET, MEASURED ALONG SAID EASTERLY LINE FROM A COUNTY SURVEYOR'S BRASS CAP MONUMENT SET AT THE NORTHEAST CORNER OF SAID SECTION 10; THENCE SOUTH 01° 31' 53" WEST 2300.71 FEET, MORE OR LESS, MEASURED ALONG SAID EASTERLY LINE TO THE EAST ONE-QUARTER CORNER OF SAID SECTION 10, SAID EAST ONE-QUARTER CORNER BEING A COUNTY SURVEYOR'S BRASS CAP MONUMENT; THENCE NORTH 11° 00' 53" WEST 703.36 FEET, MORE LESS, TO A POINT, SAID LAST MENTIONED POINT BEARS SOUTH 88° 31' 03" WEST 153.00 FEET, FROM A POINT IN THE EASTERLY LINE OF THE NORTHEAST ONE-QUARTER OF SAID SECTION 10, SAID LAST MENTIONED POINT BEING NORTH 01° 31' 53" EAST 694.59 FEET, MEASURED ALONG SAID EASTERLY LINE, FROM A COUNTY SURVEYOR'S BRASS CAP MONUMENT SET AT THE EAST ONE-QUARTER CORNER OF SAID SECTION 10; THENCE NORTH 06° 56' 20" EAST 1621.36 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

PARCEL 11B: (APN: 4471-001-037)

THE EASTERLY 500.00 FEET, MEASURED ALONG THE NORTHERLY LINE OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING SOUTHERLY OF A STRAIGHT LINE EXTENDING NORTHWESTERLY FROM THE SOUTHEASTERLY CORNER OF THE SOUTH HALF OF SAID NORTHEAST QUARTER OF SECTION 10, TO

THE NORTHWESTERLY CORNER OF SAID SOUTH HALF, OF THE NORTHEAST QUARTER OF SECTION 10.

ALSO EXCEPT THEREFROM THAT PORTION OF SAID LAND INCLUDED WITHIN THE FOLLOWING DESCRIBED LINES:

BEGINNING AT A POINT IN THE EASTERLY LINE OF THE NORTHEAST ONE-QUARTER OF SAID SECTION 10, SAID POINT BEING SOUTH 01° 31' 53" WEST 314.12 FEET, MEASURED ALONG SAID EASTERLY LINE FROM A COUNTY SURVEYOR'S BRASS CAP MONUMENT SET AT THE NORTHEAST CORNER OF SAID SECTION 10; THENCE SOUTH 01° 31' 53" WEST 2300.71 FEET, MORE OR LESS, MEASURED ALONG SAID EASTERLY LINE TO THE EAST ONE-QUARTER CORNER OF SAID SECTION 10, SAID EAST ONE-QUARTER CORNER BEING A COUNTY SURVEYOR'S BRASS CAP MONUMENT: THENCE NORTH 11° 00' 53" WEST 703.36 FEET, MORE LESS, TO A POINT, SAID LAST MENTIONED POINT BEARS SOUTH 88° 31' 03" WEST 153.00 FEET, FROM A POINT IN THE EASTERLY LINE OF THE NORTHEAST ONE-QUARTER OF SAID SECTION 10, SAID LAST MENTIONED POINT BEING NORTH 01° 31' 53" EAST 694.59 FEET, MEASURED ALONG SAID EASTERLY LINE, FROM A COUNTY SURVEYOR'S BRASS CAP MONUMENT SET AT THE EAST ONE-QUARTER CORNER OF SAID SECTION 10; THENCE NORTH 06° 56' 20" EAST 1621.36 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

PARCEL 12: (APN: 4471-001-038)

