DAVID L. NEALE (SBN 141225)
LINDSEY L. SMITH (SBN 265401 )
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: dln@lnbyb.com, lls@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and
Debtor in Possession

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
NORTHERN DIVISION**

| | |
|---|---|
| In re<br><br>MALIBU ASSOCIATES, LLC, a<br>California limited liability company,<br><br>　　　　　Debtor. | Case No. 9:15-bk-10477-DS<br><br>Chapter 11<br><br>***EX PARTE*** **APPLICATION FOR ORDER SHORTENING TIME ON NOTICE FOR HEARING ON DEBTOR'S MOTION FOR ENTRY OF AN INTERIM ORDER:**<br>**(I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 364(c), 364(d)(1) AND 364(e);**<br>**(II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE AND 4001(c); AND**<br>**(III) GRANTING RELATED RELIEF**<br><br>**DECLARATION OF THOMAS C. HIX IN SUPPORT THEREOF**<br><br>Date:　　[TO BE SET]<br>Time:　　[TO BE SET]<br>Place:　　Courtroom "202"<br>　　　　　1415 State Street<br>　　　　　Santa Barbara, California |

1

**I.**

**INTRODUCTION**

Malibu Associates, LLC, a California limited liability company, the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), hereby files this *ex parte* application (the "Application") pursuant to Local Bankruptcy Rule 9075-1(b) for an order shortening time on notice for hearing on the *"Debtor's Motion For Entry Of An Interim Order: (I) Authorizing Debtor To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), 364(d)(1) And 364(e); (II) Scheduling A Final Hearing Pursuant to Bankruptcy Rule 4001(c); And (III) Granting Related Relief"* (the "Motion").

By the Motion, the Debtor is seeking the entry of a Court order authorizing the Debtor to obtain post-petition secured financing in from Aa87, LLC (the "Lender") on the same terms as that certain pre-petition loan made by the Lender to the Debtor pursuant to that certain *Secured Promissory Note* dated January 1, 2015 (the "Note"), and that certain *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated January 1, 2015 (the "Deed of Trust" together with the Note, the "Pre-Petition Financing Documents") and subject to the terms and conditions set forth in that certain *Stipulation Authorizing The Debtor To Incur Secured Debt Pursuant To 11 U.S.C. § 364(c)(3)* (the "DIP Financing Stipulation") and such other agreements and documents as may be reasonably requested by Lender in order to memorialize and effect the DIP Financing (collectively, the "DIP Financing Documents") and pursuant to the terms of the proposed interim order (the "Interim Order") attached as Exhibit "A" to the Declaration of Thomas C. Hix filed concurrently with and in support of the Motion (the "Hix Declaration").

For the reasons set forth in this Application, **the Debtor is seeking to have Motion heard on or before March 26, 2015 or as soon as is practicable for the Court**.

In order to provide notice of this Application and Motion in compliance with Local Bankruptcy Rule 9075-1(b), concurrently with the filing of this Application and the Motion with the Court (on March 19, 2015), the Debtor has served a copy of the Application and the Motion and all supportive papers upon the Office of the United States Trustee, all of the Debtor's known

2

creditors, parties requesting special notice and other parties in interest by overnight courier for delivery by no later than March 20, 2015.

## II.

## STATEMENT OF FACTS

The Debtor's principal asset is the real property located at 901 Encinal Canyon Road, Malibu, California 90265 (the "Property"). The Property, which is commonly known as the Malibu Country Club, is comprised of 648.5 acres and includes an 18-holf golf course, a club house of approximately 10,000 square feet, and a maintenance facility of approximately 4,000 square feet.

The Property was purchased by the Debtor in or around 2006 for the purpose of redeveloping the Property and the golf course and structures thereon. Pursuant to an appraisal obtained by the Debtor in November of 2014, the Property, as-is, has a value of approximately $75,900,000. Since the Debtor's acquisition of the Property, the Debtor has been working on obtaining the requisite final land entitlements for the development of the Property, including obtaining approval from the applicable governmental agencies to develop the Property and ultimately, from the California Coastal Commission (the "Entitlements").