THAT PORTION OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE WESTERLY LINE OF THE EASTERLY 500.00 FEET, MEASURED ALONG THE NORTHERLY LINE OF THE NORTHEAST QUARTER OF SECTION 10, WITH A STRAIGHT LINE EXTENDING NORTHWESTERLY FROM THE SOUTHEASTERLY CORNER OF THE NORTHEAST QUARTER OF SECTION 10, TO THE NORTHWESTERLY CORNER OF THE SOUTH HALF OF THE NORTHEAST QUARTER OF SECTION 10; THENCE NORTHWESTERLY ALONG SAID STRAIGHT LINE TO ITS INTERSECTION WITH THE WESTERLY LINE OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10; THENCE NORTHERLY ALONG SAID WESTERLY LINE TO A POINT DISTANT SOUTHERLY THEREON 50.00 FEET FROM THE NORTHWESTERLY CORNER OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER; THENCE SOUTHEASTERLY IN A DIRECT LINE TO A POINT IN SAID WESTERLY LINE OF THE EASTERLY 500.00 FEET OF SAID NORTHEAST QUARTER OF SECTION 10, DISTANT SOUTHERLY THEREON 300.00 FEET FROM ITS INTERSECTION WITH THE NORTHERLY LINE OF SAID SOUTHEAST QUARTER OF THE NORTHEAST QUARTER; THENCE SOUTHERLY ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

PARCEL 13A: (APN: 4471-001-034)

THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10 TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL MAP THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING NORTHERLY OF A STRAIGHT LINE EXTENDING NORTHWESTERLY FROM THE SOUTHEASTERLY CORNER OF THE SOUTH HALF OF SAID NORTHEAST QUARTER OF SAID SECTION 10, TO THE NORTHWESTERLY CORNER OF SAID COUNTY HALF OF THE NORTHEAST QUARTER OF SAID SECTION 10 TOWNSHIP 1 SOUTH, RANGE 19 WESTS. B. B. & M, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.

PARCEL 13B: (APN# 4471-001-035)

THAT PORTION OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, COUNTY OF LOS ANGELES, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

THAT PORTION OF SAID LAND LYING SOUTHERLY OF A STRAIGHT LINE EXTENDING NORTHWESTERLY FROM THE SOUTHEASTERLY CORNER OF THE SOUTH HALF OF SAID NORTHEAST QUARTER OF SAID SECTION 10, TO THE NORTHWESTERLY CORNER OF SAID SOUTH HALF OF THE NORTHEAST QUARTER OF SAID SECTION 10.

PARCEL 13C: (APN # 4471-002-010)

THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 13D: (APN # 4471-002-011)

THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 14A: (APN: 4471-002-027)

THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING NORTHWESTERLY OF THE SOUTHEASTERLY LINE OF DECKER ROAD, AS DESCRIBED IN THE DEED TO THE COUNTY OF LOS ANGELES, RECORDED AS INSTRUMENT NO. 95 ON APRIL 29, 1918, IN BOOK 6682, PAGE 1 OF DEEDS.

PARCEL 14B: (APN: 4471-002-026)

THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 10, AND THOSE PORTIONS OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER AND THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SAID SECTION 10, ALL IN TOWNSHIP 1 SOUTH RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING NORTHEASTERLY, EASTERLY AND SOUTHEASTERLY OF THE SOUTHEASTERLY LINE OF DECKER CANYON ROAD, AS DESCRIBED IN THE DEED TO THE COUNTY OF LOS ANGELES, RECORDED APRIL 29, 1918 IN BOOK 6682 PAGE 1 OF DEEDS, RECORDS OF SAID COUNTY.

EXCEPT THAT PORTION OF SAID LAND, IF ANY, AS DESCRIBED IN THE DEED TO THE COUNTY OF LOS ANGELES, RECORDED IN BOOK 1962 PAGE 258, OFFICIAL RECORDS OF SAID COUNTY.

ALSO EXCEPT THERFROM THAT POTION OF SAID LAND LYING WITHIN THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 10, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