The Debtor is the borrower under that certain *Consolidation Agreement*, which consolidated, amended, and superseded the certain loans made by California National Bank to the Debtor, which were thereafter assigned to U.S. Bank, National Association (the "Bank") into a single loan in the principal amount of $46,771,683.85 (the "Loan"). The Loan was memorialized in, among other documents, three promissory notes, a loan agreement, and a deed of trust which became the first priority lien against the Property and which was recorded against the Property on June 29, 2011 as instrument number 20110881902 (the "Bank Deed of Trust"). In addition, the Loan is secured by all assets of the Debtor pursuant to a UCC Financing Statement recorded with the California Secretary of State on June 27, 2011 and bearing filing number 11-7274935473. Accordingly, the Bank holds first priority lien against Property and a first priority security interest against the Debtor's assets.

On January 1, 2015, the Debtor and Lender entered in to the Pre-Petition Financing Documents[1] pursuant to which the Debtor obtained a $3,000,000 line of credit from the Lender for the purpose of, among other things, covering the Debtor's operating costs and allowing the Debtor to maintain the Property while it processed the final Entitlements and attempted to market the Property for sale. Pursuant to the terms of the Pre-Petition Financing Documents, the Deed of Trust is expressly subordinate to the Bank Deed of Trust and prohibits the Lender from foreclosing or taking any action to enforce its rights under the Note or the Deed of Trust unless and until the Bank is paid in full. The Deed of Trust was recorded against the Property on February 6, 2015 as instrument number 20150138777. As of the Petition Date, the Debtor had drawn on $473,000.00 of the line of credit provided by Lender.

Pursuant to the *Consolidation Agreement* and Loan, the Debtor was required to meet certain deadlines for obtaining approval of certain Entitlements necessary to redevelop the Property. In order to provide an extension of certain deadlines by which the Debtor was required to obtain certain Entitlements under the *Consolidation Agreement* and Loan, on or about December 15, 2012 and again on January 28, 2014, the Debtor and the Bank entered into amendments to the *Consolidation Agreement* and Loan. Taking into account the aforementioned amendments, the Bank contends that the Loan matured on October 15, 2014 (the "Maturity Date").

The Debtor did not pay off the Loan on the Maturity Date. Thereafter, the Bank declared an event of default under the Loan and the Bank Deed of Trust and has asserted that all amounts owed under the Loan are due and payable. On October 28, 2014, the bank recorded a notice of default, which appears as instrument number 20110881902 (the "NOD").

Thereafter, on February 2, 2015, the Bank caused to be recorded a Notice of Trustee's Sale with respect to the Property. The Trustee's sale was continued from time to time after the recording of the Notice of Trustee's sale and most recently was continued to March 13, 2015.

---

[1] Attached as Exhibits "1" and "2" to **Exhibit B** to the Declaration of Thomas C. Hix filed concurrently herewith (the "Hix Declaration") are copies of the Pre-Petition Financing Documents.

1       The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code the Petition

2 Date. The Debtor continues to operate its business, manage its financial affairs, and operate its

3 bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy

4 Code.

5       Prior to the Petition Date, the Debtor obtained approval of the Entitlements by the Los

6 Angeles Board of Supervisors and other necessary governmental agencies. However, the approval

7 of the Entitlements was delayed due to an appeal ("Appeal") of the earlier approval of the

8 Entitlements in November, 2014 that was filed with the Los Angeles County Board of Supervisors

9 by Unite Here Local 11 (the "Union"), which sought to unionize certain aspects of the final

10 redeveloped project. The Appeal has now been resolved pursuant to that certain *Memorandum of*

11 *Agreement* dated February 20, 2015 and entered into by and between the Debtor and the Union,

12 pursuant to which the Union agreed to withdraw the Appeal. Even though the Union withdrew the

13 Appeal on February 20, 2015, it took until March 3, 2015 for the Los Angeles County to process

14 the Notice of Final Action of the CDP approval (the "Notice of Final Action") to be forwarded to

15 the California Coastal Commission. The California Coastal Commission received the Notice of

16 Final Action on March 6, 2015 and the public appeal period will terminate on March 19, 2015 at

17 5:00 p.m., provided that no appeal is filed prior to the deadline.

18       During the year or so prior to the Debtor's bankruptcy filing, the Debtor marketed the

19 Property for either a JV partner or for. On or about February 24, 2015, the Debtor and The Armada

20 Enterprises, Inc. (the "Buyer") entered into an *Agreement of Purchase and Sale* (the "Purchase

21 Agreement") pursuant to which the Buyer is to purchase the Property from the Debtor. However,

22 as a result of the Bank's refusal to continue to the Trustee's sale of the Property scheduled for

23 March 13, 2015, the Buyer did not make the requisite deposit required under the Purchase

24 Agreement. Notwithstanding the foregoing, the Debtor and the Buyer are continuing to negotiate

25 regarding the sale of the Property to the Buyer.