ALSO EXCEPT THAT PORTION OF SAID LAND, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE CENTER LINE OF DECKER CANYON ROAD, AS DESCRIBED IN THE DEED TO THE COUNTY OF LOS ANGELES, RECORDED MARCH 22, 1923 IN BOOK 1962 PAGE 258, OFFICIAL RECORDS, WITH THE SOUTH LINE OF SECTION 9; THENCE ALONG SAID CENTER LINE AS FOLLOWS: NORTH 81° 58' 30" EAST 133.84 FEET; THENCE NORTH 59° 30' 30" EAST 73.97 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 100 FEET; THENCE NORTHEASTERLY 51.02 FEET ALONG THE ARC OF THE ABOVE MENTIONED CURVE; THENCE TANGENT TO SAID CURVE, NORTH 88° 44' 30" EAST 21.82 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 40 FEET; THENCE NORTHEASTERLY 69.67 FEET ALONG THE ARC OF THE ABOVE MENTIONED CURVE; THENCE TANGENT TO SAID CURVE, NORTH 8° 54' 20" EAST 105.99 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE WESTERLY HAVING A RADIUS OF 100.00 FEET; THENCE NORTHERLY 76.26 FEET ALONG THE ARC OF THE ABOVE MENTIONED 100.00 FOOT RADIUS CURVE; THENCE TANGENT TO SAID CURVE, NORTH 34° 47' 20" WEST 4.44 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHEASTERLY HAVING A RADIUS OF 70 FEET; THENCE NORTHERLY 50.43 FEET ALONG THE ARC OF THE ABOVE MENTIONED 70 FOOT RADIUS CURVE; THENCE TANGENT TO SAID CURVE, NORTH 6° 29' 20" EAST 17.26 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE EASTERLY HAVING A RADIUS OF 100 FEET; THENCE NORTHEASTERLY 59.99 FEET ALONG THE ARC OF THE ABOVE MENTIONED 100 FOOT RADIUS CURVE; THENCE

TANGENT TO SAID CURVE, NORTH 40° 51' 40" EAST 83.35 FEET; THENCE NORTH 48° 18' 00" EAST 185 FEET; THENCE NORTH 20° 59' 10" EAST 81.84 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE SOUTHEASTERLY HAVING A RADIUS OF 10 FEET; THENCE NORTHEASTERLY 84.53 FEET ALONG THE ARC OF THE ABOVE MENTIONED 100 FOOT RADIUS CURVE; THENCE TANGENT TO SAID CURVE, NORTH 69° 25' 10" EAST 194.19 FEET; THENCE SOUTH 85° 43' 30" EAST 153.24 FEET; THENCE NORTH 78° 27' 20" EAST 211.90 FEET; THENCE NORTH 71° 43' 30" EAST 304.16 FEET; THENCE NORTH 87° 45' 30" EAST 432.70 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE NORTHWESTERLY HAVING A RADIUS OF 100 FEET; THENCE NORTHEASTERLY 107.03 FEET ALONG THE ARC OF THE ABOVE MENTIONED 100 FOOT RADIUS CURVE; THENCE TANGENT TO SAID CURVE, NORTH 26° 26' EAST 64.69 FEET; THENCE LEAVING SAID ROAD, SOUTH 8° 54' EAST 95.5 FEET; THENCE SOUTH 18° 44' EAST 57.5 FEET; THENCE SOUTH 46° 04' EAST 69.3 FEET; THENCE SOUTH 12° 56' EAST 99.6 FEET; THENCE SOUTH 77° 10' EAST 170.8 FEET; THENCE SOUTH 38° 34' EAST 66.00 FEET; THENCE NORTH 78° 32' EAST 45.6 FEET; THENCE SOUTH 54° 26' EAST 96.3 FEET; THENCE SOUTH 39° 11' 10" EAST 262.37 FEET; THENCE SOUTH 62° 20' EAST 173.7 FEET; THENCE SOUTH 5° 28' EAST 86.8 FEET; THENCE SOUTH 35° 06' EAST 50.4 FEET; THENCE SOUTH 5° 00' EAST 54.3 FEET; THENCE SOUTH 47° 00' EAST 221.2 FEET; THENCE SOUTH 54° 34' WEST 20.2 FEET TO THE INTERSECTION OF THE SOUTH LINE OF SAID SECTION 10; THENCE NORTH 89° 51' WEST 1620.82 FEET TO THE COMMON CORNER OF SECTION 9, 10, 15 AND 16, SAID TOWNSHIP AND RANGE; THENCE SOUTH 89° 51' 50" WEST 1305.95 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

PARCEL 15: (APN: 4471-021-034)

THE EASTERLY 300.00 FEET OF THE WEST HALF OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 1 SOUTH, RANGE 19 WEST, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING NORTHERLY OF A STRIP OF LAND 60.00 FEET WIDE, KNOWN AS ENCINAL CANYON ROAD, AS DESCRIBED IN DEED GRANTED TO SAID COUNTY, RECORDED MARCH 29, 1955 IN BOOK 47324 PAGE 226, OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 16: (APN # 4471-021-033)