26       In order to protect the Debtor's substantial equity in the Property and allow the Debtor time

27 to obtain final approval of all Entitlements (which once obtained, will greatly increase the value of

28

5

the Property), the Debtor was forced to seek relief by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

Through the Debtor's bankruptcy case, the Debtor intends to complete the Entitlements process and market and sell the Property for the highest possible price. The Debtor believes that the sale of the Property will yield proceeds sufficient to pay the Bank and other creditors in full.

Since the Debtor ceased operations in November, 2014, the Debtor does not generate any cash. Thus, the Debtor requires funding to maintain the Property, continue the process to obtain final Entitlements, and preserve the value of the Property while the Debtor pursues a marketing and sale process which will allow the Debtor to sell the Property for the highest possible price. Fortunately, the Lender has agreed to provide the Debtor with the DIP Financing, pursuant to the terms and conditions set forth in the DIP Financing Documents and DIP Financing Stipulation. Based on the Debtor's Budget, which sets forth the Debtor's projected cash receipts and disbursements for the 13-week period following the Petition Date, the Debtor believes that the proposed DIP Financing will provide the Debtor with sufficient funds to complete the Entitlements and maintain the Property until the sale of the Property is successfully consummated.

The Debtor submits that the Debtor needs to obtain approval of the DIP Financing and needs authority to use the cash obtained from the DIP Financing by no later than **March 26, 2015** in order to allow the Debtor to make certain disbursements to maintain the Property and its business, including paying utility bills and wages of its employees.

Pursuant to the Motion, the Debtor seeks authority to obtain the DIP Financing on the terms and conditions set forth in the Motion. The Debtor submits that the Debtor is unable to obtain sufficient interim and long-term financing from sources other than the Lender on terms and subject to conditions more favorable than under the DIP Financing Documents, and is not able to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. The Debtor is also unable to obtain secured credit allowable under Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP

Financing Documents without granting to the Lender the DIP Lender Lien (as that term is defined in the Motion).

The Lender has indicated that it is willing to provide the Debtor with the proposed DIP Financing solely on the terms and conditions set forth in the DIP Financing Documents, the DIP Financing Stipulation and the Interim Order. After considering all of the alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Financing to be provided by the Lender, when coupled with the authorization to use the proceeds of the DIP Financing in accordance with the Budget and pursuant to the terms of the DIP Financing Stipulation, represents the best financing presently available to the Debtor.

Accordingly, the Debtor represents that (i) the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Financing has been negotiated in good faith between the Debtor and the Lender, and (iii) any DIP Financing advances made to the Debtor by the Lender will be made in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. Pursuant to the Motion, the Debtor is requesting entry of the Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and the Local Bankruptcy Rules.

Absent granting the relief sought by the Motion, the Debtor's estate will be harmed. Approval of the DIP Financing and authorization of the use the proceeds therefrom in accordance with the Interim Order, the DIP Financing Documents and the DIP Financing Stipulation are, therefore, in the best interests of the Debtor's estate.

As stated above, the Debtor submits that the Debtor needs to obtain approval of the DIP Financing and the proceeds obtained from the DIP Financing by no later than **March 26, 2015** in order to allow the Debtor to make certain disbursements to maintain the Property and its business, including paying utility bills and wages of its employees.

///

///

## III.

## CAUSE EXISTS TO SHORTEN NOTICE OF HEARING ON THE MOTION

In re Intermagnetics America, Inc., 101 B.R. 291 (Bankr. C.D. Cal. 1989) instructs that a party must establish one of the following factors to permit an *ex parte* hearing on shortened notice:

1. The moving party will suffer immediate and irreparable injury, loss, or that damage will result to the moving party;

2. There is a danger that notice to an opposing party will result in that party's flight or destruction of evidence; or

3. That exigent circumstances, beyond the control of the moving party, prevent the moving party from having its motion heard on regular notice.

The Debtor respectfully submits that the circumstances herein fit the first and third criteria of Intermagnetics.