THAT PORTION OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID QUARTER; THENCE ALONG THE NORTHERLY LINE OF SAID QUARTER, NORTH 89° 49' 35" EAST 225 FEET; THENCE SOUTH 0° 18' 53" WEST ALONG A LINE PARALLEL WITH THE WESTERLY LINE OF SAID QUARTER TO THE NORTHERLY LINE OF ENCINAL CANYON ROAD, (60 FEET WIDE), DESCRIBED AS PARCEL "A" IN DEED RECORDED APRIL 27, 1955 IN BOOK 47605 PAGE 380, OFFICIAL RECORDS, AS INSTRUMENT NO. 2850 OF SAID COUNTY; THENCE ALONG SAID ENCINAL CANYON ROAD, SOUTH 89° 36' WEST

224.99 FEET TO SAID WESTERLY LINE; THENCE NORTH 0° 18' 53" EAST ALONG SAID WESTERLY LINE TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, GAS AND MINERALS IN, ON OR UNDER SAID LAND, BUT WITHOUT ANY RIGHT OF SURFACE ENTRY TO A DEPTH OF 500 FEET BELOW THE SURFACE OF SAID LAND, AS RESERVED BY FRANK BIASTRE AND CLAUDINE BIASTRE, HIS WIFE, IN DEED RECORDED SEPTEMBER 18, 1972 AS INSTRUMENT NO. 488.

PARCEL 17A: (APN # 4471-003-011)

THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 11, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF LOS ANGELES, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND, LYING EASTERLY AND NORTHEASTERLY OF A LINE, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF SAID SECTION 11, WITH THE CENTERLINE OF MULHOLLAND HIGHWAY, (100 FEET WIDE), AS DESCRIBED IN RESOLUTION APPROVED ON APRIL 2, 1934 BY THE BOARD OF SUPERVISORS OF LOS ANGELES COUNTY, RECORDED APRIL 10, 1934 IN BOOK 12707 PAGE 152, OFFICIAL RECORDS, AS INSTRUMENT NO. 943 OF SAID COUNTY; THENCE SOUTHERLY AND SOUTHEASTERLY, ALONG SAID CENTER LINE TO ITS FIRST INTERSECTION THEREOF WITH THE SOUTHERLY LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 11.

PARCEL 17B: (APN#4471-003-010)

THE NORTHEASTERLY QUARTER OF THE NORTHWEST QUARTER OF SECTION 11 TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THEREFROM THAT PORTION OF SAID LAND LYING EASTERLY AND NORTHEASTERLY OF A LINE, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF SAID SECTION 11, WITH THE CENTERLINE OF MULHOLLAND HIGHWAY, (100 FEET WIDE), AS DESCRIBED IN RESOLUTION APPROVED ON APRIL 2, 1934 BY THE BOARD OF SUPERVISORS OF LOS ANGELES COUNTY, RECODED APRIL 10, 1934 IN BOOK 12707, PAGE 152 OFFICIAL RECORDS, AS INSTRUMENT NO. 943 OF SAID COUNTY; THENCE SOUTHERLY AND SOUTHEASTERLY, ALONG SAID CENTER LINE TO ITS FIRST INTERSECTION THEREOF WITH THE SOUTHERLY LINE OF THE NORTH HALF OF THE NORTHWEST QUARTER OF SAID SECTION 11.

PARCEL 18A: (APN # 4471-003-032)

THAT PORTION OF THE NORTH HALF OF THE SOUTHWEST QUARTER OF SECTION 11, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF, LYING SOUTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT THE NORTHWESTERLY CORNER OF SAID SOUTHWEST QUARTER; THENCE SOUTH 71° 57' 58" EAST 2825.01 FEET TO A POINT IN THE EASTERLY LINE OF SAID SOUTHWEST QUARTER, DISTANT THEREON NORTH 0° 47' 04" EAST 1766.75 FEET FROM THE SOUTHEAST CORNER OF SAID SOUTHWEST QUARTER.

PARCEL 18B: (APN # 4471-003-030)

THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 11, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 18C: (APN # 4471-003-031)

THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 11, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF LOS ANGELES STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

PARCEL 19: (APN # 4471-021-028)

THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 1 SOUTH, RANGE 19 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT THAT PORTION AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID NORTHEAST QUARTER OF THE NORTHEAST QUARTER; THENCE EASTERLY ALONG THE NORTH LINE OF SAID NORTHEAST QUARTER A DISTANCE OF 225 FEET; THENCE SOUTHERLY PARALLEL WITH THE WEST LINE OF SAID QUARTER SECTION, A DISTANCE OF 950 FEET; THENCE SOUTHWESTERLY IN A DIRECT LINE TO A POINT IN SAID WEST LINE DISTANT SOUTHERLY 1000 FEET TO THE POINT OF BEGINNING.