If the Debtor is not permitted to obtain the DIP Financing and use the proceeds therefrom to maintain the Property and operate its business, including paying certain utility bills and other maintenance fees needed to be paid on or before March 26, 2015, it is all but certain that the Property will fall into disrepair the value of the Property will be decimated. Moreover, if the Debtor is not authorized to obtain the DIP Financing and use the proceeds therefrom to maintain the value of the Property, including using the proceeds therefrom in connection with obtaining the final Entitlements, the Debtor's efforts to successfully sell the Property for the highest price possible will be jeopardized, if not eviscerated altogether. Given the foregoing, there is little question that the Debtor will suffer immediate injury, loss or damage if the Motion is not heard on an expedited basis.

In addition, the Debtor respectfully submits that there are exigent circumstances, which were beyond the control of the Debtor, which prevented the Debtor from having the Motion heard on regular notice. As stated above, the Debtor only filed its voluntary petition on March 10, 2015 and requires cash to pay utility providers and other maintenance fees on or before

March 26, 2015. Thus, the Debtor submits that this short sixteen (16) day time frame, which was outside of the control of the Debtor (and which was controlled by the due dates of the utility bills and other maintenance fees in relation to the Petition Date), did not afford the Debtor enough time to have the Motion heard on regular 21 days' notice.

## IV.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order shortening time for notice on the Motion so that it may be heard **on or before March 26, 2015 or as soon as is practicable for the Court**, and granting such other and further relief as the Court deems just and proper.

Dated: March 19, 2015                    MALIBU ASSOCIATES, LLC

By: */s/ Lindsey L. Smith*
    DAVID L. NEALE
    LINDSEY L. SMITH
    LEVENE, NEALE, BENDER, YOO
      & BRILL L.L.P.
    Proposed Attorneys for Chapter 11 Debtor
    and Debtor in Possession

## **DECLARATION OF THOMAS C. HIX**

I, Thomas C. Hix, hereby declare as follows:

1. I am over 18 years of age. I am the President of the co-managing member of Malibu Associates, LLC, a California limited liability company, debtor and debtor in possession herein (the "Debtor"). Accordingly, I am familiar with the business operations and financial books and records of the Debtor. I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2. I have access to the Debtor's books and records. I am familiar with the history, organization, operations and financial condition of the Debtor. The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents. The statements set forth in this declaration are based upon my own personal knowledge and my knowledge of the Debtor's books and records.

3. I submit this declaration in support of the Debtor's *ex parte* application for an order shortening time on notice for hearing on the *"Debtor's Motion For Entry Of An Interim Order: (I) Authorizing Debtor To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), 364(d)(1) And 364(e); (II) Scheduling A Final Hearing Pursuant to Bankruptcy Rule 4001(c); And (III) Granting Related Relief"* (the "Motion").

4. By the Motion, the Debtor is seeking the entry of a Court order authorizing the Debtor to obtain post-petition secured financing in from Aa87, LLC (the "Lender") on the same terms as that certain pre-petition loan made by the Lender to the Debtor pursuant to that certain *Secured Promissory Note* dated January 1, 2015 (the "Note"), and that certain *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated January 1, 2015 (the "Deed of Trust" together with the Note, the "Pre-Petition Financing Documents") and subject to the terms and conditions set forth in that certain *Stipulation Authorizing The Debtor To Incur Secured Debt*

*Pursuant To 11 U.S.C. § 364(c)(3)* (the "DIP Financing Stipulation") and such other agreements and documents as may be reasonably requested by Lender in order to memorialize and effect the DIP Financing (collectively, the "DIP Financing Documents") and pursuant to the terms of the proposed interim order (the "Interim Order"), which attached as Exhibit "A" to my declaration concurrently with and in support of the Motion.

5. The Debtor's principal asset is the real property located at 901 Encinal Canyon Road, Malibu, California 90265 (the "Property"). The Property, which is commonly known as the Malibu Country Club, is comprised of 648.5 acres and includes an 18-holf golf course, a club house of approximately 10,000 square feet, and a maintenance facility of approximately 4,000 square feet.

6. The Property was purchased by the Debtor in or around 2006 for the purpose of redeveloping the Property and the golf course and structures thereon. Pursuant to an appraisal obtained by the Debtor in November of 2014, the Property, as-is, has a value of approximately $75,900,000. Since the Debtor's acquisition of the Property, the Debtor has been working on obtaining the requisite final land entitlements for the development of the Property, including obtaining approval from the applicable governmental agencies to develop the Property and ultimately, from the California Coastal Commission (the "Entitlements").