ALSO EXCEPT THAT PORTION LYING SOUTHERLY AND SOUTHWESTERLY OF THE CENTERLINE OF THAT CERTAIN 60 FEET EASEMENT FOR PUBLIC ROAD AND HIGHWAY PURPOSES AS DESCRIBED IN THE DEED TO THE COUNTY OF LOS ANGELES RECORDED JUNE 6, 1955 AS INSTRUMENT NO. 3763, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALSO EXCEPT THE SOUTH HALF OF THE SOUTHEAST QUARTER OF THE
NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SAID SECTION.

(End of Legal Description)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "3"

## [BUDGET]

Malibu Associates LLC

DIP FINANCING - CF MODEL

| | | wk 1 | wk 2 | wk 3 | wk 4 | wk 5 | wk 6 | wk 7 | wk 8 | wk 9 | wk 10 | wk 11 | wk 12 | wk 13 | Grand Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 9-Mar | 16-Mar | 23-Mar | 30-Mar | 6-Apr | 13-Apr | 20-Apr | 27-Apr | 4-May | 11-May | 18-May | 25-May | 1-Jun | |
| | | | | | | | | | | | | | | | |
| Bank Balance | | 500.50 | 205.50 | 910.50 | 615.50 | 1,786.25 | 1,991.25 | 1,696.25 | 2,401.25 | 2,259.83 | 1,964.83 | 1,669.83 | 2,374.83 | 1,533.41 | 19,909.73 |
| | | | | | | | | | | | | | | | |
| Add: Advances from AA87 LLC | | 12,000.00 | 13,000.00 | 12,000.00 | 118,000.00 | 20,000.00 | 12,000.00 | 13,000.00 | 108,000.00 | 12,000.00 | 12,000.00 | 13,000.00 | 108,000.00 | 13,000.00 | 466,000.00 |
| | | | | | | | | | | | | | | | |
| Malibu Golf Club Operating Expenses | | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (11,735.00) | (152,555.00) |
| | | | | | | | | | | | | | | | |
| AMEX (Estimated travel & other business expenses) | | | | | (6,200.00) | | | | (6,200.00) | | | | (6,200.00) | | (18,600.00) |
| Bank Charges | | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (60.00) | (780.00) |
| Distel Limited Partnership (rent) | | | | | (4,898.83) | | | | (2,261.00) | | | | (2,261.00) | | (9,420.83) |
| The Thomas C. Hix Company #3 | | | | | (25,000.00) | | | | (25,000.00) | | | | (25,000.00) | | (75,000.00) |
| Jonathan Petke, Inc. | | | | | | | | | (6,000.00) | | | | (6,000.00) | | (12,000.00) |
| Christine Carter Conway - Wages | | | | | (3,500.00) | | | | (1,500.00) | | | | (1,500.00) | | (6,500.00) |
| Ghost Tree - Wages | | | | | (8,000.00) | | | | (8,000.00) | | | | (8,000.00) | | (24,000.00) |
| Karen L. Trifari - Wages | | | | | (4,000.00) | | | | (4,000.00) | | | | (4,000.00) | | (12,000.00) |
| Other | | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (500.00) | (6,500.00) |
| | | | | | | | | | | | | | | | |
| Consultants/Other Professionals | | | | | | | | | | | | | | | |
| Bob Burke & Company | | | | | (4,000.00) | | | | (4,000.00) * | | | | (4,000.00) * | | (12,000.00) |
| Mark A. Massara | | | | | (2,500.00) | | | | (2,500.00) * | | | | (2,500.00) * | | (7,500.00) |
| Truman & Elliott LLP | | | | | (15,000.00) | | | | (10,000.00) | | | | (10,000.00) | | (35,000.00) |
| Legal Fees Labor Attorney | | | | | | (7,500.00) | | | | | | | | | (7,500.00) |
| Tax Preparation CPA Fees | | | | | (5,000.00) | | | | | | | | | | (5,000.00) |
| | | | | | | | | | | | | | | | |
| *April & May payments will | | | | | | | | | | | | | | | |
| not be paid if there are no | | | | | | | | | | | | | | | |
| appeals to the project. | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| AP Distribution | | | | | | | | | | | | | | | |
| Cbeyond Telephones | | | | | (869.00) | | | | (869.00) | | | | (869.00) | | (2,607.00) |
| Delage Landen (copier rental) | | | | | (299.24) | | | | (299.24) | | | | (299.24) | | (897.72) |
| Verizon | | | | | (167.18) | | | | (167.18) | | | | (167.18) | | (501.54) |
| Office Depot | | | | | (100.00) | | | | (50.00) | | | | (100.00) | | (250.00) |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Restructuring Fees | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| U.S. Trustee | | | | | | | | | | | | | (650.00) | | (650.00) |
| Bankruptcy Legal Fees | | | | | (25,000.00) | | | | (25,000.00) | | | | (25,000.00) | | (75,000.00) |
| | | | | | | | | | | | | | | | |
| Total Disbursements | | (12,295.00) | (12,295.00) | (12,295.00) | (116,829.25) | (19,795.00) | (12,295.00) | (12,295.00) | (108,141.42) | (12,295.00) | (12,295.00) | (12,295.00) | (108,841.42) | (12,295.00) | (464,262.09) |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| Ending Bank Balance | | 205.50 | 910.50 | 615.50 | 1,786.25 | 1,991.25 | 1,696.25 | 2,401.25 | 2,259.83 | 1,964.83 | 1,669.83 | 2,374.83 | 1,533.41 | 2,238.41 | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing documents described as DECLARATION OF THOMAS C. HIX IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 364(c), 364(d)(1) AND 364(e); (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE AND 4001(c); AND (III) GRANTING RELATED RELIEF THEREO will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 19, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