7. The Debtor is the borrower under that certain *Consolidation Agreement*, which consolidated, amended, and superseded the certain loans made by California National Bank to the Debtor, which were thereafter assigned to U.S. Bank, National Association (the "Bank") into a single loan in the principal amount of $46,771,683.85 (the "Loan"). The Loan was memorialized in, among other documents, three promissory notes, a loan agreement, and a deed of trust which became the first priority lien against the Property and which was recorded against the Property on June 29, 2011 as instrument number 20110881902 (the "Bank Deed of Trust"). In addition, the Loan is secured by all assets of the Debtor pursuant to a UCC Financing Statement recorded with the California Secretary of State on June 27, 2011 and bearing filing

1 number 11-7274935473. Accordingly, the Bank holds first priority lien against Property and a
2 first priority security interest against the Debtor's assets.

3     8.    On January 1, 2015, the Debtor and Lender entered in to the Pre-Petition
4 Financing Documents pursuant to which the Debtor obtained a $3,000,000 line of credit from the
5 Lender for the purpose of, among other things, covering the Debtor's operating costs and
6 allowing the Debtor to maintain the Property while it processed the final Entitlements and
7 attempted to market the Property for sale. Pursuant to the terms of the Pre-Petition Financing
8 Documents, the Deed of Trust is expressly subordinate to the Bank Deed of Trust and prohibits
9 the Lender from foreclosing or taking any action to enforce its rights under the Note or the Deed
10 of Trust unless and until the Bank is paid in full. The Deed of Trust was recorded against the
11 Property on February 6, 2015 as instrument number 20150138777. As of the Petition Date, the
12 Debtor had drawn on $473,000.00 of the line of credit provided by Lender.

13     9.    Pursuant to the *Consolidation Agreement* and Loan, the Debtor was required to
14 meet certain deadlines for obtaining approval of certain Entitlements necessary to redevelop the
15 Property. In order to provide an extension of certain deadlines by which the Debtor was required
16 to obtain certain Entitlements under the *Consolidation Agreement* and Loan, on or about
17 December 15, 2012 and again on January 28, 2014, the Debtor and the Bank entered into
18 amendments to the *Consolidation Agreement* and Loan. Taking into account the aforementioned
19 amendments, the Bank contends that the Loan matured on October 15, 2014 (the "Maturity
20 Date").

21     10.    The Debtor did not pay off the Loan on the Maturity Date. Thereafter, the Bank
22 declared an event of default under the Loan and the Bank Deed of Trust and has asserted that all
23 amounts owed under the Loan are due and payable. On October 28, 2014, the bank recorded a
24 notice of default, which appears as instrument number 20110881902 (the "NOD").

25     11.    Thereafter, on February 2, 2015, the Bank caused to be recorded a Notice of
26 Trustee's Sale with respect to the Property. The Trustee's sale was continued from time to time

27
28

12

1 after the recording of the Notice of Trustee's sale and most recently was continued to March 13, 2015.

12. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code the Petition Date. The Debtor continues to operate its business, manage its financial affairs, and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

13. Prior to the Petition Date, the Debtor obtained approval of the Entitlements by the Los Angeles Board of Supervisors and other necessary governmental agencies. However, the approval of the Entitlements was delayed due to an appeal ("Appeal") of the earlier approval of the Entitlements in November, 2014 that was filed with the Los Angeles County Board of Supervisors by Unite Here Local 11 (the "Union"), which sought to unionize certain aspects of the final redeveloped project. The Appeal has now been resolved pursuant to that certain *Memorandum of Agreement* dated February 20, 2015 and entered into by and between the Debtor and the Union, pursuant to which the Union agreed to withdraw the Appeal. Even though the Union withdrew the Appeal on February 20, 2015, it took until March 3, 2015 for the Los Angeles County to process the Notice of Final Action of the CDP approval (the "Notice of Final Action") to be forwarded to the California Coastal Commission. The California Coastal Commission received the Notice of Final Action on March 6, 2015 and the public appeal period will terminate on March 19, 2015 at 5:00 p.m., provided that no appeal is filed prior to the deadline.

14. During the year or so prior to the Debtor's bankruptcy filing, the Debtor marketed the Property for either a JV partner or for sale. On or about February 24, 2015, the Debtor and The Armada Enterprises, Inc. (the "Buyer") entered into an *Agreement of Purchase and Sale* (the "Purchase Agreement") pursuant to which the Buyer is to purchase the Property from the Debtor. However, as a result of the Bank's refusal to continue to the Trustee's sale of the Property scheduled for March 13, 2015, the Buyer did not make the requisite deposit required under the

13

Purchase Agreement. Notwithstanding the foregoing, the Debtor and the Buyer are continuing to negotiate regarding the sale of the Property to the Buyer.