David L. Neale on behalf of Debtor Malibu Associates, LLC, a California limited liability company
dln@lnbrb.com

Lindsey L Smith on behalf of Debtor Malibu Associates, LLC, a California limited liability company
lls@lnbyb.com, lls@ecf.inforuptcy.com

Lindsey L Smith on behalf of Interested Party Courtesy NEF
lls@lnbyb.com, lls@ecf.inforuptcy.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

Joshua D Wayser on behalf of Creditor U.S. Bank National Association, as successor-in-interest to the Federal Deposit Insurance Corporation
joshua.wayser@kattenlaw.com,
jessica.mickelsen@kattenlaw.com;kim.johnson@kattenlaw.com,ecf.lax.docket@kattenlaw.com,adelle.shafer@kattenlaw.com

**2. SERVED BY UNITED STATES MAIL**:
On March 19, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

N/A

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 19, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                            **F 9013-3.1.PROOF.SERVICE**

| Chambers Copy via Overnight Delivery | Via Overnight Delivery |
|---|---|
| Hon. Deborah J. Saltzman | Counsel for the United States Trustee |
| United States Bankruptcy Court | Brian D. Fittipaldi, Esq. |
| Central District of California | 128 East Carrillo Street |
| 1415 State Street, Courtroom 202 | Santa Barbara, CA 93101 |
| Santa Barbara, CA 93101-2511 | |

☒ Service information continued on attached page re service **Via Overnight Delivery**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 19, 2015 | John Berwick | /s/ John Berwick |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-9
Case 9:15-bk-10477-DS
Central District Of California
Santa Barbara
Thu Mar 19 10:38:55 PDT 2015

Malibu Associates, LLC, a California limited
2400 Wyandotte St Ste B-102
Mountain View, CA 94043-2373

Northern Division
1415 State Street,
Santa Barbara, CA 93101-2511

Aa87, LLC
Attn: Managers
300 West Spring Street, Suite 1901
Columbus, OH 43215-7662

Abundant Life Christian Fellowship
2581 Leghorn Street
Mountain View, CA 94043-1613

Ballard Rosenberg Golper
& Savitt LLP
500 North Brand Blvd., 20th Floor
Glendale, CA 91203-3304

Blakeley & Blakeley LLP
2 Park Plaza
Suite 400
Irvine, CA 92614-8514

Bob Burke & Company
1100 S. Flower Street
Suite 3300
Los Angeles, CA 90015-2289

David L. Neale
Levene, Neale, Bender, Yoo & Brill LLP
10250 Constellation Blvd., Ste. 1700
Los Angeles, CA 90067-6253