15. In order to protect the Debtor's substantial equity in the Property and allow the Debtor time to obtain final approval of all Entitlements (which once obtained, will greatly increase the value of the Property), the Debtor was forced to seek relief by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

16. Through the Debtor's bankruptcy case, the Debtor intends to complete the Entitlements process and market and sell the Property for the highest possible price. I believe that the sale of the Property will yield proceeds sufficient to pay the Bank and other creditors in full.

17. Since the Debtor ceased operations in November, 2014, the Debtor does not generate any cash. Thus, the Debtor requires funding to maintain the Property, continue the process to obtain final Entitlements, and preserve the value of the Property while the Debtor pursues a marketing and sale process which will allow the Debtor to sell the Property for the highest possible price. Fortunately, the Lender has agreed to provide the Debtor with the DIP Financing, pursuant to the terms and conditions set forth in the DIP Financing Documents and DIP Financing Stipulation. Based on the Debtor's Budget, which sets forth the Debtor's projected cash receipts and disbursements for the 13-week period following the Petition Date, I believe that the proposed DIP Financing will provide the Debtor with sufficient funds to complete the Entitlements and maintain the Property until the sale of the Property is successfully consummated.

18. I respectfully submit that the Debtor needs to obtain approval of the DIP Financing and needs authority to use the cash obtained from the DIP Financing by no later than **March 26, 2015** in order to allow the Debtor to make certain disbursements to maintain the Property and its business, including paying utility bills and wages of its employees.

19. Pursuant to the Motion, the Debtor seeks authority to obtain the DIP Financing on the terms and conditions set forth in the Motion. I submit that the Debtor is unable to obtain

sufficient interim and long-term financing from sources other than the Lender on terms and subject to conditions more favorable than under the DIP Financing Documents, and is not able to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. I further submit that the Debtor is also unable to obtain secured credit allowable under Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Financing Documents without granting to the Lender the DIP Lender Lien (as that term is defined in the Motion).

20. The Lender has indicated that it is willing to provide the Debtor with the proposed DIP Financing solely on the terms and conditions set forth in the DIP Financing Documents, the DIP Financing Stipulation and the Interim Order. After considering all of the alternatives, I have concluded, in an exercise of my sound business judgment, that the DIP Financing to be provided by the Lender, when coupled with the authorization to use the proceeds of the DIP Financing in accordance with the Budget and pursuant to the terms of the DIP Financing Stipulation, represents the best financing presently available to the Debtor.

21. Accordingly, I represent that (i) the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Financing has been negotiated in good faith between the Debtor and the Lender, and (iii) any DIP Financing advances made to the Debtor by the Lender will be made in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. Pursuant to the Motion, the Debtor is requesting entry of the Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and the Local Bankruptcy Rules.

22. Absent granting the relief sought by the Motion, I believe that the Debtor's estate will be harmed. I believe that approval of the DIP Financing and authorization of the use the proceeds therefrom in accordance with the Interim Order, the DIP Financing Documents and the DIP Financing Stipulation are, therefore, in the best interests of the Debtor's estate.

23. As stated above, I submit that the Debtor needs to obtain approval of the DIP Financing and the proceeds obtained from the DIP Financing by no later than **March 26, 2015** in order to allow the Debtor to make certain disbursements to maintain the Property and its business, including paying utility bills and wages of its employees.

24. I believe that if the Debtor is not permitted to obtain the DIP Financing and use the proceeds therefrom to maintain the Property and operate its business, including paying certain utility bills and other maintenance fees needed to be paid on or before March 26, 2015, it is all but certain that the Property will fall into disrepair the value of the Property will be decimated. Moreover, I believe that if the Debtor is not authorized to obtain the DIP Financing and use the proceeds therefrom to maintain the value of the Property, including using the proceeds therefrom in connection with obtaining the final Entitlements, the Debtor's efforts to successfully sell the Property for the highest price possible will be jeopardized, if not eviscerated altogether. Given the foregoing, I submit here is little question that the Debtor will suffer immediate injury, loss or damage if the Motion is not heard on an expedited basis.