EPD Consultants
20722 Main Street
Carson, CA 90745-1117

Employment Development Department
Bankruptcy Group MIC 92E
PO Box 826880
Sacramento, CA 94280-0001

Evicom Corporation
4165 E. Thousand Oaks Blvd.
Suite 290
Thousand Oaks, CA 91362-3815

FISREF Investment Support Services
FBO David B. Agus, MD
8631 West Third St., Suite 215E
Los Angeles, CA 90048-5943

Franchise Tax Board
Bankruptcy Section, MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Glass Ratner
3424 Peachtree Road NE
Suite 2150
Atlanta, GA 30326-2869

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Joshua D. Wayser & Lorie Lazarus
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012

Los Angeles County Board of
Supervisors by UNITE HERE Local 11
464 S. Lucas Ave., Suite 201
Los Angeles, CA 90017-2074

Los Angeles County Treasurer and
Tax Collector
P.O. Box 54110
Los Angeles, CA 90054-0110

MPK Development LLC
Attn: Mark D. Kvamme
205 Spokane Ave.
Whitefish, MT 59937-2651

Malibu Associates LLC
901 Encinal Road
Malibu, CA 90265

Mark A. Massara, Attorney at Law
1642 Great Highway
San Francisco, CA 94122-2806

Mark D. Kvamme
205 Spokane Ave.
Whitefish, MT 59937-2651

Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017-3560

PMC Project Management
12976 Camino Del Canto
Del Mar, CA 92014-3757

Pacific Capital Holdings, Inc.
Attn: Alexis Klein
2295 Francisco Street, #2
San Francisco, CA 94123-1977

Pacific Capital Investments, LP
Attn: Alexis Klein
2295 Francisco Street, #2
San Francisco, CA 94123-1977

RCE Consultants, Inc.
23332 Mill Creek
Suite 205
Laguna Hills, CA 92653-7929

RSF, Jr., LLC
c/o Matrix Advisors, LLC
780 Third Ave., 28th Fl.
New York, NY 10017-2024

Richard S. Fuld, Jr.
c/o Matrix Advisors, LLC
780 Third Avenue, 28th Floor
New York, NY 10017-2024

(p)CALIFORNIA STATE BOARD OF EQUALIZATION
ACCOUNT REFERENCE GROUP MIC 29
P O BOX 942879
SACRAMENTO CA 94279-0029

T&J Investment Partners, LLC
Attn: Thomas C. Hix
2400 Wyandotte Street, Suite B-102
Mountain View, CA 94043-2373

The Leone-Perkins Trust udt 8/26/99
c/o Sequpia Capital 3000 Sand Hill
Road Bldg 4, Ste. 180
Menlo Park, CA 94025-7113

The Thomas C. Hix Company No 3 Inc.
Attn: Thomas C. Hix
2400 Wyandotte Street, Suite B-102
Mountain View, CA 94043-2373

Third Millennium Trust
c/o Sequoia Capital, 3000 Sand Hill
Road Bldg 4, Suite 180
Menlo Park, CA 94025-7113

Thomas C. Hix
2400 Wyandotte Street
Ste. B-101
Mountain View, CA 94043-2373

U.S. Bank, National Association
Attn: Real Estate Group
1515 Westcliff Drive, 2nd Floor
Newport Beach, CA 92660-5520

United States Trustee (ND)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

David L. Neale
Levene Neale Bender Rankin & Brill LLP
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067-6253

Lindsey L Smith
Levene, Neale, Bender, Rankin & Bri
10250 Constellation Blvd Ste 1700
Los Angeles, CA 90067-6253

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)U.S. Bank National Association, as success

(d)MPK Development, LLC
Attn: Mark D. Kvamme
205 Spokane Ave.
Whitefish, MT 59937-2651

(d)Malibu Associates, LLC
901 Encinal Road
Malibu, CA 90265

(d)The Thomas C. Hix Company No. 3 Inc
Attn: Thomas C. Hix
2400 Wyandotte Street, Suite B-102
Mountain View, CA 94043-2373

End of Label Matrix
Mailable recipients    39
Bypassed recipients     5
Total                  44