25. In addition. I respectfully submits that there are exigent circumstances, which were beyond the control of the Debtor, which prevented the Debtor from having the Motion heard on regular notice. As stated above, the Debtor only filed its voluntary petition on March 10, 2015 and requires cash to pay utility providers and other maintenance fees on or before March 26, 2015. Thus, I submit that this short sixteen (16) day time frame, which was outside of the control of the Debtor (and which was controlled by the due dates of the utility bills and other maintenance fees in relation to the Petition Date), did not afford the Debtor enough time to have the Motion heard on regular 21 days' notice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of March, 2015, at Mountain View, California.

_____
THOMAS C. HIX

16

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing documents described as *EX PARTE* APPLICATION FOR ORDER SHORTENING TIME ON NOTICE FOR HEARING ON DEBTOR'S MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 364(c), 364(d)(1) AND 364(e); (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE AND 4001(c); AND (III) GRANTING RELATED RELIEF; DECLARATION OF THOMAS C. HIX IN SUPPORT THEREOF will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 19, 2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Brian D Fittipaldi on behalf of U.S. Trustee United States Trustee (ND)
brian.fittipaldi@usdoj.gov

David L. Neale on behalf of Debtor Malibu Associates, LLC, a California limited liability company
dln@lnbrb.com

Lindsey L Smith on behalf of Debtor Malibu Associates, LLC, a California limited liability company
lls@lnbyb.com, lls@ecf.inforuptcy.com

Lindsey L Smith on behalf of Interested Party Courtesy NEF
lls@lnbyb.com, lls@ecf.inforuptcy.com

United States Trustee (ND)
ustpregion16.nd.ecf@usdoj.gov

Joshua D Wayser on behalf of Creditor U.S. Bank National Association, as successor-in-interest to the Federal Deposit Insurance Corporation
joshua.wayser@kattenlaw.com,
jessica.mickelsen@kattenlaw.com;kim.johnson@kattenlaw.com,ecf.lax.docket@kattenlaw.com,adelle.shafer@kattenlaw.com

**2. SERVED BY UNITED STATES MAIL**:
On March 19, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

N/A

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 19, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

| Chambers Copy via Overnight Delivery | Via Overnight Delivery |
| --- | --- |
| Hon. Deborah J. Saltzman | Counsel for the United States Trustee |
| United States Bankruptcy Court | Brian D. Fittipaldi, Esq. |
| Central District of California | 128 East Carrillo Street |
| 1415 State Street, Courtroom 202 | Santa Barbara, CA 93101 |
| Santa Barbara, CA 93101-2511 | |

☒ Service information continued on attached page re service **Via Overnight Delivery**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 19, 2015 | John Berwick | /s/ John Berwick |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

```
Label Matrix for local noticing          Malibu Associates, LLC, a California limited    Northern Division
0973-9                                    2400 Wyandotte St Ste B-102                    1415 State Street,
Case 9:15-bk-10477-DS                     Mountain View, CA 94043-2373                   Santa Barbara, CA 93101-2511
Central District Of California
Santa Barbara
Thu Mar 19 10:38:55 PDT 2015

Aa87, LLC                                 Abundant Life Christian Fellowship             Ballard Rosenberg Golper
Attn: Managers                            2581 Leghorn Street                            & Savitt LLP
300 West Spring Street, Suite 1901        Mountain View, CA 94043-1613                   500 North Brand Blvd., 20th Floor
Columbus, OH 43215-7662                                                                  Glendale, CA 91203-3304


Blakeley & Blakeley LLP                   Bob Burke & Company                            David L. Neale
2 Park Plaza                              1100 S. Flower Street                          Levene, Neale, Bender, Yoo & Brill LLP
Suite 400                                 Suite 3300                                     10250 Constellation Blvd., Ste. 1700
Irvine, CA 92614-8514                     Los Angeles, CA 90015-2289                     Los Angeles, CA 90067-6253


EPD Consultants                           Employment Development Department              Evicom Corporation
20722 Main Street                         Bankruptcy Group MIC 92E                       4165 E. Thousand Oaks Blvd.
Carson, CA 90745-1117                     PO Box 826880                                  Suite 290
                                          Sacramento, CA 94280-0001                      Thousand Oaks, CA 91362-3815


FISREF Investment Support Services        Franchise Tax Board                            Glass Ratner
FBO David B. Agus, MD                     Bankruptcy Section, MS: A-340                  3424 Peachtree Road NE
8631 West Third St., Suite 215E           P.O. Box 2952                                  Suite 2150
Los Angeles, CA 90048-5943                Sacramento, CA 95812-2952                      Atlanta, GA 30326-2869


Internal Revenue Service                  Joshua D. Wayser & Lorie Lazarus               Los Angeles County Board of
PO Box 7346                               Katten Muchin Rosenman LLP                     Supervisors by UNITE HERE Local 11
Philadelphia, PA 19101-7346               2029 Century Park East, Suite 2600             464 S. Lucas Ave., Suite 201
                                          Los Angeles, CA 90067-3012                     Los Angeles, CA 90017-2074


Los Angeles County Treasurer and          MPK Development LLC                            Malibu Associates LLC
Tax Collector                             Attn: Mark D. Kvamme                           901 Encinal Road
P.O. Box 54110                            205 Spokane Ave.                               Malibu, CA  90265
Los Angeles, CA 90054-0110                Whitefish, MT 59937-2651


Mark A. Massara, Attorney at Law          Mark D. Kvamme                                 Office of the U.S. Trustee
1642 Great Highway                        205 Spokane Ave.                               915 Wilshire Blvd., Suite 1850
San Francisco, CA 94122-2806              Whitefish, MT 59937-2651                       Los Angeles, CA 90017-3560


PMC Project Management                    Pacific Capital Holdings, Inc.                 Pacific Capital Investments, LP
12976 Camino Del Canto                    Attn: Alexis Klein                             Attn: Alexis Klein
Del Mar, CA 92014-3757                    2295 Francisco Street, #2                      2295 Francisco Street, #2
                                          San Francisco, CA 94123-1977                   San Francisco, CA 94123-1977


RCE Consultants, Inc.                     RSF, Jr., LLC                                  Richard S. Fuld, Jr.
23332 Mill Creek                          c/o Matrix Advisors, LLC                       c/o Matrix Advisors, LLC
Suite 205                                 780 Third Ave., 28th Fl.                       780 Third Avenue, 28th Floor
Laguna Hills, CA 92653-7929               New York, NY 10017-2024                        New York, NY 10017-2024
```

| | | |
|---|---|---|
| (p)CALIFORNIA STATE BOARD OF EQUALIZATION<br>ACCOUNT REFERENCE GROUP MIC 29<br>P O BOX 942879<br>SACRAMENTO CA 94279-0029 | T&I Investment Partners, LLC<br>Attn: Thomas C. Hix<br>2400 Wyandotte Street, Suite B-102<br>Mountain View, CA 94043-2373 | The Leone-Perkins Trust udt 8/26/99<br>c/o Sequpia Capital 3000 Sand Hill<br>Road Bldg 4, Ste. 180<br>Menlo Park, CA 94025-7113 |
| The Thomas C. Hix Company No 3 Inc.<br>Attn: Thomas C. Hix<br>2400 Wyandotte Street, Suite B-102<br>Mountain View, CA 94043-2373 | Third Millennium Trust<br>c/o Sequoia Capital, 3000 Sand Hill<br>Road Bldg 4, Suite 180<br>Menlo Park, CA 94025-7113 | Thomas C. Hix<br>2400 Wyandotte Street<br>Ste. B-101<br>Mountain View, CA 94043-2373 |
| U.S. Bank, National Association<br>Attn: Real Estate Group<br>1515 Westcliff Drive, 2nd Floor<br>Newport Beach, CA 92660-5520 | United States Trustee (ND)<br>915 Wilshire Blvd, Suite 1850<br>Los Angeles, CA 90017-3560 | David L. Neale<br>Levene Neale Bender Rankin & Brill LLP<br>10250 Constellation Blvd Ste 1700<br>Los Angeles, CA 90067-6253 |
| Lindsey L Smith<br>Levene, Neale, Bender, Rankin & Bri<br>10250 Constellation Blvd Ste 1700<br>Los Angeles, CA 90067-6253 | | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

State Board of Equalization
P.O. Box 942879
Sacramento, CA 94279


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Courtesy NEF | (u)U.S. Bank National Association, as success | (d)MPK Development, LLC<br>Attn: Mark D. Kvamme<br>205 Spokane Ave.<br>Whitefish, MT 59937-2651 |
| (d)Malibu Associates, LLC<br>901 Encinal Road<br>Malibu, CA 90265 | (d)The Thomas C. Hix Company No. 3 Inc<br>Attn: Thomas C. Hix<br>2400 Wyandotte Street, Suite B-102<br>Mountain View, CA 94043-2373 | End of Label Matrix<br>Mailable recipients    39<br>Bypassed recipients     5<br>Total                  44 |